UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:15-CR-27-TAV-CCS-1 |
| SYLVIA HOFSTETTER, | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**

This criminal matter is before the Court on the government's Appeal of Magistrate Judge's Order Appointing Co-Counsel [Doc. 159]. The government appeals Magistrate Judge C. Clifford Shirley, Jr.'s March 1, 2017, Order appointing Mike McGovern as co-counsel for the defendant, Sylvia Hofstetter [Doc. 117], and Judge Shirley's April 14, 2017, Memorandum and Order (the "M&O") [Doc. 135] denying the government's Motion to Reconsider Order Appointing Co-Counsel and for Immediate Stay of Said Order [Doc. 118]. The government filed a sealed *ex parte* supplement in support of its appeal [Doc. 166], and Hofstetter filed a response to the appeal [Doc. 204]. On June 28, 2017, the Court held a hearing to address the appeal [Doc. 221]. For the reasons that follow, the Court will grant the government's appeal [Doc. 159], affirm in part and reverse in part Judge Shirley's orders [Docs. 117, 135], and remand the issue of appointment of new co-counsel for Hofstetter to Judge Shirley.

**I.  Background[1]**

Hofstetter, the former operator of three healthcare clinics in Tennessee, was first indicted for alleged crimes in connection with a large-scale pill-mill conspiracy on March 4, 2015 [Doc. 3]. She retained attorney David Eldridge, who represented her at her detention hearing on March 13, 2015 [Doc. 18]. Hofstetter then discharged Eldridge and retained attorney Richard Escobar [Doc. 34]. Escobar became Hofstetter's counsel of record on April 9, 2015 [*Id.*]. Hofstetter also retained two additional attorneys, DeeAnne Athan and Dino Michaels, from Escobar's law firm, Escobar & Associates [Docs. 40, 41]. On October 2, 2016, the Grand Jury returned a superseding indictment against Hofstetter [Doc. 70]. Escobar and the other members of his firm then moved to withdraw as counsel on November 3, 2016 [Doc. 102]. Judge Shirley held a hearing on the motion and determined that Hofstetter qualified for court-appointed counsel [Doc. 105].

The government represents that Judge Shirley asked Assistant United States Attorney ("AUSA") Tracy Stone to assist the Court's Clerk's Office in working through potential attorney conflict issues to find competent counsel for Hofstetter [Doc. 159 p. 3]. By the time Escobar moved to withdraw, close to 130 defendants had been charged in related cases [*Id.*]. The government identified Charles Burks and Chris Oldham as two conflict-free attorneys [*Id.*]. At that time, neither Burks nor Oldham represented any of the

---

[1] The Court presumes familiarity with the background of this case and Judge Shirley's orders [Docs. 117, 135].

defendants in the related cases, and Judge Shirley appointed Oldham to represent Hofstetter's co-defendant, Courtney Newman [*Id.* at 3 n.4].

On January 6, 2017, Judge Shirley granted Escobar's motion to withdraw and appointed Burks as counsel for Hofstetter [Doc. 108]. Judge Shirley told Hofstetter that he was looking for a second lawyer to represent her [Doc. 159 p. 4]. During this time, AUSA Stone continued to work with the Clerk's Office to identify attorneys with no or minimal conflicts [*See id.*].

On March 1, 2017, Judge Shirley granted Hofstetter's request for the appointment of a second attorney, finding that the appointment of co-counsel is necessary in the interest of justice [Doc. 116]. Judge Shirley appointed attorney Mike McGovern as co-counsel for Hofstetter [Doc. 117].

On March 2, 2017, the government filed a Motion to Reconsider Order Appointing Co-Counsel and for Immediate Stay of Said Order [Doc. 118]. In support of its motion, the government argued that McGovern has an actual conflict of interest in his representation of Hofstetter [*Id.* at 1]. McGovern previously represented Scott Stockton in a related matter, Case No. 3:15-CR-45. Stockton's plea agreement indicates that he sponsored patients at one of Hofstetter's clinics in exchange for narcotics, which he subsequently sold [No. 3:15-CR-45, Doc. 25].

