IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        No. 3:15-CR-27-TAV-CCS
                                    )
SYLVIA HOFSTETTER,                  )
                                    )
                Defendant.          )

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate.  This case is before the Court on Defendant Hofstetter's

Motion to Reconsider Detention Order and Open Detention Hearing [Doc. 243], filed on July 28,

2017.  The Government responded [Doc. 246] in opposition to the motion on August 11, 2017.

The parties appeared for a hearing on this motion on August 17, 2017.  Assistant United States

Attorneys Tracy L. Stone and Anne-Marie Svolto appeared on behalf of the Government.  Attorney

Charles C. Burks, Jr., represented Defendant Hofstetter, who was also present.  Following the

motion hearing, the Defendant filed a reply brief [Doc. 253] on August 22, 2017.  The question of

whether the Court should reopen Defendant Hofstetter's detention hearing is now ripe for

adjudication.

Although the Defendant has not demonstrated that new, material evidence exists to

permit the reopening of the detention hearing pursuant to the Bail Reform Act, the undersigned

finds that the Defendant's continued detention until trial violates the Due Process Clause of the

Fifth Amendment.  The Court determines that the Defendant should be **RELEASED** on

conditions. However, the Court also finds that the Government will likely appeal this ruling. Accordingly, the Defendant's release will be **STAYED** for **fourteen days** from the entry of this Memorandum and Order to give the Government time to appeal, and the Defendant's release will remain stayed during the pendency of the appeal, if one is taken. The Court will hold a hearing on the appropriate conditions of release either at the end of the fourteen days, if the Government does not appeal, or upon the conclusion of the appeal, if the ruling herein is affirmed.

## I.      BACKGROUND AND POSITIONS OF THE PARTIES

Defendant Hostetter first appeared for arraignment on March 10, 2015, and was temporarily detained [Doc. 7] pending her detention hearing on March 13, 2015. At her detention hearing, the undersigned found [Doc. 22] that a rebuttable presumption applies in the Defendant's case and that even though the Defendant presented evidence to counter the presumption, a serious risk exists that the Defendant will not appear as required. Accordingly, the Court found, by a preponderance of the evidence, that the Defendant poses a flight risk and ordered that she be detained pending trial. The Defendant has now been detained for thirty-one months, during which time the Government has twice sought superseding indictments that added new defendants and altered the charges against Defendant Hofstetter. Moreover, AUSA Stone informs the Court that the Government will seek a third superseding indictment before the end of this year. The Court has continued Defendant Hofstetter's trial twice over her objection[1] [Docs. 100 & 251], with the most recent continuance occurring on August 17, 2017, when the Court continued the trial to October 16, 2018.[2]

---

[1] The Court has continued the trial two other times [Docs. 44 & 61] at the Defendant's request.

[2] The Court notes that Defendants Clemons, Newman, and McCrary have filed a motion to sever [Doc. 178] them for separate trials from that of the other Defendants in this case. Defendant

Defendant Hofstetter argues [Doc. 243] that her continued detention in this case violates her right to the due process of law under the Fifth Amendment.[3] She asks the Court to reopen her detention hearing to allow her to present evidence of her changed circumstances, which she contends weigh in favor of her release on conditions.

The Government contends [Doc. 246] that Defendant Hofstetter should remain in pretrial detention. First, the Government maintains that the Defendant has not demonstrated a basis to reopen her detention hearing pursuant to the Bail Reform Act, because she has not shown the existence of new evidence that has a material bearing upon whether she can be released on conditions. *See* 18 U.S.C. § 3142(f)(2). It asserts that the length of detention is not new material evidence under the Act, because it is not relevant to whether she will flee or be a danger to the community. Second, the Government argues that an examination of the Second Circuit's four-factor test reveals that the instant Defendant's thirty-one months of pretrial detention do not constitute a due process violation, particularly because the prosecution is not responsible for the delay in the trial. Thus, the Government asserts that the Defendant has failed to demonstrate a basis for reopening her detention hearing, either on statutory or constitutional grounds.

In reply [Doc. 253], Defendant Hofstetter maintains that the Government's arguments relating to the Bail Reform Act are primarily matters to be taken up at the reopened

---

Hofstetter did not join in the motion to sever, which is opposed [Doc. 191] by the Government and is currently pending before the Court. Even if the motion to sever is granted, Defendant Hofstetter would still be joined for trial on October 16, 2018, with Defendants Pecorella, Womack, Tipton, and Alvarez.

