IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CR-27-TAV-CCS |
| ) | |
| SYLVIA HOFSTETTER, ) | |
| THEODORE McCRARY, ) | |
| COURTNEY NEWMAN, ) | |
| CYNTHIA CLEMONS, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the joint Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(ii) and/or 12(b)(3)(B)(v) [Doc. 171].[1] The parties appeared on June 7, 2017, for a hearing on all pending pretrial motions. Assistant United States Attorney Tracy L. Stone appeared on behalf of the Government. Attorneys Charles C. Burks, Jr., and Michael P. McGovern represented Defendant Hofstetter. Attorneys Donald A. Bosch and Ann C. Short, represented Defendant McCrary. Attorney Christopher J. Oldham represented Defendant Newman. Attorney Randall E. Reagan represented Defendant Clemons.

---

[1] This motion was filed by Defendants Courtney Newman and Cynthia Clemons. Defendant Theodore McCrary joined [Doc. 180] in this motion. Defendant Sylvia Hofstetter also joined [Doc. 200] in a motion filed on the day of the June 7 hearing. At the motion hearing, counsel for Defendant McCrary clarified that he only joined in his codefendants' argument that the Court should dismiss the Superseding Indictment because it fails to state an offense.

1

Defendants Hofstetter, McCrary, and Clemons were also present for the hearing.[2] After considering the parties' filings and argument, as well as the relevant case law, the Court finds no reason to dismiss the indictment[3] and recommends that the Defendants' joint motion be denied.

## I. BACKGROUND

On March 4, 2015, Defendant Sylvia Hofstetter was indicted [Doc. 3] with conspiracy to distribute oxycodone, conspiracy to commit money laundering, and seven counts of money laundering. On October 4, 2016, the Grand Jury returned a Superseding Indictment [Doc. 70] charging Defendant Hofstetter and five codefendants, Richard Larson,[4] Alan Pecorella, Theodore McCrary, Courtney Newman, and Cynthia Clemons, with conspiring to distribute and dispense controlled substances outside of the scope of professional practice and without a legitimate medical purpose from January 2009 to March 2015. Defendant Hofstetter is also charged with conspiring to commit money laundering and several[5] substantive counts of money

---

[2] Attorney Creed Daniels, who represents Defendant Pecorella, also attended the hearing but does not have any motions pending before the Court.

[3] When the Defendants filed and argued their motion, they were charged in the Superseding Indictment [Doc. 70]. On July 7, 2017, the Government obtained a Second Superseding Indictment [Doc. 224]. The Second Superseding Indictment removes Defendant Richard Larson from Counts One, Eight (former Count 10), Nine (former Count Eleven), and Eleven (former Count Thirteen). The Second Superseding Indictment also adds five pages describing the crimes; omits two substantive money laundering counts against Defendant Hofstetter; adds a defendant to Counts One, Two, and Ten; and adds three new counts that apply only to new defendants Clyde Tipton and Manard Alvarez. The Court finds that the Second Superseding Indictment does not moot the issues raised in the Defendants' Motion to Dismiss.

[4] Charges against Defendant Richard Larson were dismissed [Doc. 110] and the proceedings against him abated upon his death on December 14, 2016.

[5] As discussed in footnote 3 above, Defendant Hofstetter was charged with seven counts of money laundering in the Superseding Indictment and is charged with five counts of money laundering in the Second Superseding Indictment.

laundering. Defendant Hofstetter is charged with three counts and the other codefendants are charged in two counts of maintaining a drug-involved premises. Defendants Hofstetter and Cynthia Clemons are charged with one count each of distributing controlled substances outside the scope of professional practice and without a legitimate medical purpose. Defendants Hofstetter and Clemons are also subject to a potential enhanced penalty for the alleged death of a patient with regard to two counts, which increases the punishment for those counts from a statutory maximum of twenty years to a statutory mandatory minimum of twenty years and a maximum of life imprisonment.

