IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CR-27-TAV-DCP |
| | ) | |
| SYLVIA HOFSTETTER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Hofstetter asks [Doc. 403] the Court to suppress all evidence seized during the March 10, 2015 search of her residence, arguing the search violated her rights under the Fourth Amendment. The Defendant contends that the search warrant is invalid because the affidavit in support of the search warrant fails to provide a nexus between the crimes alleged and her home. In this regard, she contends that the affidavit does not include any specific fact showing that her residence contained evidence of drug trafficking.[1]

Based upon the Court's review of the search warrant affidavit, the parties' briefs, and the relevant case law, the undersigned finds that law enforcement searched Defendant Hofstetter's residence pursuant to a valid search warrant. Accordingly, the Court recommends

---

[1] At the February 13, 2019 motion hearing on all pending motions, counsel for Defendant Hofstetter and the United States waived argument on the Motion to Suppress Evidence Obtained Pursuant to the Search Warrant for Defendant Hofstetter's Residence [Doc. 403] and submitted the issues to the Court on the briefs.

1

that the Motion to Suppress Evidence Obtained Pursuant to the Search Warrant for Defendant Hofstetter's Residence [Doc. 403] be denied.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

Defendant Hofstetter is charged [Doc. 320][2] with a RICO conspiracy (Count One), two conspiracies to distribute and dispense controlled substances illegally (Counts Two and Four), two money laundering conspiracies (Counts Three and Five), five counts of money laundering (Counts Six through Ten), three counts of maintaining a drug-involved premises (Counts Eleven through Thirteen), and six counts of illegally distributing and dispensing controlled substances (Counts Fourteen through Nineteen). These charges arise out of the operation of a pain management clinic in Hollywood, Florida, and three pain management clinics in East Tennessee [Doc. 320, ¶¶8-11]. The Indictment alleges that Defendant Hofstetter worked at the Florida clinic; administered and managed two of the Tennessee clinics; and owned, managed, and administered the third Tennessee clinic [Doc. 320, ¶20].

On March 6, 2015, United States Magistrate Judge H. Bruce Guyton issued a search warrant [Doc. 380, pp.66-74] for Defendant Hofstetter's residence and her 2015 Lexus.[3] The search warrant authorized law enforcement to seize "records, documents, tangible objects, and other information and data that relate to or constitute evidence, fruits, or instrumentalities of" drug-

---

[2] The instant charges are from the Fourth Superseding Indictment [Doc. 320], which was filed on May 1, 2018. Defendant Hofstetter was originally charged [Doc. 3] on March 4, 2015, with a drug-trafficking conspiracy, a money-laundering conspiracy, and seven counts of money laundering, relating to the Tennessee clinics.

[3] Defendant Hofstetter does not challenge the search of her 2015 Lexus. Moreover, although law enforcement seized the 2015 Lexus during the execution of the search warrant, it does not appear that any evidence was seized from it [*See* Doc. 380, pp. 75-76].

trafficking, a drug-trafficking conspiracy, and money laundering between January 2011 and March 2015 [Doc. 380, p.70]. Special FBI Agent Kelly L. Kindness submitted a one-hundred-and-nineteen-page affidavit [Doc. 380-1] in support of the search warrant.

Defendant Hofstetter argues [Docs. 403 & 404] that the search warrant affidavit fails to provide a nexus between the allegations of drug trafficking and her residence.[4] She contends that the only connection to the alleged drug-trafficking at the pain management clinics and her home are the general allegations that her home contained an office, that she drove from her home to the clinics, and that she was employed by the pain management clinics, where the alleged drug trafficking occurred. She argues that these general allegations are insufficient to provide the nexus required by the Fourth Amendment. Thus, she maintains that the search warrant affidavit fails to provide probable cause to search her residence.

The Government responds [Doc. 418] that Agent Kindness's affidavit provides probable cause for the issuance of the search warrant to search the Defendant's residence for

---

[4] The Court notes that the instant motion was submitted as a part of Defendant Hofstetter's third round of pretrial motions in this case. Defendant Hofstetter initially filed pretrial motions for a change of venue and a jury questionnaire in March 2016, while represented by retained counsel Attorney Richard Escobar and associates. Following the entry of the First Superseding Indictment [Doc. 70] on October 4, 2016, Attorney Escobar withdrew, and the Court appointed current counsel Attorney Charles Burks to represent Defendant Hofstetter. Defendant Hofstetter again filed pretrial motions in May 2017. The Court appointed [Doc. 270] co-counsel Attorney Loretta Cravens on October 25, 2017. The Court issued rulings or recommendations on most of the second round of pretrial motions in 2017 [Docs. 223 & 247] and in January [Doc. 275] and February [Doc. 309] of 2018. Subsequent superseding indictments issued as follows: A Second Superseding Indictment [224] on July 7, 2017; a Third Superseding Indictment [Doc. 278] on January 4, 2018; and a Fourth Superseding Indictment [Doc. 320] on May 1, 2018. Defendant Hofstetter was permitted to file motions relating to new charges in the Fourth Superseding Indictment or discovery received after the May 19, 2017 motion deadline in January 2019. Defendant Hofstetter does not explain why the instant motion, relating to a search warrant issued on March 6, 2015, was not previously litigated. However, the Government raises no objection as to the timeliness of this motion. Accordingly, the Court will address the merits of the Motion to Suppress.

