IN UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:15-CR-27-TAV-DCP |
| SYLVIA HOFSTETTER, | ) | |
| COURTNEY NEWMAN, and | ) | |
| CYNTHIA CLEMONS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendants Hofstetter, Newman, and Clemons ask [Doc. 534] the Court to compel the Government to permit them reasonable access to inspect the original, physical evidence in this case, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E). They argue that the restrictions placed on their access to this evidence—that they can view a portion of the evidence at the FBI office and under the supervision of the case agent, the day and time for which must be arranged in advance—unreasonably limit their inspection of the evidence and provide the Government with knowledge of their trial preparations. The Government opposes [Doc. 549] the Defendants having greater access or, at this point, any access to the original evidence in this case. It contends that it has fulfilled its discovery obligations by providing electronic copies of all of the evidence, that defense counsel have had ample time to inspect the physical evidence pursuant to the current protocols, and that it now needs to devote all of its resources to trial preparation.

The parties appeared before the undersigned on August 20, 2019, for a hearing on this motion. Assistant United States Attorneys Tracy L. Stone and Kelly Kathleen Pearson appeared on behalf of the Government. Attorneys Charles C. Burks, Jr., and Loretta G. Cravens, who appeared by telephone, represented Defendant Hofstetter. Attorneys Christopher J. Oldham and Mark E. Brown represented Defendant Newman. Attorneys Randall E. Reagan and Cullen Michael Wojcik represented Defendant Clemons. The Defendants were not in attendance.[1]

At the hearing, Mr. Oldham stated that defense counsel have inspected the evidence at the FBI office for three hours at a time on every available date. FBI Agent Mick Nocera, who was present at the hearing, estimated that defense counsel have inspected 60 to 70 boxes of evidence out of approximately 400 to 450 boxes in total to date. Mr. Oldham argued that continued inspection of the original evidence, rather than the electronic copies, is necessary to their defense, because the actual files contain different colors of ink and tabs that are not evident from the copies and because inspection of the actual files allows counsel to understand the organization of the files and how many people have worked on them. He maintained that the protocol required by the FBI is unworkable because counsel lack sufficient time to review the evidence efficiently, the defense runs the risk of revealing trial strategy with the agents observing them and reporting back to Government counsel, and defense counsel cannot speak freely to each other while there.

Mr. Oldham said the Defendants decline to stipulate to the authenticity and chain of custody of the evidence in order to gain greater access, because some of the evidence is in the wrong order after scanning and counsel cannot know whether the scanner has accurately picked up all of the information on the documents. He said that the Defendants would stipulate to the

---

[1] The Court notes that Defendant Holli Womack and counsel notified [Doc. 550] the Court that they would not be attending the hearing, because Defendant Womack did not join in this motion.

chain of custody for the transfer of the evidence from the FBI vault to the U.S. Attorney's Office. Mr. Oldham asked the Court at least to order continued access to the evidence.

Mr. Burks stated that review of the original evidence gives him more information than reviewing the electronic copies. Mr. Burks and Mr. Reagan explained the delay from December 2018 to April 2019, when the request to inspect the evidence was reasserted, was due to counsels' focus on other aspects of this case, such as obtaining experts and litigating pretrial motions. Mr. Burks stated that in June 2019, AUSA Stone provided counsel with an index ("the 1B list") of the boxes of evidence, and he finally had a way to identify what evidence he wanted to review. Defense counsel were not able to estimate the amount of time needed to complete their inspection of the evidence, although counsel seemed to agree that at this point, approximately forty days out from trial, they would have to prioritize other aspects of trial preparation over inspection.

AUSA Stone argued that the Government fully complied with Rule 16 and this Court's Order on Discovery and Scheduling by providing electronic copies of all of the discovery. He stated that the Government went beyond what was required in permitting defense counsel to review the original evidence under the FBI protocols. He maintained that this accommodation requires a huge investment of time and resources from the Government, because the case agents must remain with defense counsel while they review the evidence and must spend two hours pulling the requested evidence before the meeting and then logging and returning the evidence to the vault thereafter. AUSA Stone stated that rather than using their time with the original evidence to spot check items about which defense counsel have questions, defense counsel appear to be undertaking a systematic review of the content of the original evidence, which review could be done electronically. AUSA Stone displayed two patient files from a box of evidence from the FBI vault to the Court. He stated that although the actual files contained black, blue, and red ink, each

3

person's handwriting is unique. Thus, he concluded that the fact that different people wrote on the files is apparent from the black and white electronic copies.

AUSA Stone stated that with trial quickly approaching, he needs the case agents to assist the Government with trial preparations, and they no longer have time to work with defense counsel in their review of the actual evidence. He stated that the case agents have not asked if other FBI agents could monitor the defense counsels' review of evidence, because other agents do not want to do this task, other agents have their own cases to work, and having other agents assist inserts more people into the chain of custody. He stated that because the Defendants have indicated they may raise chain of custody issues in this case, he cannot agree to a limited stipulation to chain of custody for the transfer of the files from the FBI office to the U.S. Attorney's Office. Moreover, even if this transfer was an option earlier in the case, it is no longer an option due to the imminent trial date. He agreed that FBI agents would have to monitor defense counsel, even if they reviewed the evidence at the U.S. Attorney's Office. AUSA Stone asked the Court to find that the Government has fully complied with Rule 16 and to deny any further review.