Judge Shirley held a hearing on the motion for reconsideration on March 8, 2017 [Doc. 122]. At the hearing, the government represented that it is highly likely that it will call Stockton as a witness in Hofstetter's trial to testify about the clinic and about his

relationship with Hofstetter's co-defendant, Newman. The government argued that McGovern has a conflict warranting disqualification due to his successive representation of Stockton and Hofstetter.

Judge Shirley denied the motion for reconsideration on April 14, 2017 [Doc. 135]. In doing so, he determined that "any conflict of interest in this case is potential, rather than actual" [*Id.* at 8]. He also found that both Hofstetter and Stockton validly waived the right to conflict-free counsel [*Id.*]. In light of these circumstances, Judge Shirley deferred to Hofstetter's Sixth Amendment right to counsel of choice and provided that "McGovern may continue to represent Defendant Hofstetter" [*Id.* at 10].

On May 9, 2017, the government filed an Appeal of Magistrate Judge's Order Appointing Counsel [Doc. 159]. The Court held a hearing to address the appeal on June 28, 2017 [Doc. 221]. On July 7, 2017, the Grand Jury returned a second superseding indictment against Hofstetter and others defendants [Doc. 224]. At an initial appearance and arraignment held before Judge Shirley on July 13, 2017, one of Hofstetter's newly indicted co-defendants moved for a continuance of the trial [Doc. 237].

## II. Standard of Review for Appeal

The magistrate judge entered the orders [Docs. 117, 135] at issue in this appeal pursuant to 28 U.S.C. § 636(b). Section 636(b) allows district judges, subject to certain exceptions, to "designate a magistrate judge to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). A district judge may reconsider any

4

pretrial matter determined under "subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

## III. Analysis

The government argues that this Court should reconsider the magistrate judge's orders [Docs. 117, 135] because: (1) the Sixth Amendment presumption in favor of counsel of choice does not apply; (2) McGovern has an actual or serious potential conflict; (3) the magistrate judge underestimated the negative effect McGovern's representation of Hofstetter will have on the public's perception of administration of justice and the judicial system; (4) Stockton and Hofstetter's waivers are invalid; and (5) there is no good reason to run the dangerous risks created by McGovern's appointment. The Court will first set forth the applicable law on successive representation. As the government asserts that the magistrate judge erred in applying the presumption in favor of counsel of choice, the Court will address that argument within its discussion of the applicable law. The Court will then analyze the government's remaining arguments in support of its appeal.

### A. Law on Successive Representation

The Sixth Amendment's right to counsel encompasses two distinct rights—a right to effective assistance of counsel and a right to counsel of choice. *See Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir. 2007). While all defendants enjoy the right to effective assistance of counsel, *id.*, "[d]efendants with the ability to hire their own attorney also have a right to counsel of their own choosing." *United States v. Basham*, 561 F.3d 302, 324 (4th Cir. 2009) (citing *United States v. Gonzalez–Lopez*, 548 U.S. 140, 151–52 (2006)). Where

5

a defendant has the right to counsel of choice, courts must recognize "a presumption in favor of a [defendant's] counsel of choice." *Wheat v. United States*, 486 U.S. 153, 164 (1988). In contrast, indigent defendants that rely on court-appointed counsel have no constitutional right to counsel of choice. *Daniels*, 501 F.3d at 740.

"The guarantee of effective assistance of counsel includes representation which is free of conflicts of interest." *McNeal v. United States*, 17 F. App'x 258, 261 (6th Cir. 2001). "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003). Such representation carries the risk for two types of conflicts of interest—actual and potential. *See United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008). "An actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). A potential conflict arises "if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *Id.*

The M&O states "[a]lthough the Court 'must recognize a presumption in favor of [the defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict'" [Doc. 135 p. 5 (second alteration in original) (citing *Wheat*, 486 U.S. at 160)]. In its appeal, the government asserts that Judge Shirley incorrectly applied the presumption in favor of

counsel of choice in this matter because McGovern is Hofstetter's court-appointed co-counsel.