[3] Defendant Hofstetter also contends that her prolonged pretrial detention violates her right to equal protection under the Fourteenth Amendment. The Fourteenth Amendment requires the States to afford the due process of law to all citizens and provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The Defendant stands charged with violations of federal law and is detained pursuant to federal law. Thus, the Court cannot divine, nor does the Defendant explain, how the Equal Protection clause of the Fourteenth Amendment applies in the instant case.

detention hearing, not factors to be weighed in determining whether the detention hearing can be reopened in the first instance.  Moreover, she argues that if allowed a reopened detention hearing, she will present evidence of her changed circumstances, such as the fact that her passport was seized by the Government, that the Government has shut down the pain clinics at issue in this case, and that the Court has found her to be indigent.  Finally, the Defendant acknowledges that, if granted a reopened detention hearing, she faces a rebuttable presumption that she cannot be released on conditions.  However, she contends that the evidentiary hurdle to rebut this presumption is low and the burden of persuasion remains with the Government at all times.  She argues that the Court should reopen the detention hearing and give her the opportunity to show that conditions exist that would satisfy the Court that she will appear as required and will not be a danger to others.

## II.    ANALYSIS

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  However, our Supreme Court has concluded that pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, is just such an exception and that the Act does not offend the Due Process Clause of the Fifth Amendment.  *Id.*  In so holding, the Supreme Court points to three aspects of the Bail Reform Act, which insure that it serves a regulatory, rather than a punitive, purpose:  (1) The Act limits the possibility of detention to persons charged with "the most serious of crimes[,]" to include serious drug offenses; (2) the Act entitles the accused to a prompt detention hearing; and (3) "the maximum

length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *Id.* at 747. With regard to this third prong, the Supreme Court expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747, n.4.

In the instant case, the Defendant asks the Court to find that, although no Speedy Trial violation is alleged in this case, the length of her pretrial detention violates substantive due process.[4] She argues that because of this due process violation, the Court should reopen her detention hearing to give her the opportunity to show that there are now conditions on which she could be released. The Court examines whether either a statutory or a constitutional basis exists for the Defendant's release.

## A. Bail Reform Act

Although the Defendant does not ask the Court to reopen her detention hearing pursuant to the Bail Reform Act, the Court first considers whether there is a statutory basis for the Defendant's release. The Bail Reform Act permits the Court to reopen a detention hearing "at any time before trial if [it] finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of

_____

[4] The Due Process Clause "protects individuals against two types of government action." *Salerno*, 481 U.S. at 746. Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin v. California*, 342 U.S. 165, 172 . . . (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut*, 302 U.S. 319, 325-26 . . . (1937)." *Id.* Procedural due process requires that government action, which comports with substantive due process, "must still be implemented in a fair manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Court finds that Defendant Hofstetter is alleging a violation of substantive due process in this case, i.e., that her prolonged pretrial detention shocks the conscience. The Court finds that she is *not* alleging that she was detained without a hearing or that constitutional error occurred at her March 2015 detention hearing, either of which would be a procedural due process claim.

release that will reasonably assure the appearance of such persons as required and the safety of any other person and the community." 18 U.S. C. § 3142(f)(2). In the instant case, the Defendant alleges that since the time of her March 13, 2015 detention hearing, the following circumstances have changed: (1) the Government has seized her passport, (2) the Government has shut down the pain clinics at issue in this case, and (3) the Government has seized all her assets and she is now indigent. She maintains that due to these changed circumstances, she is no longer a flight risk or a danger, and that she can be released on conditions. The Government argues that the length of the Defendant's pretrial detention is not a factor to be considered in evaluating whether to reopen a detention hearing under the Bail Reform Act. It also maintains that none of the circumstances advanced by the Defendant is new and/or material.

As an initial matter, the Court agrees with the Government that the sheer length of time that a defendant has spent in pretrial detention is not a basis for reopening a detention hearing under the Act. *United States v. Mohammad*, No. 3:15-cr-358, 2017 WL 2365247, *6 (N.D. Ohio May 31, 2017); *see also United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (holding that the length of detention, including the projected term of detention, is not a reason to reopen a detention hearing because it is not material to dangerousness or flight risk). Prolonged pretrial detention can be a basis for the Court to reconsider the Defendant's detention for constitutional (rather than statutory) reasons, which the undersigned does in section B. below.

The Defendant first alleges, as a changed circumstance, that the Government has seized her passport. The Court finds that the Defendant could have offered to surrender her passport to the United States Probation Office at the 2015 detention hearing. Thus, the ability to place her passport out of her control was information that was known to the Defendant and could have been offered as a proposed condition of release at the time of her detention hearing.