## II. POSITIONS OF THE PARTIES

The Defendants ask the Court to dismiss the Superseding Indictment because (1) the Government's delay in bringing the indictment violates their Fifth Amendment right to the due process of law and (2) the Superseding Indictment fails to state an offense. Defendants Hofstetter, Newman, and Clemons contend that the Government's one and one-half year delay in charging Defendants Newman, Clemons, McCrary, Pecorella, and Larson deprives them of the due process of law. They assert that this case arises out of the execution of search warrants at three clinics on March 10, 2015, which they maintain concluded the Government's investigation of the case. They argue that the Government delayed bringing charges against the named codefendants in order to gain a tactical advantage in the instant litigation. They assert that the delay in charging the codefendants has prejudiced their ability to defend against the instant charges because the testimony of a material witness has been lost.

Secondly, Defendants Hofstetter, McCrary, Clemons, and Newman contend that the Superseding Indictment fails to state an offense. They argue that the Government's expert

3

reports reveal that the conduct alleged does not violate the statutes charged. Specifically, they assert that Government's experts only examined a fraction of the patient files from the clinics and opine that the Defendants breached a civil standard of care. Thus, the Defendants' claim that the Government cannot prove beyond a reasonable doubt that they distributed controlled substances outside of the scope of professional practice and without a legitimate medical purpose.

The Government responds [Doc. 193] that it acted in good faith in seeking the Superseding Indictment within the first half of the five-year statute of limitations. It also argues that the Superseding Indictment properly alleges the crimes charged. The Government asserts that whether it can prove the charged crimes at trial is not a basis for dismissing the charges.

## III. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. The Court begins by observing that "a trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment. *Russell v. United States*, 369 U.S. 749, 760-61 (1962). Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense. *Hamling v. United States*, 418 U.S. 87, 177 (1974); *Russell*, 369 U.S. at 761. Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the accused shall enjoy the right .

4

Case 3:15-cr-00027-TAV-DCP   Document 275   Filed 01/03/18   Page 4 of 19
PageID #: 4619

. . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI; *Russell*, 369 U.S. at 761.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling*). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *Landham*, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *Hamling*, 418 U.S. at 117-18 (quoting *United States v. Hess*, 124 U.S. 483, 487(1888)); *Landham*, 251 F.3d at 1079.

The Defendants challenge both the timing and the legal sufficiency of the Superseding Indictment. They argue that the Government's strategic delay in seeking the Superseding Indictment violates their Fifth Amendment right to the due process of law. They also contend that the Superseding Indictment fails to state violations of the Controlled Substances Act as a matter of law, because the Government's expert proof does not establish criminal violations. The Court examines each of these arguments in turn.

5

## A. Pre-Indictment Delay

Defendants Hofstetter, Newman, and Clemons argue that the Government's nineteen (19)-month delay in bringing the Superseding Indictment violates their right to the due process of law, because former Codefendant Richard Larson died two months after the Superseding Indictment was filed. The Defendants contend that the Government delayed indicting them in order to gain a strategic advantage in depriving them of the testimony of Dr. Larson, who was the supervising physician in the pain clinics at issue.

The Court begins by observing that statutes of limitations provide the main protection against prosecutorial delay in charging a defendant. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). "Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far distant past." *Toussie v. United States*, 397 U.S. 112, 114 15 (1970). In the present case, the charged conspiracy to distribute and dispense controlled substances is alleged to have ended on March 10, 2015. The Superseding Indictment was filed on October 4, 2016, which is well within the applicable five-year statute of limitations.[6] *See* 18 U.S.C. § 3282(a) (imposing a five-year statute of limitations for all non-capital cases).

Nevertheless, delay in prosecuting a defendant can implicate due process even if the indictment is brought within the statute of limitations. *United States v. Marion*, 404 U.S. 307, 325 (1971) (reversing dismissal for three-year time period between crimes and indictment). To assess whether a constitutional violation occurred, courts must determine

---

[6] In fact, Defendant Hofstetter was first charged in an Indictment [Doc. 3] filed on March 4, 2015, and, thus, suffered *no* delay.

whether the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency,'" are violated. *Lovasco*, 431 U.S. at 790 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), and *Rochin v. California*, 342 U.S. 165, 173 (1952)). The defendant must shoulder a "heavy burden" in order to show that his or her rights were violated by preindictment delay. *United States v. Baltimore*, 482 F. App'x 977, 981 (6th Cir. 2012). "Dismissal for pre indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982), *see also Marion*, 404 U.S. at 324; *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir.) (finding government did not file superseding indictment in order to gain a strategic advantage), *cert. denied*, 550 U.S. 965 (2007). As discussed below, the Court finds that the Defendants have failed to show either substantial prejudice or a bad motive on the part of the Government.