3

evidence of drug trafficking and money laundering. It asserts the affidavit establishes that the Defendant had a home office in her home, that the pain management clinics were the Defendant's sole source of income, and that the Defendant was seen traveling between her home and the clinics she managed. Additionally, the Government maintains that the affidavit incorporates the Indictment, which establishes probable cause to believe that Defendant Hofstetter committed the crimes of drug trafficking and money laundering, which were described in the affidavit. It argues that the Grand Jury also found probable cause that the Defendant's residence was involved in crimes based upon the forfeiture allegations in the Indictment. Finally, the Government maintains that the affidavit shows a clear nexus between the Defendant's residence and evidence of money laundering. Thus, the Government contends that the search warrant affidavit provides a nexus between the crimes alleged and the Defendant's residence.

## II.     ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Defendant contends that although her residence was searched pursuant to a search warrant, the search warrant was not based upon probable cause. The issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical,

4

common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

In the instant case, Special FBI Agent Kelly Kindness provided a master affidavit in support of search warrants for three pain clinics and for Defendant Hofstetter's residence and vehicle, in order to seize evidence and fruits of drug trafficking and money laundering. In the affidavit, Agent Kindness asserts that the pain clinics are illegally distributing prescriptions for controlled substances without a legitimate medical purpose and that a number of "sponsor groups" (groups of patient-addicts "sponsored" by drug dealers, who pay for their appointments and medication in exchange for a portion of the drugs they are prescribed) use the clinics as the source of supply for illegal drug trafficking [Doc. 380-1, ¶5 (#6982)[5]]. The affidavit characterizes the clinics as "pill mills," with a "business model" of giving their customers/patients, who are opioid addicts, prescriptions for controlled substances they desire in exchange for money [Doc. 380-1, ¶6 (#6984)]. The affidavit states that on March 4, 2015, the grand jury returned thirty-two (32) indictments charging one hundred and two (102) defendants, including Defendant Hofstetter, with

---

[5] The docket page identification number is included to aid in locating information in the lengthy affidavit.

5

conspiring to distribute oxycodone and to commit money laundering "by owning, operating, or working at pill mills, or by participating in sponsor groups, which utilized one or more of the clinics to obtain pill supplies" [Doc. 380-1, ¶17 (#6989)].

Defendant Hofstetter argues that the search warrant affidavit fails to show a nexus between the drug trafficking allegedly occurring at the pain management clinics and her residence. She contends the general facts that her home contained an office, that she worked at the pain management clinics in question, and that she drove between her home and the clinics are insufficient to show that evidence of drug-trafficking would be found at her home.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (en banc), *cert. denied*, 543 U.S. 851 (2004). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "[T]his nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir.), *cert. denied*, 555 U.S. 1019 (2008). An officer's training and experience regarding where criminals keep contraband or proceeds is relevant to the probable cause determination, but it alone cannot provide a nexus between the location to be searched and the crime. *See United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

In the instant case, the Court finds that Agent Kindness's affidavit contains facts providing a nexus between the crimes under investigation and the Defendant's home. The affidavit alleges that Hofstetter is "a part-owner and manager" at the three clinics [Doc. 380-1, ¶33 (#6997)] and "manages the daily operations . . . and handles the finances of the clinics" [Doc. 380-1, ¶128(a)

6

(#7078]. The affidavit states that the "clinics are her sole source of income," and that she "has no legitimate source of income" [Doc. 380-1, ¶120 (#7073)]. It asserts that Hofstetter listed her profession as "medical practice administrator" on her tax returns in 2011-2013 [Doc. 380-1, ¶120 (#7073)].

The affidavit also relates that Hofstetter "established a home office within her residence . . . for her job as a medical practice administrator" [Doc. 380-1, ¶121 (#7074)]. It states that in 2013, she claimed $29,093 in expenses on her tax return for the use of her home office and that she received an expense allowance of $1,639 for her medical practice administration business [Doc. 380-1, ¶121 (#7074)]. Based upon the fact that Hofstetter's sole source of income comes from her management and ownership of the clinics, the affidavit alleges that there is probable cause to believe that Hofstetter conducts business for the clinics and maintains financial and business records related to the clinics in her home office [Doc. 380-1, ¶123 (#7074)]. The affidavit asserts that Hofstetter frequently drives her 2015 Lexus between the clinics and her home office [Doc. 380-1, ¶122 (#7074)]. Thus, it states it is reasonable to infer that she uses her vehicle to transport clinic and financial documents [Doc. 380-1, ¶122 (#7074)].