Mr. Oldham responded that defense counsel are reviewing the electronic evidence in order to narrow and prioritize which original evidence they need to inspect. He requested an *ex parte* hearing to explain to the Court why review of the original evidence is necessary to defense strategy. The Government objected, and the Court declined to hold an *ex parte* hearing. Mr. Oldham asserted that even if the Court denied defense counsels' request to view all of the original evidence, defense counsel need some limited time to inspect the original evidence going forward. He stated that defense counsel had one scheduled inspection session left and that he could likely get by with one or two more sessions. However, Mr. Oldham noted that he was concerned only

with the treatment side of the pain clinics, whereas Mr. Burks was concerned with the business side.[2]

**I. ANALYSIS**

With regard to documents and objects that the government must disclose in discovery, Rule 16 of the Federal Rules of Evidence provides, in pertinent part, that

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the items is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case in chief at trial, or

(iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). In the instant case, much of the evidence contained in the FBI vault clearly falls within the scope of Rule 16(a)(1)(E). The Defendants have requested access to the evidence, and the Government possesses the evidence, which is photographs, documents, and tangible objects. Moreover, the Court finds that the evidence falls into at least one and likely two or three of the categories of documents or objects that must be disclosed. The Court finds that the Defendants have shown much of the evidence—the patient files and the business records being two examples—to be material to preparing their defense. Additionally, much of the evidence, the

---

[2] The Court intended also to hear argument on Defendant Courtney Newman's Motion in Limine to Compel the Government to Produce Original Patient Files at Trial [Doc. 475]. However, Mr. Stone stated that he intended to file a response to this motion, which was filed on April 12, 2019, but had not done so yet, because the motion is styled as a motion *in limine*. The Court set a deadline of September 3, 2019, for the Government to respond to this motion and will hear argument on this motion at the motion hearing on September 10, 2019, at 9:30 a.m.

Government also intends to use in its case-in-chief at trial.³ Additionally, some of the evidence was seized from Defendant Sylvia Hofstetter's home and, thus, falls within the third category. The question for the undersigned is whether the Defendants have a right to inspect the original evidence or whether the Government's provision of scanned, electronic copies of the evidence is sufficient.

The Court agrees with the Defendants that inspection of qualifying documents or tangible items is mandatory, i.e. "the government *must*" disclose these items. Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). However, the plain language of Rule 16(a)(1)(E) reveals that the Government may provide copies in lieu of the actual evidence: "[T]he government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, *or copies* or portions *of any of these items*[.]" Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Accordingly, the Government is correct that its provision of copies of the evidence seized from the clinics and Defendant Hofstetter's home would normally fulfill its obligations under Rule 16(a)(1)(E), and under the Court's Order on Discovery and Scheduling [Doc. 8], which tracks the language of the Rule.

Nevertheless, in the instant case, the Court finds that the Defendants are entitled to inspect the original evidence, because, as the Government acknowledges, the original evidence contains information that the black and white electronic copies of the evidence do not reveal. The original evidence contains writing in different colors of ink that are apparently attributable to different authors. Additionally, some of the original documents and files are marked with Post-it-style flags, directing the reader's attention to certain pages. Because the type and extent of the medical care provided the patients is crucial to the Defendants' defense, which is that the

---

³ For example, the Court notes that the Government has summarized seven hundred of the 6,300 patient files seized from the Tennessee clinics in its DOMEX report, which it intends to present at trial [*see* Doc. 477, Government's Response to the Defendant's Joint Motion for a Daubert Hearing].

Defendants believed the pain management clinics in this case to be legitimate entities, rather than "pill mills," the Defendants need to be able to inspect the original evidence, at least with regard to the patient files. Accordingly, the Court finds that permitting the Defendants to inspect the original evidence, despite their receipt of the electronic copies, is warranted in this case.

The right to inspect evidence pursuant to Rule 16(a)(1)(E) does not permit a defendant to view the evidence free from reasonable restriction. For example, the Adam Walsh Child Protection Safety Act, 18 U.S.C. § 3509(m)(2)(A), prohibits a defendant's receipt of a copy of child pornography discoverable under Rule 16(a)(1)(E) "so long as the Government makes the property or material reasonably available to the defendant." The pornographic material "shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant," counsel, or a defense expert. 18 U.S.C. § 3509(m)(2)(B). Although the Adam Walsh Act does not apply in this case, the standard that the government must provide "ample opportunity" for inspection is instructive.