The Court recognizes this point and finds that the presumption in favor of counsel of choice does not apply here because Hofstetter does not have the right to court-appointed counsel of her choice. *See Daniels*, 501 F.3d at 740; *see also Gonzalez-Lopez*, 548 U.S. at 151 (providing that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"); *United States v. Matsa*, 540 F. App'x 520, 523 (6th Cir. 2013) (stating that "[t]here is a presumption that non-indigent criminal defendants will have counsel of choice"); *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011) (providing that "[a]n indigent defendant has no right to have a particular attorney represent him"). Rather, when determining whether disqualification is warranted where a defendant is indigent, courts should consider whether "[t]he replacement of court-appointed counsel might violate a defendant's Sixth Amendment right to adequate representation or his Fourteenth Amendment right to due process if the replacement prejudices the defendant." *Daniels*, 501 F.3d at 740 (providing that if a court "replaced a defendant's lawyer hours before trial" or "arbitrarily removed a skilled lawyer and replaced him with an unskilled one," those circumstances would violate an indigent defendant's rights).

In analyzing whether McGovern has a conflict of interest such that he should be disqualified, the Court applies the applicable provisions of the Tennessee Rules of Professional Conduct. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related

7

> matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.9(a). In applying Rule 1.9(a), courts should further consider "the scope of the representation in the former matter, the scope of the proposed representation in the current matter, and its relationship to the former matter." *Id.* at cmt. 2. The term "substantially related" is defined as matters that involve:

> the same transaction or legal dispute or other work the lawyer performed for the former client if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known.

*Id.* at cmt. 3. However, "[a]ny conclusion or presumption concerning the type of confidential factual information that would normally have been obtained in the prior representation may be overcome or rebutted by the lawyer by proof concerning the information actually received in the prior representation." *Id.*

Where a lesser actual conflict or a potential conflict is involved, the Court may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel. *See Swafford*, 512 F.3d at 839. However, a court may also find that disqualification is necessary, despite a waiver as provided in Rule 1.9(a), in cases where there is an actual conflict or a "serious potential conflict." *See Sera v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).

In addition to the existence and extent of conflicts, further considerations affect the Court's disqualification analysis. Specifically, "[f]ederal courts have an independent

interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Wheat*, 486 U.S. at 160. The Supreme Court has recognized that district courts must determine whether to disqualify counsel for a criminal defendant while "in the murk[y] pre-trial context," in which the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Id.* at 162. In light of these considerations, district courts are afforded "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. The determination of whether disqualification due to a conflict is warranted is "left primarily to the informed judgment of the trial court," which can evaluate the facts and circumstances of the case. *Id.* at 164.

In the filings before the Court, the magistrate judge and the parties rely heavily on a Northern District of Ohio case, *United States v. Farmer*, No. 1:14CR362, 2015 WL 196027 (N.D. Ohio Jan 14, 2015). In *Farmer*, the defendant, Farmer, was charged in the same indictment as co-defendant Montague, a public employee, with trading insider information for money and property. *Id.* at *1. Attorney Mitchell represented Farmer and had previously represented an individual the court referred to as "Client 1." *Id.* A few years prior, Client 1 received insider information from Montague, and Mitchell represented Client 1 in connection with the same government investigation that resulted in charges

9

against Farmer. *Id.* It was undisputed that Client 1 was not the target of the investigation and no charges were ever filed against her. *Id.*

In *Farmer*, the government represented that it intended to call Client 1 as a witness at trial and that she was expected to testify about the type of insider information Montague gave her. *Id.* at *2. The parties agreed that Client 1 had no information directly implicating Farmer in the conspiracy. *Id.* at *1. The government argued that Mitchell had a potential conflict of interest due to his successive representation of Client 1 and Farmer. *Id.* at *2. The *Farmer* court did not disqualify Mitchell, however, finding that any potential conflict was slight and that both Farmer and Client 1 had waived any potential conflict. *Id.* at *5. In doing so, the court noted that the slight potential for conflict "must give way to defendant's Sixth Amendment right to the counsel of his choice." *Id.*