Second, the Defendant asserts that the Government has closed the clinics at issue in this case. At the detention hearing, the Court found that no conditions of release could prevent the Defendant's continued involvement with the clinics in this case, because the Defendant ran these clinics from her home and through other people. [Doc. 28, Trans. of Detn Hg, p. 284] The Court also found that the Defendant had not proffered any other type of employment, other than running the instant clinics or employment in some type of medical management job. The Court found that these circumstances weighed in favor of detention, because the Court did not know what type of employment the Defendant would have or how she would maintain her lifestyle, if prohibited from working in the clinics. [Doc. 28, p.285]

While the closure of the three clinics involved in this case would appear to be information unknown to the Defendant at the time of the detention hearing,[5] the Court questions whether this circumstance has a material bearing upon the existence of conditions of release that would assure the Defendant's appearance as required. At the detention hearing, the Court's underlying concern with regard to the clinics was two-fold: (1) Could the Court prevent the Defendant from committing any crimes while on release?,[6] and (2) Could the Defendant secure some type of employment outside of the medical management area? While the Court's concern with the Defendant continuing to work at the clinics related to her charges is alleviated by their closure, the Court observes now, as it did at the detention hearing, that the Defendant worked in

---

[5] At the detention hearing, Agent Chapman testified that if the Defendant was detained, the clinics would likely close, because she was the sole administrator. [Doc. 22-1, p.2]

[6] The Court notes that its concern about the Defendant's continued operation of the clinics goes to whether the Defendant would be a danger to the community. The Court expressly made no finding with regard to whether the Defendant was a danger. [Doc. 28, p. 289] The subsequent closure of the clinics, which arguably would prevent the Defendant from continuing in the alleged crimes, only bears upon the Defendant's potential dangerousness, not whether she is a flight risk. For this additional reason, the closure of the clinics is not material.

pain clinics in Florida, where she continues to have many contacts, and she came to this district to start the same type of clinics in Tennessee. The Defendant's ability to move to a new location and to start up a pain clinic is not necessarily hampered by the closure of the instant clinics. Additionally, the fact that the clinics related to the instant charges are now closed is not material to the question of where the Defendant will work if released. Accordingly, the fact that the clinics are closed is not material to whether there are conditions that will prevent the Defendant from fleeing.

Finally, the Defendant asserts that the Government has seized all of her assets and that she does not have the means with which to flee. In support of this factor, the Defendant argues that the Court has now found her to be indigent and to qualify for appointed counsel. At the detention hearing, Special FBI Agent Andrew Chapman testified that six million dollars of drug proceeds from the instant alleged drug conspiracy could not be located or explained by the Government. [Doc. 28, p.23-24] The Court relied, in part, on this testimony to find that Defendant Hofstetter apparently had the means with which to flee. [Doc. 28, p.135-36] At the August 17, 2017 motion hearing, AUSA Stone stated that "large sums of money" that are proceeds from the alleged criminal conspiracy are still missing in this case.

The Court questions whether the seizure of her assets is a circumstance that was unknown to the Defendant at the detention hearing. The undersigned suspects that the Government had already seized the bulk of the Defendant's assets at the time of her detention hearing. More importantly, the Court finds that the Defendant's present indigent status does not change the fact that a large amount of the drug proceeds in this case remain missing and potentially assessable by the Defendant were she to be released. The fact that she does not have income and/or funds in a known bank account with which to retain counsel does not foreclose the possibility that the

Defendant has access to hidden accounts or stashes of money.  Accordingly, the Court finds that the Defendant's present indigent status is does not carry the day, with regard to whether there are conditions of release that could assure her presence at trial.

Thus, the Court finds no basis to reopen the Defendant's detention hearing pursuant to the Bail Reform Act.  *See* 18 U.S. C. § 3142(f)(2).

### B.  Substantive Due Process

Defendant Hofstetter argues that the current length (thirty-one (31) months) and the projected total length (at least forty-four (44) months) of her pretrial detention violate due process. She contends that prolonged pretrial detention can be a basis for the Court to reconsider its detention order and to grant a detention hearing to determine whether a detained defendant may be released on conditions under the Bail Reform Act.  She asks the Court to apply the four-factor test formulated by the Second Circuit and employed by the Sixth Circuit and the Middle District of Tennessee:  The "four factors to be considered in determining if the pretrial detention is unconstitutionally excessive [are]: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (finding the case law from the Second Circuit to be "particularly instructive" on whether prolonged pretrial detention is a violation of due process) (citing *United States v. El-Hage*, 213 F.3d 74, 79 (2nd Cir. 2000)); *see also United States v. Omar*, 157 F. Supp. 3d 707, 715 (M.D. Tenn. 2016) (applying the *El-Hage* factors).  Moreover, the Defendant argues that once the pretrial detention exceeds two years, detention may continue only if the Government

shows that it was not responsible for any significant period of delay and that release poses an extraordinary threat to the legitimate regulatory goals requiring detention.