### *(1) Substantial Prejudice*

The defendant bears the burden of showing substantial prejudice by definite proof, rather than speculation. *United States v. Birney*, 686 F.2d 102, 105-06 (2d Cir. 1982); *see also United States v. Rogers*, 118 F.3d 466, 475 (6th Cir. 1997). In the present case, the Defendants argue that the prosecutorial delay prejudiced them, because they lost the testimony of Dr. Richard Larson. They maintain that Dr. Larson was the supervising physician at the three pain clinics at issue, that he supervised the treatment provided by Defendants Newman and Clemons, and that he made notes on the patient files. The Defendants assert that at the time of the Superseding Indictment, Dr. Larson was in extremely poor health and that the Government

7

Case 3:15-cr-00027-TAV-DCP    Document 275    Filed 01/03/18    Page 7 of 19
PageID #: 4622

failed to bring him into Court for his initial appearance and the appointment of counsel. They contend that Dr. Larson died before he could provide testimony for the Defendants and that his testimony would have been material to their defense. At the motion hearing, defense counsel argued that Dr. Larson could have testified about the standard of treatment used by midlevel employees, like Defendants Newman and Clemons, and what he meant by the symbols (circles and check marks) he wrote on the patient files.

The Government argues that it did not know about the extent and specific nature of Dr. Larson's medical problems until after the Superseding Indictment and that Dr. Larson would have died pending trial, even if he had been included in the original Indictment. It also contends that Dr. Larson was a codefendant, which precluded Defendants Hofstetter, Newman, and Clemons from interviewing him or compelling his testimony at trial. Moreover, the Government asserts that the Defendants have not lost the ability to assert a defense that places blame on Dr. Larson, even though he is deceased. Thus, the Government asserts that the Defendants have failed to show prejudice, much less substantial prejudice.

The Court agrees with the Government that the Defendants have failed to show substantial prejudice. "The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means." *Rogers*, 118 F.3d at 475. However, a defendant does not suffer substantial prejudiced from a potential witness's death if the substance of the witness's testimony is otherwise available. *Id.* In the instant case, the Defendants, all of whom worked with Dr. Larson, are able to explain the clinics' policies with regard to treatment and their interpretation of Dr. Larson's notations on the files. Alternatively,

8

the Defendants may call other uncharged clinic employees to testify about clinic policies and Dr. Larson's notations on the files.

Additionally, the instant Defendants can only speculate that Dr. Larson, who was also charged in the Superseding Indictment, would have waived his right against self-incrimination and testified for them. As stated above, such speculation is insufficient to meet the substantial prejudice standard. Finally, even assuming for the sake of argument that Dr. Larson would have been willing to testify for the Defendants, the Court questions whether the case could have proceeded to trial before Dr. Larson's death in December 2016, given the large amount of discovery. The undersigned finds that the Defendants have failed to show that they suffered substantial prejudice from the timing of the Superseding Indictment.

### *(2) Tactical Advantage*

The Defendants must also show that the Government intentionally caused the preindictment delay in order to gain a tactical advantage. *See Marion*, 404 U.S. at 324. The Defendants argue that the Government's investigation was complete following the execution of search warrants on March 10, 2015. They suggest that the Government had no valid reason to delay charging Defendants Newman and Clemons after that date. The Government states that following the execution of search warrants, it had to process the evidence seized and subpoena the records from more than one hundred fifty bank accounts. It contends that it also engaged in the prosecution of over one hundred clinic customers and interviewed as many as one hundred uncharged witnesses. The Government argues that was is not required to file charges until it believed that it could prove the Defendants' guilt beyond a reasonable doubt.