Because Defendant Hofstetter manages three clinics and maintains a business office in her home, the Court finds that it is reasonable to infer that business and financial records from the clinics would be found in the Defendant's residence. The Defendant contends that the statements in the affidavit purportedly providing a nexus are too general and vague to link her home to the evidence sought. "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). Here, the Court finds that specific and concrete evidence connects the Defendant's residence with the illegitimate pain management clinics. The affidavit relates that

7

the Defendant was the manager and operator of the clinics and that she had no other source of income. The Defendant specifically held herself out as a medical practice administrator, who worked from home, by claiming expenses for a home office on her tax returns. The Court finds this to be specific and concrete evidence linking the Defendant's home with the pain management clinics in this case.

The Defendant suggests that the information about the Defendant maintaining a business office in her home is stale, because she claimed expenses for her home office in 2013 and the warrant was sought two years later. The Government contends that because the search warrant was sought in March of 2015, the 2013 tax returns were the most recent available. Whether information in an affidavit is stale does not depend upon an arbitrary time limitation but is tied to the nature of the crime, the criminal, the location of the search, and the items sought. *United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). Our appellate court has listed the following "variables" as pertinent to the staleness determination: Is the "'the character of the crime'" a "'chance encounter in the night or regenerating conspiracy[;]'" whether "'the criminal' is "'nomadic or entrenched[;]'" whether "'the thing to be seized . . . [is ]perishable and easily transferable or of enduring utility to its holder'" and whether "'the place to be searched [is a ]mere criminal forum of convenience or [a] secure operational base[.]'" *Id.* at 923 (quoting *Andresen v. State*, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975)). The length of time from the events in the affidavit to the warrant application is important but not controlling. *Id.* at 923. Moreover, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001).

In the instant case, the factors listed in *Spikes* argue against any finding of staleness. The affidavit describes a large and ongoing conspiracy to distribute prescription drugs. Defendant

8

Hofstetter, as a manager and part owner of the clinics, is "entrenched" in their operation. Finally, the Court finds that business and financial records are items of enduring value to the Defendant and are likely to be retained in her home office, which is a secure operational base. Accordingly, the Court finds that the affidavit provides a nexus between the allegations of conspiring to distribute controlled substances illegally and the Defendant's home and that nexus is not stale.

Additionally, the Court agrees with the Government that the affidavit provides a clear nexus between the allegations of money laundering and the Defendant's residence. The affidavit relates that Sylvia Hofstetter is charged with conspiring to commit money laundering [Doc. 380-1, ¶17 (#6989)]. The affidavit alleges that Hofstetter "is directly involved in suspicious financial activities involving millions of dollars that appear to be indicative of money laundering" [Doc. 380-1, ¶33 (#6997)]. The affidavit describes numerous financial transactions by Defendant Hofstetter with money derived from the clinics [*See* Doc. 380-1, ¶¶ 132-56, (#7079-94)]. It relates that Hofstetter spent clinic proceeds on jewelry and gambling [*See* Doc. 380-1, ¶¶ 154-55 (#7089-94)]. Jewelry and personal financial records are items that are likely to be kept at one's home. *See United States v. Abboud*, 438 F.3d 554, 572 (6th Cir.) (observing that "[o]ne does not need Supreme Court precedent to support the simple fact that records of illegal business activity . . . [and] personal financial records are . . . usually stored at a person's home or place of business"), *cert. denied*, 549 U.S. 976 (2006). Moreover, the Defendant's residence is subject to forfeiture in the Indictment [Doc. 3], which is referenced in the affidavit [Doc. 380-1, ¶17 (#6989)]. This demonstrates that the grand jury found the Defendant's home to be linked to the crimes alleged in the Indictment. Accordingly, the Court finds ample probable cause to search the Defendant's home for evidence of money laundering.

9

In summary, the Court finds the affidavit of Agent Kindness provides probable cause to search the Defendant's home for evidence of conspiring to distribute controlled substances and money laundering.

### III. CONCLUSION

After carefully considering the parties' briefs, the search warrant affidavit, and the relevant legal authorities, the Court finds that law enforcement properly searched the Defendant's residence pursuant to a valid search warrant. Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion to Suppress Evidence Obtained Pursuant to the Search Warrant for Defendant Hofstetter's Residence [Doc. 403] be denied.[6]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).