A review of the timeline relating to the issue of inspecting the original evidence in this case illustrates that the Government has provided ample opportunity for the Defendants to inspect the original evidence. On May 5, 2017, Defendants Hofstetter, Newman, and Clemons jointly moved [Doc. 151] to compel the Government to produce the actual patient files at trial, pursuant to Federal Rule of Evidence 1002. In this motion the Defendants also asked to inspect the original evidence in this case, stating "although there has been no issue with the Government in accessing this information, it is believed that any Order issued by this Court should include inspection by the defendants, their experts, or any investigators authorized by them to inspect the original documents [Doc. 151, p.2]. The Government responded [Doc. 187] that it has complied

with Rule 16 by providing electronic copies of the patient files, that is was willing to provide color copies of a limited number (less than 100) patient files, and that the Defendants could inspect all of the patient files at the U.S, Attorney's Office, if they are willing to waive chain of custody issues and to agree to reasonable inspection times. The Court heard argument on this motion at a motion hearing on June 7, 2017. The Court found [Doc. 309, p.21] the Defendant's request to inspect the original files to be moot, because the "Government agrees to allow the Defendants and members of the defense team to inspect the original files under reasonable conditions, including that they waive any chain of custody issues." The Court also found that the parties should be able to work out the details for the requested inspection without the Court's involvement.

The Court finds that the Defendants next requested to inspect the original evidence in late November 2018. AUSA Stone contacted the FBI to arrange the inspection. On December 4, 2018, AUSA Stone sent an email to defense counsel setting out the following protocol for inspecting the evidence at the FBI office: (1) Coordinate with the agents at least two days in advance, including designating specific boxes of evidence; (2) go through check in procedures upon arrival at the FBI office; (3) no cellular telephones, cameras, or laptop computers are permitted; (3) counsel may review the evidence in the FBI conference room, (4) case agents will be present during the review and escort counsel at all times; (5) FBI personnel will make digital photographs or copies of evidence for counsel; and (6) defense counsel will arrange for photocopies of evidence with the AUSA. Alternatively, AUSA Stone again offered to have the evidence brought to the U.S. Attorney's office.

According to AUSA Stone, the Defendants did not contact him again about the matter, until the issue was raised at a hearing in mid-April 2019 [Doc. 549, p.4]. At that time, the parties agreed to look into whether they could agree to a stipulation that would permit easier access

to the evidence at the U.S. Attorney's office. AUSA Stone states that he sent an email to defense counsel on April 17, 2019, offering to send a draft of a proposed stipulation that week and to move the evidence to the U.S. Attorney's office by the end of the next week but inviting defense counsel to schedule an initial inspection at the FBI office. Negotiations over a stipulation to the chain of custody were ultimately not fruitful. Defense counsel began viewing the evidence at the FBI office, subject to the protocol, on June 24, 2019, more than six months after this option was first proposed on December 4, 2018. The Court finds that the Government has provided defense counsel ample opportunity to inspect the evidence at the FBI office. Moreover, given defense counsels' refusal to stipulate to the chain of custody, the Court finds that the protocol required to view the evidence at the FBI office was reasonable. It is not the fault of the Government that the Defendants did not begin pursuing the opportunity to inspect the original evidence until three months before trial.

Despite the Defendants' failure to take full advantage of the opportunity the Government afforded to view the original evidence at the FBI office, the Court finds that it is not fair to cut off defense counsel's access to the original evidence abruptly, when they were anticipating at least one additional session this month. Mr. Oldham indicated that although defense counsel would like to inspect all of the remaining original evidence, they would have to prioritize which evidence they viewed, in order to otherwise prepare for trial. Mr. Oldham stated that he could complete his review of the essential files in two to three more sessions. Accordingly, the Government is **DIRECTED** to permit defense counsel and the Defendants' investigators to inspect the evidence at the FBI office under the established protocol for an additional twelve (12) hours

by the close of business on September 6, 2019. The Government is not required to permit further inspection after that day.[4]

## II. CONCLUSION

For the reasons stated herein, the Court **ORDERS** as follows:

(1) The Defendants' Motion to Compel Inspection of Evidence Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) [**Doc. 534**] is **GRANTED in part** in that the Defendants are permitted to continue to inspect the original evidence at the FBI office and pursuant to the established protocol for an additional **twelve (12) hours** until the close of business on **September 6, 2019**. The Defendants' motion [**Doc. 534**] is **DENIED** in all other respects; and

(2) The Government is **ORDERED** to permit defense counsel and the investigators for the Defendants to inspect the original evidence at the FBI office pursuant to the established protocol for an additional **twelve (12) hours** to be scheduled pursuant to the availability of the FBI agents and to be completed by the close of business on **September 6, 2019**.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

---

[4] AUSA Stone stated that he needs the case agents for this case to assist with the Government's trial preparations. The Court does not require that the case agents for this case oversee defense counsels' inspection of the evidence. Which agents are responsible for effectuating the inspection of the original evidence at the FBI office is a matter up to the Government and/or the FBI.