Turning to the instant matter, the M&O provided "that Mr. McGovern has a potential conflict of interest in representing Defendant Hofstetter, after having represented Stockton" [Doc. 135 p. 2]. Relying on *Farmer*, in which the district court found a slight potential of conflict but deferred to the defendant's right to counsel, Judge Shirley held that "the same deference [afforded in *Farmer*] is warranted here" [*Id.* at 10 (citing *Farmer*, 2015 WL 196027, at *5)].

As the Court previously discussed, however, Hofstetter does not have the right to the counsel of her choice because McGovern is court-appointed counsel. Consequently, unlike in *Farmer*, the presumption in favor of counsel of choice does not apply in this case, and accordingly, Judge Shirley's application of that presumption was "contrary to law" for

10

purposes of 28 U.S.C. § 636(b)(1)(A). Because the presumption was applicable in *Farmer*, and is not applicable here, the Court finds that Judge Shirley placed too much weight on the outcome in *Farmer* in determining that McGovern should not be disqualified. The Court notes, however, that is not clear whether the application of the presumption was dispositive in the magistrate judge's ultimate conclusion. Consequently, the Court will address the following other issues relevant to the disqualification determination, specifically: (1) the extent of McGovern's conflict; (2) the administration of justice and public perception; and (3) the potential hardship to Hofstetter should the Court disqualify McGovern.

### B. The Extent of McGovern's Conflict

The government argues that McGovern has an actual—or at least a serious potential—conflict of interest due to his successive representation of Stockton and Hofstetter. The government describes the degree of McGovern's conflict in its sealed filing [Doc. 166]. As set forth in Stockton's plea agreement, Stockton sponsored several patients at a clinic owned by Hofstetter [No. 3:15-CR-45, Doc. 25 p. 2]. He used the clinic as a source of supply for oxycodone pills, some of which he used and others he sold [*Id.*].

In describing the extent of McGovern's conflict, the M&O provides: "The Court is hard-pressed to imagine anything that Stockton would say on either direct or cross-examination that would be harmful to Defendant Hofstetter" [Doc. 135 p. 8]. The government argues, however, that the clinic and Hofstetter are functionally interchangeable in that the clinic could not have existed without Hofstetter and Hofstetter could not have

11

enriched herself financially without the clinic. Thus, the government asserts that any testimony Stockton may elicit at trial that is materially adverse to the clinic is also materially adverse to Hofstetter.

Furthermore, the government points out that McGovern: (1) "negotiated Stockton's cooperation plea agreement"; (2) "signed the agreement as attorney for Stockton"; (3) "sat in on debriefs"; (4) "represented Stockton at the hearing where Stockton admitted guilt to this Court"; (5) "filed sentencing memoranda with this Court on behalf of Stockton"; and (6) "argued before this Court for the lowest possible sentence at Stockton's sentencing hearing" [Doc. 159 pp. 11–12].

Tennessee Rule of Professional Conduct 1.9(a) provides that a lawyer should not engage in successive representation of clients "in the same or a substantially related matter in which [the clients'] interests are materially adverse" to one another, "unless the former client gives informed consent." Tenn. Sup. Ct. R. 8, RPC 1.9(a). While Hofstetter argues that Stockton has no information implicating her, the Court agrees with the government that Stockton and Hofstetter are involved in "the same or a substantially related matter" and there is a potential that Stockton will elicit testimony that is "materially adverse" to the clinic, which the Court finds would also be "materially adverse" to Hofstetter. *Id.*; *see United States v. Bikundi*, 80 F. Supp. 3d 9, 18 (D.D.C. 2015) (providing that "[m]aterial adversity" does not require that evidence be "directly incriminat[ing]"). Stockton would provide this adverse testimony while cooperating with the government, making his interests adverse to Hofstetter's interests.