The undersigned agrees with Defendant Hofstetter that a due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a detention hearing may be reopened under the Bail Reform Act. *See Watson*, 475 F. App'x at 601-03 (considering whether the defendant's continued pretrial detention violated the Due Process Clause, even though it held the defendant did not meet the requirements for reopening his detention hearing under the Bail Reform Act). "Pretrial detention violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" *Id.* at 601 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Whether a term of pretrial detention violates due process must be determined on a "case-by-case basis," *Watson*, 475 F. App'x at 601, and there is no bright line beyond which continued detention is automatically a due process violation, *see Salerno*, 481 U.S. at 747 n.4; *Omar*, 157 F.Supp.3d at 714. The undersigned turns to the application of the four factors in the instant case, giving particular emphasis to whether the Government is responsible for a substantial portion of the delay.

*(1) Length of Pretrial Detention*

The first factor that the Court considers is the length of the pretrial detention. The Court begins by observing that "Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention." *United States v. Gonzales Claudio,* 806 F.2d 334, 340 (2d Cir.1986) (citing 18 U.S.C. § 3164(b)). Although Congress has excluded certain types of delay from this ninety-day limit, *see* 18 U.S.C. § 3161(h) & 3164(b), this three-month period, "representing the considered view of the Congress

as to the normal limit on pretrial detention, provides at least a point of reference in [the Court's] consideration of the constitutional limit on such detention." *Gonzales Claudio*, 806 F.2d at 340-41. In the instant case, Defendant Hofstetter has been incarcerated thirty-one (31) months. The undersigned finds that the projected forty-four (44) months of pretrial detention for Defendant Hofstetter is not speculative, because the trial has now been continued to October 2018. In fact, the length of Defendant Hofstetter's pretrial detention could be longer if the anticipated third superseding indictment requires an additional trial continuance. The Court observes that forty-four months is fourteen times longer than the "normal limit on pretrial detention" of three months imposed by Congress. *See Gonzales Claudio*, 806 F.2d at 340-41.

However, the undersigned also observes that it has previously declared [Doc. 44] this case to be complex for speedy trial purposes due to the number of defendants in this and the related cases, the length of the alleged drug and money laundering conspiracies, and the nature of the prosecution, including the voluminous discovery. Courts have held that periods of detention exceeding two years did not violate due process, when the case was complex. *See, e.g., El-Hage*, 213 F.3d at 79-81 (determining that 30-33 months of pretrial detention did not constitute a violation of due process in a complex case involving an extended conspiracy); *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (concluding that 27 months of pretrial detention in relation to charges for the World Trade Center bombing did not constitute a violation of due process); *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (holding that a 31-month term of pretrial detention for defendant charged with conspiracy to distribute heroin did not constitute a due process violation); *United States v. Gonzalez*, 995 F. Supp. 1299, 1304 (D.N.M. 1998) (observing that 35-37 months of pretrial detention for defendant charged with a drug conspiracy did not constitute a due process violation); *see also United States v. Mohammed*, No. 3:15-cr-358,

2017 WL 2365247, *6 (N.D. Ohio May 31, 2017) (holding that pretrial detention of 22 months for defendant charged with conspiracy to provide material support to terrorists did not violate due process). *But see United States v. Ojeda Rios,* 846 F.2d 167 (2d Cir. 1988) (per curiam) (ordering the release of a defendant held 32 months in pretrial detention because "we do not believe that due process can tolerate any further pretrial detention in this case"); *Gonzales Claudio,* 806 F.2d 334, 341-43 (2d Cir.1986) (determining 26 months of pretrial detention to be unconstitutional).

In the instant case, the undersigned finds that forty-four months of pretrial detention very nearly equals the four-year term served by the defendant in *Omar*, a term which our sister court in the Middle District of Tennessee found warranted "heightened scrutiny" and, ultimately, release of the defendant. *Omar*, 157 F. Supp. 3d at 716, 718. Although the instant case is complex, the forty-four months of expected detention exceeds by more than a year the length of detention in all but one[7] of those cases finding no constitutional violation due to the complexity of the case. Accordingly, the Court finds that the length of time that Defendant Hofstetter has been detained, combined with the more than one-year until trial, weighs heavily in favor of finding a due process violation in this case.