9

Even when a prosecutor believes probable cause exists to seek an indictment, the prosecutor is not compelled to file charges that day or at any time before he or she is satisfied that the suspect's guilt can be proven beyond a reasonable doubt. *Lovasco*, 431 U.S. at 791. To hold otherwise would have negative consequences for potential defendants because it would "increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried." *Id., see also United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984) (observing that requiring the government to prove and courts to determine that the government brought the prosecution as soon as it had sufficient evidence to gain a conviction would impose burdensome record-keeping requirements on prosecutors, as well as burdening courts reviewing the prosecutors' decisions). The Government states that it did not bring charges against Defendants Newman, Clemons, and Larson in the original Indictment, due to its ongoing investigation into the alleged conspiracy. Unlike a prosecution intentionally delayed for the Government's tactical advantage, the prosecution of a defendant "following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 796.

Moreover, the Court finds that the Defendants' contention that the Government intentionally delayed bringing the charges in the Superseding Indictment in order to gain a tactical advantage is merely speculative. The Defendants simply cite to the nineteen-month lapse between the Indictment and Superseding Indictment and assert the Government knew Dr. Larson was ill. AUSA Stone denies knowing the extent and specific nature of Dr. Larson's medical issues. AUSA Stone's unsuccessful efforts to arrange Dr. Larson's initial appearance at the time of the Superseding Indictment bear this out. Moreover, the Government argues that it too was prejudiced, rather than given an advantage, by the delays caused by its investigation

of this case. The Court concludes that there is no basis to support a finding that the Government intentionally delayed indicting Defendants Newman and Clemons in order to gain a tactical advantage.

In summary, the Court finds that the Defendants have failed to show both that the delay was an intentional device by the Government for the purpose of gaining a tactical advantage and that the delay has caused them substantial prejudice. Accordingly, the Court finds that the nineteen-month lapse of time from the Indictment to the Superseding Indictment does not violate fundamental concepts of justice or defy the standards of fair play and decency. *See Lovasco*, 431 U.S. at 790.

### B. Failure to Charge Violations of the Controlled Substances Act Sufficiently

The Superseding Indictment charges the Defendants with several violations of the Controlled Substances Act: Conspiracy to distribute and dispense controlled substances outside the scope of professional practice and without a legitimate medical purpose in violation of 18 U.S.C. § 846; maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1); and distributing and dispensing controlled substances outside the scope of professional practice and without a legitimate medical purpose in violation of 18 U.S.C. § 841. Additionally, Defendants Hofstetter and Clemons are charged with a penalty enhancement from 18 U.S.C. § 841(b)(1)(C) for the death of an individual, who is alleged to have overdosed on a controlled substance that was distributed and dispensed outside the scope of professional practice and without a legitimate medical purpose.

Defendants Hofstetter, McCrary, Newman and Clemons move the Court to dismiss the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v),[7] arguing that it fails to state an actual violation of the Controlled Substances Act. They contend that now that the Government has disclosed the summaries of its experts' reports elaborating on the charges, the conduct alleged is not a violation of the charged statutes. They state that the Government's experts examined less than one percent of the six thousand patient files from the two pain clinics at issue. Moreover, they maintain that the experts' summaries reveal that they employed a civil standard of due care or reasonableness, while the Government must prove beyond a reasonable doubt that the Defendants prescribed drugs for illegitimate medical purposes. They argue that the Government's expert disclosures show that the Government is unable to prove that they engaged in conduct that violated the Controlled Substances Act.

The Government maintains that the Defendants' argument does not reveal a defect in the Superseding Indictment. It contends that the Superseding Indictment contains all of the elements of the statutes charged and states the essential facts in sufficient detail to permit the Defendants to know the charges that they must defend. The Government points out that it has other proof, such as the testimony of the Defendants' coworkers and patients, in addition to the testimony of its experts that it will present at trial. Additionally, it disagrees with the Defendants' characterization of its experts' opinions as not relevant to the criminal charges.

At the motion hearing, the undersigned questioned whether the Defendants could essentially request a summary judgment determination in a criminal case. The following day, the Defendants filed a supplemental brief [Doc. 202], arguing that the Court may dismiss the

---

[7] Rule 12(b)(3)(B)(v) provides that a party must file a pretrial motion to challenge a defect in the indictment, specifically that it fails to state an offense, if the issue "can be determined without a trial on the merits."