Furthermore, in light of the information provided in the sealed supplement, the Court finds that in his successive representation of Stockton and Hofstetter, McGovern is facing a serious potential conflict.[2]  Although Judge Shirley determined that "a potential conflict exists in this case," he found that the conflict was not serious enough to warrant disqualification [Doc. 135 p. 10].  In making this finding, Judge Shirley analogized the facts of the instant case with those in *Farmer* [*Id.* at 9–10].

The Court, however, finds that there are several factual distinctions between the instant case and *Farmer*.  First, the parties in *Farmer* agreed that Client 1 did not have any information implicating Farmer in the conspiracy.  *Farmer*, 2015 WL 196027, at *1.  Rather, Client 1 may have testified to a matter related to another defendant that Mitchell did not represent.  *Id.*  In contrast, here, Stockton may testify to matters adverse to the clinic and, therefore, he may testify to matters adverse to Hofstetter.

The Court further notes that in *Farmer*, the district court drew a distinction between the facts in *Farmer* and a hypothetical situation where Client 1 and Farmer were co-defendants.  *Id.* at *7.  The court indicated that the concerns present in the successive representation of co-defendants were not present in *Farmer*.  *See id.*  As there were never any charges brought against Client 1, and because she was not the subject of the

---

[2] The Court notes that numerous courts have recognized that an attorney's duty of loyalty requires disqualification when a former client seeks to cooperate with the government and testify against a present client.  *See, e.g.*, *United States v. Miranda*, 936 F. Supp. 945, 950 (S.D. Fla. 1996); *United States v. Culp*, 934 F. Supp. 394, 398–99 (M.D. Fla. 1996); *United States v. Davis*, 780 F. Supp. 21, 23 (D.D.C. 1991); *see also United States v. Cruz*, 982 F. Supp. 946, 949–50 (S.D.N.Y. 1997) (disqualifying attorney when wife of former client was testifying as a government witness with the hope that the government would file a motion to reduce the husband's sentence based upon her cooperation).

investigation, there was also no concern that she was attempting to cooperate with the government to implicate Farmer. *See id.* at *1–8.

In the instant case, although Hofstetter and Stockton were not charged in the same indictment, the government submits that "Stockton and most of the other related defendants were co-conspirators with Hofstetter and could have been charged with her in the same indictment" [Doc. 159 p. 5 n.7]. In addition, the Court notes that, "to find a potential conflict of interest, both clients do not need to be charged in the same indictment or be subject to trial in the same proceeding." *United States v. Gutierrez*, No. 10-80083-CR, 2010 WL 3769448, at *3 (S.D. Fla. Aug. 3, 2010) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980); *United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir. 2007)). Here, Hofstetter and Stockton were both indicted in the same overarching conspiracy.

The Court finds that the co-conspirator relationship between Hofstetter and Stockton, the fact that Stockton is attempting to cooperate with the government, and the fact that Stockton may provide testimony adverse to Hofstetter, are all circumstances that distinguish this matter from *Farmer* and justify finding that the conflict here is more serious than the one in *Farmer*. In addition, as the Court has already noted, the presumption in favor of counsel of choice is not applicable here, further distinguishing this case from *Farmer*.

Although Hofstetter and Stockton executed waivers of their right to conflict-free counsel, the Court may reject those waivers in order to ensure the adequacy of representation, protect the integrity of the proceedings, and to protect against future attacks

over the adequacy of a waiver and the ultimate fairness of the trial. *Wheat*, 486 U.S. at 162–163; *see also United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) ("The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial."); *Farmer*, 2015 WL 196027, at *4 (providing that where "one client will assert a claim against the other in the same litigation," disqualification is mandatory). "In situations where a potential conflict exists, one that may ripen into an actual conflict as the trial progresses, district courts must have wide latitude to permit or deny a defendant's waiver of such conflict." *Jones*, 381 F.3d at 121. In light of the serious potential conflict, and because the presumption in favor of counsel of choice does not apply here, the Court will not accept Hofstetter and Stockton's waivers. *See Sera*, 4 F.3d at 1354. As the Court finds that the conflict cannot be waived, the Court need not address whether Hofstetter and Stockton's waivers were knowing and voluntary.