*(2) Prosecution's Responsibility for Delay*

In cases in which the length of pretrial detention exceeds two years, "'courts have typically upheld detention only if the government was not responsible for any significant portion

---

[7] In *United States v. Gonzalez*, the court held that a total projected term of thirty-five (35) to thirty-seven (37) months of pretrial detention did not violate due process because the case was complex, the government bore *no* responsibility for the delay, and the defendant continued to pose a serious flight risk. 995 F. Supp. 1299, 1304 (D.N.M. 1998). The instant case is distinguishable from *Gonzalez*, because, as discussed in subsection (2), the Court finds the Government is responsible for significant pretrial delay.

of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention.'" *Omar*, 157 F.Supp.3d at 716 (quoting *United States v. Cos*, No. CR 05–1619 JB, 2006 WL 4061168, at *6–7 (D.N.M. Nov. 15, 2006)). With regard to this second factor, the government need not be "at fault" for the Court to deem it responsible for delay. *Gonzales Claudio*, 806 F.2d at 342. In assessing a potential *Sixth Amendment* violation, the Supreme Court has attributed negligent or even neutral reasons for delaying the trial to the government:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker v. Wingo*, 407 U.S. 514, 531 (1972).

In the instant case, the Government argues that the delay in this case should not be attributed to the prosecution. It contends that the Defendant requested and/or acquiesced in trial continuances in order to permit defense counsel time to review discovery and file pretrial motions. The Government maintains that Defendant Hofstetter has changed counsel twice, requiring additional time for new defense counsel to become familiar with the case, and will soon be getting substitute co-counsel, who will need time to review the voluminous discovery. Finally, it maintains that it cannot be faulted with the vast scope of the instant conspiracy, which has necessitated charging the one hundred plus defendants in separate indictments and has resulted in two superseding indictments in this case thus far.

At the August 17 hearing, AUSA Stone argued that the Court should not hold the Government responsible for delay, unless the delay was unnecessary or the Government was dilatory. He observed that the investigation of this case did not stop with the initial indictments of

over one-hundred defendants, in the related cases. Instead, the convictions of numerous individuals in the larger drug conspiracy led to more information and, ultimately, additional defendants and charges. AUSA Stone argued that in seeking the superseding indictments, the prosecution was simply discharging its duty in this huge, complex case and its actions were ratified by the grand jury. He contended that the large number of convictions in the related cases reveal that the Government has not been dilatory.[8]

The Court respectfully disagrees that it must find that the delay was unnecessary or that the Government was dilatory in order to attribute delay to the Government. Matters of who to prosecute and for what charges and at what point in the investigation are all within the prosecutor's discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). However, these are choices made by the Government, not the Defendant, and are properly attributed to the Government. In *United States v. Rodriguez*, the defendant alleged a due process violation, after being detained for thirty-eight (38) months,[9] during which time the government brought five charging instruments and the case was rescheduled many times to accommodate new defendants and voluminous and ongoing discovery. No. 09-CR-331A, 2012 WL 6690197, *1 (W.D.N.Y. Dec. 21, 2012). In examining the second factor (responsibility for the delay in trial), the court held that "any conduct intended to cause delay" would be charged to that party. *Id.* at *12. It also

---

[8] In its response [Doc. 246, p.5], the Government states that one hundred thirty-six (136) defendants have been charged in this and the related cases. Of those charged, one hundred twenty-six (126) defendants have been convicted and one hundred eighteen (118) have been sentenced. Additionally, according to the Government, three hundred seven (307) financial accounts have been subpoenaed, with one hundred eighty-two (182) having been analyzed, and one hundred fifty (150) overdose deaths are under investigation in relation to this drug conspiracy.

[9] Rodriguez's projected length of detention before trial was fifty (50) months, given the need to litigate additional pretrial motions, following the receipt of additional discovery. *Rodriguez,* 2012 WL 6690197, at *10.

determined that it would "charge to defendants time lost to motion practice that could have proceeded in a more efficient or practical way." *Id.*

However, the court in *Rodriguez* stated that case management decisions that foreseeably extended the case, such as the decision to bring multiple superseding indictments, "which added little substance to the defendant's alleged conduct but served the primary purpose of simply adding more defendants as more information became available," were attributable to the government. *Id.* The court observed that the government knew that adding new defendants to a complex case, while the original defendants were still requesting additional discovery, "would require the Court and the parties to start over with discovery for those new defendants and for all defendants with respect to the new ones." *Id* Thus, the court held that the delay caused by the strategic choices of the government should be attributed to the government in the due process analysis. *Id.* at *12-13.