12

Superseding Indictment if the undisputed facts show that the Government cannot prove the charged offense as a matter of law. The Defendants assert that the Court is not limited to the allegations in the charging instrument but may look to extrinsic evidence—here, the Government's summaries of its experts' reports—to make this determination. They argue that because the Government's experts have employed a civil standard in their reports, the undisputed facts in this case do not show a violation of the Controlled Substances Act as a matter of law.

The Government responded [Doc. 213] in opposition, rejecting the Defendants' narrow characterization of its proof as consisting solely of its expert summaries. The Government contends that the Court should allow the jury to review the expert testimony in light of the other evidence offered at trial. It maintains that to decide the issue pretrial based solely upon the expert summaries invades the province of the jury.

Federal Rule Criminal Procedure 12(b)(3)(B)(v) provides that "a defect in the indictment," specifically the failure to state an offense, "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." *Id.* at 665. In *Jones*, the appellate court held that the district court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to

13

apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" *Id.*; *see also United States v. Vertz*, 40 F. App'x 69, 71 (6th Cir. 2002) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the [c]ourt is reviewing a question of law, not fact").

From the case law and Rule 12(b)(3)(B)(v), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. *Jones*, 542 F.2d at 665; *see also United States v. Fitzgerald*, No. 1:16-cr-178, 2017 WL 74074, *2 (6th Cir. Jan. 9, 2017) (examining whether undisputed facts in the criminal complaint constituted operating an airplane while under the influence of alcohol as a matter of law). The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is entitled to a judgment of acquittal. However, the prosecution's evidence is tested at trial, not in a preliminary proceeding.

*United States v. Short*, 671 F.2d 178, 183 (1982); *see also United States v. Levin*, 973 F.2d 463, 472 (6th Cir. 1992) (Boyce, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

14

In the instant case, the Defendants contend that the Government's expert summaries do not show, beyond a reasonable doubt, that they violated the Controlled Substances Act, because the experts only examined a small fraction of the 6,000 patient files seized from the clinics and because the experts used a civil, rather than a criminal, standard. Specifically, the Defendants contend that the Government's experts opine that they did not act within standard of care required of licensed medical professionals. The Defendants argue that while these opinions on whether their actions fell within the "standard of care" may be suitable for a civil malpractice case, they are insufficient for the quantum of proof required in a criminal case.

The Court turns first to the legal standard that the Government must prove, in order to show that a medical practitioner, licensed to prescribe controlled substances, has done so in violation of the Controlled Substances Act ("CSA"). Title 21, United States Code § 841(a)(1) provides "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" Although certain licensed medical professionals are authorized to prescribe controlled substances, a "prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).[8] Thus, "[i]n order to

---

[8] "Every person who dispenses, or who proposes to dispense, any controlled substance, shall obtain from the Attorney General a registration issued in accordance with the rules and regulations promulgated by him." 21 U.S.C. § 822(a)(2). "Persons registered by the Attorney General under this subchapter to manufacture, distribute, or dispense controlled substances or list I chemicals are authorized to possess, manufacture, distribute, or dispense such substances or chemicals (including any such activity in the conduct of research) to the extent authorized by their registration and in conformity with the other provisions of this subchapter." 21 U.S.C. § 822(b). Thus, medical professionals authorized to issue prescriptions must do so in compliance with the regulations issued by the Attorney General.

15

support a violation of the CSA, the jury ha[s] to find that the [medical professionals] knowingly and intentionally acted 'outside the course of professional practice' and without 'a legitimate medical purpose.'" *United States v. Chube II*, 536 F.3d 693, 697 (7th Cir. 2008)

The Supreme Court determined, over forty years ago, that doctors could be charged with violating § 841(a)(1), despite the fact that they are authorized to prescribe controlled substances. *United States v. Moore*, 423 U.S. 122 (1975). In *Moore*, the Court unanimously held that "registered physicians can be prosecuted under § 841 when their activities fall *outside the usual course of professional practice*" because "only the lawful acts of registrants are exempted." *Id.* at 124, 131 (emphasis added). The Supreme Court upheld the application of the CSA to Defendant Moore, who prescribed methadone to patients in large amounts without an "adequate physical examination," directions for use, regulating the dosage, or taking precautions to prevent misuse or resell of the drug. *Id.* at 124. Dr. Moore also ignored test results and charged graduated fees based upon the amounts of drugs prescribed, rather than the services performed. *Id.* According to the Supreme Court, "[i]n practical effect, he acted as a large scale 'pusher' not as a physician." Id.