In sum, the Court finds that McGovern has a serious potential conflict due to his successive representation of Stockton and Hofstetter and the Court will not accept Hofstetter and Stockton's waivers.[3] While the Court may disqualify McGovern on this basis, the Court will address additional factors relevant to the disqualification analysis.

---

[3] Because the presumption in favor of counsel of choice does not apply here, a conflict of a lesser degree could still warrant McGovern's disqualification.

### C. Administration of Justice and Public Perception

The government asserts that that the M&O underestimates the negative effect McGovern's representation of adverse parties in the same conspiracy will have on the public's perception of administration of justice and the judicial system. Specifically, the government argues that if Stockton testifies against Hofstetter, the public and the jury would see McGovern as "a lawyer switching sides in the same charged conspiracy" [Doc. 159 p. 17]. In particular, the government points out that during Stockton's cross-examination, the centerpiece of that cross-examination would be Stockton's plea agreement, which McGovern negotiated and which has McGovern's name affixed to it. The government asserts that this circumstance would raise concerns for the jury and the public as to whether justice is being administered fairly.

In response, Hofstetter provides that this Court can issue orders directing the parties not to disclose McGovern's representation of Stockton to the jury. While such orders would ease some concern regarding the exposure of the prior representation to the jury and to the public, the Court must make a decision regarding disqualification in the "murk[y] pre-trial context," in which "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Wheat*, 486 U.S. at 162. Although issuing orders such as those discussed by Hofstetter would decrease the likelihood that the jury and the public will learn of McGovern's successive representation, the Court notes that many of the filings related to McGovern's representation are part of the public record. The Court further notes that it would be difficult to predict, or to control, what Stockton may testify to while on

16

cross-examination. Furthermore, while the Court may order that McGovern's name be redacted on Stockton's plea agreement, that redaction could raise independent concerns within the jury and the public as to the proper administration of justice.

In addressing confidentiality concerns associated with successive representation, Hofstetter represents that Burks and McGovern have created a "Chinese Wall," wherein McGovern will not disclose any attorney-client communication that he had with Stockton with any counsel or with Hofstetter. The Court notes, however, that several courts have expressed concerns regarding the ability of any co-counsel to stay fully independent from conflicted counsel and these courts have disqualified counsel rather than accepting arrangements such as Hofstetter's proposed "Chinese Wall." *See, e.g.*, *United States v. Bikundi*, 80 F. Supp. 3d 9, 21 (D.D.C. 2015); *United States v. Cordoba*, No. 12–20157, 2013 WL 5741834, at *12 (S.D. Fla. Oct. 17, 2013); *United States v. Locascio*, 357 F. Supp. 2d 536, 557–58 (E.D.N.Y. 2004). Furthermore, in light of the fact that there is no presumption in favor of counsel of choice in this matter, the Court further notes that taking such precautions is unwarranted here.

### D. Hardship to Hofstetter

Although Hofstetter does not have right to her counsel of choice, the Court must consider whether "[t]he replacement of court-appointed counsel might violate [Hofstetter's] Sixth Amendment right to adequate representation or [her] Fourteenth Amendment right to due process." *See Daniels*, 501 F.3d at 740. The Court notes that even if it disqualifies McGovern, Hofstetter would still have the benefit of her first-chair

17

attorney, Charles Burks. Considering that fact, the Court finds that disqualifying McGovern would not create substantial hardship for Hofstetter. *See United States v. Pelullo*, No. 11-740-2, 2012 WL 993422, at *5 (D.N.J. Mar. 23, 2012) (providing that "it cannot be argued that the disqualification of . . . appointed *co-counsel* [] would create a substantial hardship"). This is particularly true in light of the fact that Hofstetter was indicted over two years ago and McGovern's appointment just a few months ago "is not a substantial amount of time in the overall duration" of Hofstetter's defense. *See id.* (determining that the likelihood of substantial hardship is low given that the disqualified co-counsel was appointed two months prior and two months was not a substantial amount of time in the overall duration of the defendant's defense in a complex case).