> In reciting the Government's case-management decisions and their foreseeable consequences, the Court emphasizes that it has no desire to supervise the trial strategies or policy decisions of the United States Attorney's Office. Nonetheless, the Government has made choices throughout the duration of this case, and choices matter.

*Id.* at *13. The undersigned finds the same to be true in the instant case.

Here, Defendant Hofstetter was originally charged as the sole defendant in an Indictment [Doc. 3], which alleged drug and money laundering conspiracies and seven substantive money laundering counts. The Government moved [Doc. 29] to have this case declared complex, due to the extended time that it needed to disclose the discovery. Defendant Hofstetter moved [Doc. 36] to continue the May 19, 2015 trial date in order to give defense counsel, then Attorney Richard Escobar and associates, time to review the voluminous discovery, file and litigate pretrial motions, and to prepare the case for trial. The Court granted [Doc. 44] both motions and continued

the trial to June 14, 2016. On April 20, 2016, the Court granted [Doc. 61] the Defendant's oral motion to continue the trial to the fall of 2016, in order to give counsel time to complete the review of discovery. The Government agreed with the requested trial continuance, observing that its expert needed time to complete her report. The Court rescheduled the trial for November 8, 2016.

A little over a month before the November 8 trial date, the Government brought a Superseding Indictment [Doc. 70], which added five medical practitioners as codefendants, increased the length of the drug and money laundering conspiracies by more than two years, added three counts of maintaining a drug-involved premises, added one count of distributing controlled substances, and added an enhancement for the overdose death of an individual to two counts in which Defendant Hofstetter was charged. At Defendant Hofstetter's arraignment on the Superseding Indictment, Mr. Escobar informed the Court that he and his firm were forced to withdraw because the Defendant could not afford to retain them on the greatly expanded charges. The Court continued the trial to September 12, 2017, over the objection of Defendant Hofstetter, at the request of the codefendants, and with the agreement of the Government. Just as in *Rodriguez*, the newly added codefendants needed time to review voluminous discovery and to prepare for trial. Here, however, Defendant Hofstetter also needed time to prepare, as the changes to her charges forced her to change counsel. The Government argues the delay in the trial to allow new counsel time to prepare was inevitable, even without the addition of new defendants, given the expanded charges for Defendant Hofstetter. The Court agrees that the continuance was inevitable once the Government brought the Superseding Indictment. However, the Court finds that the Government decided to bring the expanded charges against Defendant Hofstetter, and, thus, the delay is still attributable to the Government's case management choices.

New counsel for Defendant Hofstetter, along with counsel for the codefendants, filed some twenty-five pretrial motions.[10]  Following the motion hearing on these motions and while the undersigned had the bulk of the motions under advisement, the Government brought a Third Superseding Indictment [Doc. 224] on July 7, 2017, adding three new codefendants.  The Court again continued [Doc. 251] the trial to October 16, 2018, over Defendant Hofstetter's objection and at the request of the new codefendants.  AUSA Stone stated that, in his opinion, new defense counsel could not review the voluminous discovery in this case and prepare for trial in less than one year.  The Court gave the new defendants time to join in the pending pretrial motions and time to file pretrial motions.  The Court finds that, like in *Rodriguez*, the Government's case-management choices in seeking superseding indictments within a month or two of trial, after the parties have prepared for trial for over a year, have resulted in delay that was entirely foreseeable and that should be attributed to the Government.  The Court observes that had the Government not sought the Superseding Indictment, Defendant Hofstetter would have proceeded to trial on November 8, 2016.  Accordingly, the Court finds that the Government is responsible for twenty-two and one-half (22 ½) months of delay in the trial, from December 2016 to October 16, 2018.  The Court finds this to be a *significant* delay.[11]

---

[10] The Court observes that new counsel for Defendant Hofstetter requested two extensions of the motion deadline [Docs. 120 & 149].  The Court elects not to attribute the extended time needed to file pretrial motions to either party, because during the time that counsel was attempting to review discovery and to file pretrial motions, he was also required to litigate the Government's challenge to co-counsel, both before the undersigned and on appeal to the Chief District Judge.

[11] The Court notes it was the Government's choice to charge Defendant Hofstetter, the owner and operator of the clinics, in a Superseding Indictment with the medical providers at those clinics.  In another large opioid conspiracy in this district, the Government charged the clinic owners and employees separately from the medical providers.  *See United States v. Sandra Kincaid, et al.*, 3:10-CR-160, and *United States v. Walter Blankenship, et al.,* No. 3:14-CR-124.

Of lesser significance is the extended time that the Government needed to provide the discovery in this case. The Court granted the Government's request to disclose the voluminous discovery to Defendant Hofstetter's counsel in three phases over a period of five and one-half months from her entry into the case. [*See* Doc. 44] In *United States v. Gonzales Claudio*, the Second Circuit found the government to be responsible for a significant portion of the delay of the trial due to the government's piecemeal delivery of the voluminous discovery between nine to fourteen months after the defendant's arrest. 806 F.2d at 341-42. The Second Circuit found that it did not have to determine the extent that the government was "at fault" but, rather, must assess the government's responsibility for the delay. *Id.* Thus, even though the case was complex (involving twenty defendants and charges occurring over an extended time in widely dispersed locations) and even though the defendants contributed to the delay by filing in excess of four hundred motions, the court held that the lengthy pretrial detention violated due process and ordered the defendants to be released on conditions. *Id.* at 341-43. Other courts have also attributed delay resulting from voluminous discovery to the government. *United States v. Aileman*, 165 F.R.D. 571, 593-94 (N.D. Cal. 1996) (holding government responsible for delay in providing transcripts of wiretapped conversations and other discovery); *United States v. Gallo*, 653 F. Supp. 320, 343 (E.D.N.Y. 1986) (attributing to government the delay cause by the "complexity of government's legal theory and the volume of evidence involved" in the RICO conspiracy). *But see Mohammad*, 2017 WL 2365247, *3 (holding government not responsible for delay when the case involved four defendants, extensive evidence dating back a decade, and complex legal issues). The undersigned also finds that the four months of delay, from the time that Defendant Hofstetter's retained counsel entered the case in early April 2015, until the extended discovery deadline of August 14, 2015, is attributable to the Government.

In the instant case, the Court finds that twenty-six and one-half (26 ½) months of delay in the trial resulting from the multiple superseding indictments and from the extended time necessary to provide discovery is attributable to the Government. Although the Government was not "at fault" for this delay, its actions and choices have, in large measure, caused the delay and, thus, it is "responsible." The Court also finds this delay to be significant, given the fact that the Defendant would have proceeded to trial in November 2016, after nineteen months of pretrial detention, had the Government not brought the Superseding Indictment. This factor also weighs heavily in favor of finding a due process violation in this case.

*(3) Serious Nature of the Charges*

In the instant case, the Court finds that the serious nature of the charges weighs in favor of the Government's regulatory interest in detention. Defendant Hofstetter is charged [Doc. 224], along with five named codefendants, with conspiring to distribute and dispense controlled substances outside of the scope of professional practice and without a legitimate medical purpose from November 2010 to March 2015. She is also charged with conspiring to commit money laundering, five substantive counts of money laundering, three counts of maintaining a drug-involved premises, and one count of distributing controlled substances outside the scope of professional practice and without a legitimate medical purpose. Defendant Hofstetter is subject to a potential enhanced penalty for the alleged death of a patient with regard to two counts, which increases the punishment for those counts from a statutory maximum of twenty years to a statutory mandatory minimum of twenty years and a maximum of life imprisonment. The gravity of these charges weighs against the existence of a due process violation.

*(4) Strength of Evidence Favoring Detention*

Finally, the Court finds that the Government presented strong evidence in support of detention at the 2015 detention hearing. The Government presented the testimony of Special FBI Agent Andrew Chapman, who testified that the Defendant moved from Florida to Tennessee to manage several pain clinics in East Tennessee. He testified that these pain clinics were involved in the illegal distribution of narcotics and that, during the four years the Defendant managed them, they allegedly issued twelve million prescriptions for opioids, saw one thousand patients per clinic monthly, and earned a profit of approximately seven million dollars. Agent Chapman testified that law enforcement could not account for approximately six million dollars of this profit.

Based upon the evidence presented at the detention hearing, the Court found [Doc. 22-1] that the Defendant had limited connections to Tennessee and that her family, friends, and business colleagues (including financial backers with large overseas bank accounts) remained in Florida. The Court observed that Defendant Hofstetter visited Florida frequently and had traveled internationally many times. The Court also found that the Defendant intended to return to her same employment of managing the pain clinics from her home, if released. The Court determined hat the Defendant had a strong motive to flee due to the lengthy sentence she could receive and the lack of ties to the community. It also found that she had the means to flee, given the large profits from the pain clinics, most of which had yet to be located by law enforcement. The Court concluded that these circumstances established by a preponderance of the evidence that the Defendant was a serious flight risk.

The Court continues to find that the evidence in support of detention is strong. Although the pain clinics at issue in this case are no longer open, a large amount of the illegal profits have yet to be located. The Defendant still has few connections to this district and numerous

connections to Florida.  The Court finds that the strength of the evidence supporting detention weighs against finding a due process violation.

*(5) Weighing the Factors*

In examining the factors relevant to assessing a due process violation, the Court finds that the length of detention and the prosecution's responsibility for a significant portion of the delay weigh heavily in favor of the Court finding a due process violation.  The gravity of the charges and the strength of the evidence favoring detention, however, weigh against a due process violation.  In cases in which the pretrial detention exceeds two years, the Court should permit continued detention "'only if the government was not responsible for any significant portion of the delay and special circumstances indicate[] that the defendant's release . . . pose[s] an extraordinary threat to the government's regulatory interests in detention.'"  *Omar*, 157 F.Supp.3d at 716 (quoting *Cos*, 2006 WL 4061168, at *6–7)).  Here, neither of these contingencies are met:  The Court has found that the Government is responsible for a significant portion of the delay.  Additionally, the Court does not find that the Defendant's release poses "an extraordinary threat" to either of the Government's regulatory interests, i.e., the safety of the community and the Defendant's presence at trial.

With regard to the safety of the community, at the detention hearing, the Government characterized the Defendant as the biggest drug distributor in the history of the district.  It emphasized that the drug conspiracy, which Defendant Hofstetter allegedly headed, has led to many other crimes.  Additionally, the Government argues in its response that it is investigating over one hundred fifty (150) suspected overdose deaths linked to this drug conspiracy.  However, the Court finds that Defendant Hofstetter is no longer in a position to affect

the distribution of controlled substances. Accordingly, it finds that her release would not present this type of danger to the community.

The question of whether the Defendant's release poses "an extraordinary threat" to the Government's ability to bring her to trial is a harder question. The Government argues the fact that the Defendant has now spent thirty-one months in jail makes her more likely to flee because she now knows how unpleasant jail is and that she never wants to be there again. Conversely, the fact that the Defendant has a realistic idea of what is at stake may also cause her to observe her conditions of release strictly in order to avoid a return to pretrial detention, if she violates them. Additionally, all of Defendant Hofstetter's codefendants, many of whom are charged in the drug conspiracy and one of whom also faces enhanced penalties due to allegations of a death, are released on conditions. None of these Defendants have attempted to flee, despite the stiff penalties possible in this case.

Although Defendant Hofstetter has few connections to this district and numerous connections to Florida, she has no history of fleeing criminal prosecution or failure to appear. The Court also observes that the Bail Reform Act does not require the Court to find that a defendant's appearance is guaranteed. Instead, it must find that there are conditions that would "reasonably assure the appearance of the person as required." *See* 18 U.S.C. § 3142(g). At this point, Defendant Hofstetter's projected term of pretrial detention of forty-four months is among the longest of any of the cases analyzing a due process violation that this Court has reviewed. Given the heighten scrutiny that the Court should give to the prolonged pretrial detention in this case and the availability of strict conditions of release, including electronic monitoring and house arrest, the Court finds that Defendant's release does not pose "an extraordinary threat" to the Government's

ability to bring her to trial. Accordingly, the Court finds the Defendant's continued pretrial detention violates due process and that she should be released on strict conditions pending her trial.

### III.    CONCLUSION

Defendant Hofstetter's Motion to Reconsider Detention Order and Reopen Detention Hearing [**Doc. 243**] is **GRANTED in part**, in that the Court has reconsidered the Defendant's detention in light of her due process challenge. The Court finds that the Defendant's projected forty-four months of pretrial detention before the trial on October 16, 2018, violates due process and that the Defendant's continued detention would constitute punishment in this case. Accordingly, the Court **ORDERS** that the Defendant should be **RELEASED** on conditions. However, the Court also finds that the Government will likely appeal this ruling. Accordingly, the Defendant's release is **STAYED** for **fourteen days** from the entry of this Memorandum and Order to give the Government time to appeal, and the Defendant's release will remain stayed during the pendency of the appeal, if one is taken. The Court will hold a hearing on the appropriate conditions of release either at the end of the fourteen days, if the Government does not appeal, or upon the conclusion of the appeal, if the ruling herein is affirmed.

**IT IS SO ORDERED.**

ENTER:

        s/ C. Clifford Shirley, Jr.
United States Magistrate Judge