Rather than expressly defining which conduct is "for a legitimate medical purpose" and "in the usual course of professional practice," the Sixth Circuit has held that each case must be examined on its own facts:

> There are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice. Rather, the courts must engage in a case-by-case analysis of evidence to determine whether a reasonable inference of guilt may be drawn from specific facts.

16

*United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992).[9]  Part of this case-by-case determination involves examining whether the medical professional acted with the usual standard of care: "'[I]t is impossible sensibly to discuss the question whether a physician was acting outside the usual course of professional practice and without a legitimate medical purpose without mentioning the usual standard of care.'" *United States v. Volkman*, 797 F.3d 377, 389 (6th Cir.) (quoting with approval *Chube II*, 538 F.3d at 698), *cert. denied*, 136 S. Ct. 348 (2015); *see also United States v. Quinones*, 536 F. Supp. 2d 267, 274 (E.D.N.Y. 2008) (observing that, in order to convict a medical professional of a violation of § 841(a)(1), the government must necessarily prove "what the medical profession would generally do in the circumstances"). In other words, a discussion of the usual standard of care is relevant to whether a medical professional violated the CSA, and the Government's experts may properly examine whether the Defendants' actions fell within the usual standard of care.

The Government argues that a close examination of its expert summaries reveals that its experts' opinions are not limited to whether the Defendants failed to exhibit the usual standard of care but, instead, "clearly contemplate the criminal standard of proof." [Doc. 213, p.1] However, the Court need not parse the expert summaries to determine what they contemplate or infer at this juncture.[10] First, the Court finds that the Defendant's challenge to the Government's

---

[9] The Sixth Circuit has upheld the application of § 841(a)(1) to medical professionals in the face of a vagueness challenge. *United States v. DeBoer*, 966 F.2d 1066, 1068-69 (6th Cir. 1992). "[T]he language in § 841(a)(1) and 21 C.F.R. § 1306.04(a) clearly defines the [medical professional's] responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug." *Id.* at 1069. The court determined that the evidence was sufficient to show "that the defendant acted outside the scope of his profession." *Id*

[10] The Court makes no finding about the admissibility of the Government's expert opinions. Following the filing of the Second Superseding Indictment, the undersigned has extended [Doc. 251] the Government's deadline for expert disclosures to May 16, 2018, and the deadline for motions challenging experts to August 16, 2018. Although the Defendants have filed a Joint

17

expert summaries is actually a challenge to the sufficiency of the expert testimony, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, rather than a challenge to the sufficiency of the Second Superseding Indictment. The Government may elect ultimately to call other experts or to proceed with no expert testimony, either of which would have no effect on the sufficiency of the charging instrument.

Second, the Court finds that even if the Government's expert opinions solely focused on the usual standard of care, dismissal of the Second Superseding Indictment would not be appropriate, because the other facts of this case, aside from the expert opinions, are in dispute. The Government has other evidence, such as the testimony of the Defendants' coworkers and patients, which is not before the Court. While the Defendants have asked the Court to conduct an evidentiary hearing to resolve this issue, the undersigned finds that an evidentiary hearing to determine whether the Government has enough evidence to prove beyond a reasonable doubt that the Defendants violated the charged statutes is essentially a trial. Rule 12(b)(3)(B)(v) motions are only appropriate if they can be resolved "without a trial on the merits[.]" Moreover, whether or not the Defendants have distributed controlled substances for a legitimate medical purpose while acting in the usual course of their professional practice is a question of *fact*, and not solely a question of law, and, as such, it is reserved to the jury. The undersigned recommends that the Defendants' request to dismiss the charges because they fail to state an offense be denied.

---

Motion to Exclude Reported Expert Opinions [Doc. 157], the Court finds that this motion will not be ripe for determination until after the extended disclosure and motion deadlines.

18

## IV. CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to dismiss the Second Superseding Indictment. For the reasons set forth herein, it is **RECOMMENDED** that the Defendants' joint Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(ii) and/or 12(b)(3)(B)(v) [Doc. 171] be denied.[11]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).