Furthermore, "[t]here is no constitutional right to continuity of appointed counsel." *United States v. Parker*, 469 F.3d 57 (2d Cir. 2009) (citing *Morris v. Slappy*, 461 U.S. 1, 11–13 (1983)). Although indigent defendants do "retain some interest in continuous representation, courts are afforded considerable latitude in their decisions to replace appointed counsel, and may do so where a potential conflict of interest exists." *Id.*

The Court is mindful of the fact that trial in this matter is currently set to commence on September 12, 2017. The Court further recognizes that disqualifying McGovern, who Hofstetter submits she has a strong attorney-client relationship with, shortly before trial, may cause some hardship to Hofstetter. The Court finds, however, that the need to disqualify McGovern, due to his serious potential conflict, outweighs any hardship Hofstetter may suffer.

In addition, the Court notes that the Grand Jury recently returned a Second Superseding Indictment on July 7, 2017 [Doc. 224]. At an initial appearance and arraignment held before Judge Shirley on July 13, 2017, one of the newly indicted defendants moved for a continuance of the trial [Doc. 237]. Although Hofstetter objected to the motion, the Court notes the potential for a trial continuance.

The Court is cognizant of the fact that the there are few, if any, lawyers in this district with no conflicts that may be appointed as co-counsel for Hofstetter. The government submits, however, that only a few attorneys have a greater likelihood of serious conflicts than McGovern [Doc. 159 p. 10 n.8]. The government further provides that, in an effort to find replacement counsel with no or lesser conflicts, it "would invite a hearing in which it could be heard about any possible conflicts that might exist for second-chair replacement counsel" [*Id.* at 22].[4] The government represents that it would "be willing to supply the Court, *ex parte* and *in camera*, with a list of potential trial witnesses from amongst the related defendants so those lawyers could be excluded altogether" [*Id.*]. These representations should alleviate some concern regarding the availability of competent co-counsel.

---

[4] In its appeal, the government asserts that "[i]t is unclear why it was so important to appoint a second-chair lawyer for Hofstetter . . . when she has had five paid lawyers and was already appointed a sixth" [Doc. 159 pp. 20–21]. To the extent the government is arguing that there was no need for the appointment of co-counsel, the Court will not consider this argument as the government did not raise it before Judge Shirley. Indeed, the government provided in its motion for reconsideration, "The United States does not oppose the appointment of conflict-free co-counsel for Hofstetter" [Doc. 118 p. 3].

In sum, the Court finds that the circumstances here mandate McGovern's disqualification in light of the degree of the conflict, the fact that Hofstetter has no right to counsel of choice, and the Court's duty protect the integrity of the proceedings, among other factors as discussed herein. Accordingly, the Court will reverse Judge Shirley's decision to appoint McGovern as co-counsel.

## IV. Conclusion

For the reasons discussed herein, the Court hereby **GRANTS** the government's Appeal of Magistrate Judge's Order Appointing Co-Counsel [Doc. 159]. The Court hereby **AFFIRMS in part** Judge Shirley's Order appointing McGovern as co-counsel for Hofstetter [Doc. 117] and the M&O [Doc. 135], to the extent that Judge Shirley appointed co-counsel for Hofstetter, and **REVERSES in part** the those orders [Docs. 117, 135], to the extent that Judge Shirley appointed McGovern in particular. The Court **DISQUALIFIES** McGovern from acting as co-counsel for Hofstetter and **REMANDS** the matter of new appointment of co-counsel for Hofstetter to Magistrate Judge Shirley.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE