UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No.: 3:15-CR-27-TAV-DCP |
| SYLVIA HOFSTETTER, CYNTHIA CLEMONS, and COURTNEY NEWMAN, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants have moved to exclude from evidence any and all DOMEX reports as non-qualifying summaries under Federal Rule of Evidence 1006 [Doc. 581]. Contrary to defendants' argument, summaries of subsets of data are admissible as summaries under Rule 1006. *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998); *see also United States v. Sawyer*, 85 F.3d 713, 740 (1st Cir. 1996). Defendants have also contended the Court should exclude the reports under Federal Rule of Evidence 403 as they risk confusing the issues, misleading the jury, and wasting time [Doc. 645]. Because the DOMEX reports satisfy the Sixth Circuit's *Bray* factors, *Bray*, 139 F.3d at 1109–10, governing admissibility of Rule 1006 summaries, and are admissible under Rule 403, defendants' motion in limine [Doc. 581] is **DENIED**.

### I.  Background

The Federal Bureau of Investigation seized 6,300 patient files from pain clinics associated with defendants and located in and around Knoxville, Tennessee, on March 10,

2015 [Doc. 477 p. 3]. The Document and Media Exploitation Branch of the Drug Enforcement Administration's National Drug Intelligence Center ("DOMEX") quantified and summarized data from 700 of these patient files [Doc. 477 p. 7–8]. The government selected 444 of those files based on criteria such as the location of the patient's death, claimed disability, indictment in a related case, status as an undercover agent, or a history of being discharged from one clinic and sent to an associated clinic [*Id.* at 8].[1] DOMEX selected the remaining 256 patient files by using a computerized random number generator [*Id.*]. The government did not ask DOMEX to perform an expert medical analysis of the files or to extrapolate data to the remaining 5,400 files but only to summarize specific data points [*Id.*]. The following summaries constitute the DOMEX reports: Summary of Weights by Drug, Summary of Drug Weights by Provider, Location and Demographics of Patients, Provider Summary Tables, Payments and Referrals, and Drugs Prescribed by Provider [*Id.*]. The first two (2) of these six (6) DOMEX summaries did not rely on the 700 patient files [Doc. 628 p. 2 n.3] and are not the subject of defendants' motion in limine.[2]

---

[1.] The government emphasizes that it did not select individual files, but rather categories of files, to be included in the 444 files [Doc. 628 p. 2 n.2].

[2.] DOMEX created "Attachment 2 – Summary Weights by Drug" and "Attachment 1 – Summary of Drug Weights by Provider" by using the Tennessee Controlled Substances Monitoring Database ("TCSMD"), a state-maintained database monitoring prescriptions of controlled substances by Tennessee dispensers [*Id.* at p. 2 nn.3–4]. These two (2) reports summarize data from the TCSMD tracking the prescribing practices at the clinics associated with defendants during the relevant time period [*Id.*]. Although defendants use the language "any and all DOMEX reports" in their motion, their statements in support of the motion only challenge the admissibility of the DOMEX reports summarizing data from the 700 patient files, not those summarizing the TCSMD data [Doc. 581].

Consequently, for the purpose of this order, the "DOMEX reports" will refer only to the summaries of data from the 700 patient files.

According to defendants, the DOMEX summaries' reliance on only 700 of the 6,300 files in the government's possession renders them inadmissible because summaries of a subset of data are inadmissible under Federal Rule of Evidence 1006 and the Sixth Circuit's *Bray* factors [Doc. 581]. Defendants also contend in the supplement to their original motion that the DOMEX reports are inadmissible under Rule 403, and they move to exclude the reports as misleading and a waste of time [Doc. 645]. The government opposes defendants' motion in its original response and post-hearing brief [Docs. 628, 647].

## II.   Legal Standard

Federal Rule of Evidence 1006 governs the admissibility of summaries. The rule provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. The Sixth Circuit in *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998), interpreted Rule 1006 to impose six preconditions to admitting a summary chart: (1) the documents must be so voluminous that they cannot conveniently be examined in court by the factfinder, but it is not necessary that the documents be so voluminous as to be literally impossible to examine; (2) the summary's proponent must have made the documents available for examination or copying by other parties at a reasonable time and

place; (3) the summary's proponent must establish that the underlying documents are admissible, such that a summary based on documents that are inadmissible for irrelevancy, unfair prejudice, lack of authenticity, or some other reason would also be inadmissible; (4) the summary must be accurate and non-prejudicial, meaning that it summarizes the underlying data accurately, correctly, and in a nonmisleading way and does not contain conclusions or inferences; and (5) the summary must be properly introduced, meaning the proponent should present the testimony of the witness who supervised its preparation.[3] A summary chart admitted under Rule 1006, not the underlying documents, represents "evidence to be considered by the factfinder." *Id.* at 1112. A court's discretion in admitting summaries under Rule 1006 "will be upheld absent an abuse of discretion." *Id.* at 1109 (citation omitted).

A Rule 1006 summary must also be admissible under Federal Rule of Evidence 403.[4] Rule 403 permits a court to exclude relevant evidence if its probative value is "substantially outweighed" by certain dangers, including unfair prejudice, confusing the issues, and misleading the jury. "The test is strongly weighted toward admission." *United*

---

[3.] The Sixth Circuit has referred to these requirements as the "*Bray* factors." *United States v. Harris*, 881 F.3d 945, 950 (6th Cir. 2018).

[4.] Although the organization of the *Bray* opinion is slightly unclear, it appears that only after analyzing the summaries at issue under its five factors did the *Bray* court turn to Bray's suggestion that the summaries were misleading and excludable under Rule 403. *Bray*, 139 F.3d at 1113. This Court will proceed under the assumption that a 403 analysis should be performed independently of a 1006 analysis. *See also United States v. Nivica*, 887 F.2d 1110, 1126 (1st Cir. 1989) (noting that summaries properly admitted under Rule 1006 are "subject, of course, to relevancy and perscrutation under Fed. R. Evid. 403").

*States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). District courts enjoy "broad discretion" in performing the Rule 403 balancing. *Id.* (citation omitted).

**III.     Analysis**

The DOMEX summaries are admissible under both Rule 1006 and Rule 403. The summaries satisfy the *Bray* factors, and their probative value is not substantially outweighed by the concerns identified in Rule 403.

**A.     Admissibility under Rule 1006 and the *Bray* factors**

Defendants do not contest that the DOMEX reports satisfy the first, second, and fifth *Bray* factors, and the reports do appear to fulfill these requirements. First, the 700 patient files underlying the DOMEX reports are so voluminous that they cannot conveniently be examined in court by the factfinder.[5] Although it might be literally possible for the jury to examine each of the 700 files, including the prescriptions, personal data, test screens, and previous medical records contained therein, the inefficiency of such a procedure would present a significant inconvenience. Second, the government has made the patient files and the DOMEX reports available to defense counsel [Doc. 628 p. 8], and defendants have not objected that the government failed to do so at a reasonable time and place [Doc. 581]. As to the fifth factor, the government states that it plans to introduce the DOMEX reports through the testimony of Mr. Jon West and/or Mr. Logan Lake, both of whom supervised and/or participated in the preparation of the DOMEX reports [Doc. 628

---

[5.] *See Bray*, 139 F.3d at 1110 (expressing the opinion, but not deciding, where defendant did not challenge the voluminousness of underlying documents, that more than 700 forms "could not have been 'conveniently . . . examined in court' by the jury") (citing Fed. R. Evid. 1006).

p. 10]. The summaries thus satisfy the requirement that the summary's proponent introduce it through the testimony of the witness who supervised its preparation.

Defendants appear to challenge the admissibility of the patient files underlying the summaries,[6] but the Court finds that the patient files are admissible, thus satisfying the third *Bray* factor. Although defendants do not develop this argument, they would presumably contest the admissibility of the files on the grounds that they contain hearsay statements. The government contends that the patient files are admissible as hearsay exclusions or exceptions, specifically as "'party admissions, the statements of coconspirators, statements made for the purpose of medical treatment,' [and as] business records" [Doc. 628 p. 8 (quoting *United States v. Joyner*, No. 3:14-CR-124, 2016 WL 2968012, at *8 (E.D. Tenn. May 19, 2016))].

In light of the government's theory that the clinics in this case were in fact illegal pill mills where defendants and other medical providers conspired to distribute controlled substances [Doc. 647 p. 2], the Court agrees that many of the statements in the files are admissible as party admissions or the statements of coconspirators. Hearsay, which the Federal Rules of Evidence define as an out-of-court statement offered to prove the truth of the matter asserted, Fed. R. Evid. 801(c), is generally not admissible. Fed. R. Evid. 802. However, statements offered against an opposing party that were made by that party, Fed. R. Evid. 801(d)(2)(A), or made by the party's coconspirator "during and in furtherance of

---

[6.] "Initially, the defendants submit that the Government must show that the underlying patient files are admissible into evidence. Assuming they can do that . . ." [Doc. 581 p. 4].

the conspiracy," Fed. R. Evid. 801(d)(2)(E), are excluded from the definition of hearsay and thus admissible. The patient files underlying the DOMEX summaries likely contain hearsay statements that the government would presumably offer for the truth of the matter asserted, such as statements that a patient saw a particular provider, received certain procedures, and was prescribed certain controlled substances in specific amounts. Nonetheless, many statements in clinic medical files would be offered against defendants and would either have been made by a defendant or an alleged coconspirator during and in furtherance of the conspiracy.[7] Thus, any of these apparent hearsay statements would be admissible as exclusions from hearsay under Rules 801(d)(2)(A) or 801(d)(2)(E).

Any hearsay statements in the medical files not made by defendants or co-conspirators are admissible under Federal Rule of Evidence 803(4)'s hearsay exception for statements made for medical diagnosis or treatment. Rule 803(4) provides that a statement "(A) . . . made for—and . . . reasonably pertinent to—medical diagnosis or treatment; and (B) describ[ing] medical history; past or present symptoms or sensations; their inception; or their general cause" is not excluded under the rule against hearsay. Fed. R. Evid. 803(4). While the Sixth Circuit has indicated that statements falling within the 803(4) exception must have been made "for the primary purpose of medical diagnosis," *United States v.*

---

[7.] *See United States v. Joyner*, No. 3:14-CR-124, 2016 WL 2968012, at *6 (E.D. Tenn. May 19, 2016) (finding that 2,000 patient files underlying a DOMEX report were admissible where the files contained hearsay statements but where "information recorded in the file by the Defendant him or herself would be excluded from the prohibition against hearsay as a party admission, Fed. R. Evid. 801(d)(2)(A), and information recorded by another medical provider would be excluded as a coconspirator statement, Fed. R. Evid. 801(d)(2)(E).").

7

*Kappell*, 418 F.3d 550, 556 (6th Cir. 2005), defendants' trial strategy suggests they do not contest this point.[8] Thus, even statements in the files not made by defendants or by coconspirators in furtherance of the conspiracy, but made pursuant to a legal prescription or treatment of a legitimate medical issue, are admissible as statements made for medical treatment or diagnosis under Rule 803(4).

Because the Court finds that potential hearsay statements in the medical files would be admissible under Rules 801(d)(2)(A), 801(d)(2)(E), or 803(4), it declines to address whether the files would also be admissible as business records.

Having found that the first, second, third, and fifth *Bray* factors are satisfied, the Court turns to the fourth *Bray* factor, which represents the heart of the admissibility dispute.

Defendants' arguments about the misleading and prejudicial nature of the DOMEX reports do not reflect the requirements for a summary chart under Rule 1006 and the fourth *Bray* factor. The *Bray* court defined an "accurate and nonprejudicial" summary as one which "summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner . . . not embellished by or annotated with the conclusions of or inferences drawn by the proponent." 139 F.3d 1104, 1110 (6th Cir.

---

[8.] [*See, e.g.*, Doc. 475, Def. Newman's Motion in Limine to Compel the Government to Produce Original Patient Files at Trial ("In addition, it is the Government's theory that none of the patients treated at the clinics were treated for a legitimate medical issue . . . The original files . . . clearly show the medical considerations that went into the treatment of the individual patients and are therefore vital to the defense presentation of its case.")]; *cf. Joyner*, 2016 WL 2968012, at *6 (finding statements contained in medical files at issue to be admissible under Rule 803(4)'s hearsay exception, where defendants admitted the records' initial purpose was to document treatment of patients).

1998). Defendants do not argue that the DOMEX reports inaccurately, incorrectly, or misleadingly summarize the 700 patient files underlying them or that the government has improperly introduced conclusions or inferences into the summaries [Docs. 581, 645]; rather, they maintain that the reports are misleading and prejudicial because they summarize only about eleven (11) percent of the patient files seized from the Tennessee clinics [Doc. 581 p. 4]. By contrast, the government contends that the DOMEX reports are accurate and nonprejudicial because the information included is factual and does not add additional commentary or conclusions [Doc. 628 p. 8]. The fact that a summary is based on a subset of data does not make it inadmissible, the government argues; rather, it goes to the weight of the evidence [*Id.* at 5–6]. In this instance, the government is correct.

While "[n]othing should be lost in the translation," 139 F.3d at 1110, neither Rule 1006, nor *United States v. Bray* indicates that a summary document must summarize all available data of the same type as that underlying the proposed submission. Whether the summary is misleading under Rule 1006 depends on the accuracy of its summation of the underlying evidence, not whether it summarizes all the available evidence. *Cf. DL v. District of Columbia*, No. 05-1437, 2015 WL 6446087, at *5 (D.D.C. Oct. 23, 2015)[9] (admitting summary of a subset of some 300 files, where summary "d[id] not purport to be a comprehensive summary" but rather one of specific relevant facts from a selection of the

---

[9.] This case is more relevant than some others the government cites because the District Court for the District of Columbia sits in a circuit that has interpreted Rule 1006 to impose nearly identical requirements to the *Bray* factors. 2015 WL 6446087, at *5 (citing *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014)).

300 files). Seven hundred (700) charts may not be "what's at issue in this case," as defendants state [Doc. 645 p. 4], but the accuracy of the DOMEX reports in summarizing those 700 charts is precisely what is at issue in admitting the reports.

For this reason, the government's selection of certain categories of files to submit to DOMEX does not render the DOMEX summaries inadmissible but goes to evidentiary weight. Defendants do not specifically challenge the government's methodology for selecting the 444 files that were not randomly selected; rather, they appear to suggest that the mere fact the government allegedly "cherry picked" these files renders the summaries misleading [Doc. 645 p. 3]. The government disputes this characterization because it selected categories of files, not individual files, to send to DOMEX [Doc. 628 p. 2 n.2]. Defendants do not cite to an authority in support of their argument, and, indeed, selection of relevant evidence for presentation to the factfinder is inherent to the nature of litigation.[10] The non-comprehensive nature of the data underlying a summary goes to "evidentiary weight, not the threshold question of admissibility." *Bray*, 139 F.3d 1104, 1113 (6th Cir. 1998) (upholding admissibility of summaries based on different time periods where summaries "clearly delineated" this fact); *see also United States v. Nivica*, 887 F.2d 1110,

---

[10.] *Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 651 n.4 (W.D. Pa. 2004) ("Plaintiffs object that the charts themselves were created for litigation purposes, . . . pertain only to the time periods spanning Plaintiffs' employment, and fail to show the ratio of interstate transactions to total transactions for each store. However, the selective nature of the information contained in the charts is not a basis for this Court to exclude them from consideration as part of the record. Documents offered as summaries under Fed. R. Evid. 1006 are necessarily selective compilations of relevant information created for litigation purposes; indeed, that is the very reasons for their existence.").

1125–26 (1st Cir. 1989) (holding incompleteness of data underlying a Rule 1006 summary goes to weight rather than admissibility and admitting summaries of business records that arguably failed to reflect total financial activity); *United States v. Sawyer*, 85 F.3d 713, 740 (1st Cir. 1996) (upholding admissibility of summaries that only included evidence of expenditures during a specific time period and did not include other financial data defendant believed would contextualize expenditures at issue).[11]

On the evidence before the Court, the DOMEX reports are "accurate and nonprejudicial," as the Sixth Circuit has defined those terms in *Bray*. The DOMEX reports thus satisfy the fourth *Bray* factor.

Because the DOMEX reports satisfy all five factors under the *Bray* analysis, the Court finds the reports admissible under Rule 1006. Defendants will have "every opportunity to exploit" the reports' limited parameters on cross-examination. *Nivica*, 887 F.2d at 1126.

Defendants argue that cross-examining only the DOMEX analysts who supervised the creation of the reports, rather than the attorneys who selected 444 of the 700 files for DOMEX's summaries, will "den[y them] their Sixth Amendment right to a fair trial" [Doc. 645 p. 4]. Defendants do not identify the Sixth Amendment provision that would be

---

[11.] Defendants appear to argue in their Supplement to their Motion in Limine that *Nivica*'s holding rested on the fact that the government had summarized all of the data in its possession, even though the data was allegedly incomplete [Doc. 645 p. 5], but the court's holding rested, instead, on the fact that the summaries were "adequately grounded in the evidence," whether or not they summarized all the available data. 887 F.2d at 1126; *see also Sawyer*, 85 F.3d 713, 740 (1st Cir. 1996) (citing *Nivica* and stating defendant could have offered his own contrary evidence to contextualize admissible summary of subset of defendant's financial data).

violated in this case. If defendants intend to make a Confrontation Clause argument, it must fail. The Confrontation Clause's "primary object" is "testimonial hearsay," *Crawford v. Washington*, 541 U.S. 36, 53 (2004). The Supreme Court has described the "core class" of "testimonial" statements as including "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009). The act of selecting files for the summaries does not fall into this class and does not constitute a testimonial statement. *Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (finding Confrontation Clause violation where court admitted certificates of state laboratory analysts stating material was cocaine of certain quality without requiring analysts to testify in person). Consequently, admitting the summaries without requiring the government attorneys to testify will not violate defendants' Sixth Amendment right to a fair trial.

If defendants mistakenly cite the Sixth Amendment while intending to challenge the reports' admissibility under general evidentiary principles, their argument similarly fails. Rule 1006 is designed to allow into evidence summaries of otherwise admissible evidence where the summaries' admission is "the only practicable means of making their contents available to judge and jury." Fed. R. Evid. 1006 advisory committee's note on proposed rules. The fifth *Bray* factor, which requires the summary's proponent to "lay a proper

foundation" by "present[ing] the testimony of the witness who supervised its preparation," 139 F.3d 1104, 1110 (6th Cir. 1998), indicates the summary must be authenticated or identified, just as the evidence underlying it would otherwise have to be authenticated or identified to be admissible under Federal Rule of Evidence 901. The authenticating witness testifies that the "item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Farrad*, 895 F.3d 859, 876 (6th Cir. 2018). Thus, just as authenticating the evidence under Rule 901 does not require that opposing counsel have opportunity to cross-examine the proponent about his or her strategy in selecting the evidence presented, Rule 1006 does not mandate cross-examination of the attorneys who selected the evidence underlying a Rule 1006 summary.

In this case, the DOMEX reports are admissible through the testimony of either of the proposed witnesses. The record indicates that DOMEX analysts had access to all 6,300 patient files since they selected 256 of the 700 files they summarized by using a computerized random number generator [Doc. 477 p. 7–8]. Thus, both of the government's proposed witnesses, supervisors of or participants in the compilation of the DOMEX summaries, will have personal knowledge that the DOMEX summaries are "what [the government] claims [they are]," Fed. R. Evid. 901(a), namely summaries of 700 of the 6,300 patient files in the government's possession. Allowing admission of the summaries based on this testimony alone therefore complies with the Federal Rules of Evidence.

B.      Admissibility under Rule 403

The DOMEX reports are also admissible under Federal Rule of Evidence 403. Defendants argue that the reports should be excluded under Rule 403 because admitting them risks "confusing the true issue in this case . . . misleading the jury into a decision based on a sample that does not support the Government's theory," and wasting time because the summaries do "nothing more than show a snapshot of a portion of files at the clinic" [Doc. 645 p. 2]. The government argues persuasively in its supplement that defendants' logic would lead to the exclusion of testimony by defendants' medical experts, who have reviewed just fifteen (15) files [Doc. 647 p. 2].

For similar reasons to those discussed above, the danger of the DOMEX reports' confusing the issues, misleading the jury, or wasting time does not substantially outweigh the reports' probative value under Rule 403. In brief: so long as the summaries accurately summarize the underlying data and do not draw conclusions or make inferences,[12] a rational factfinder will be able to weigh the evidentiary value of data from the 700 summarized files, without extrapolating that data to the other 5,400 files. The danger of confusing the issues or misleading the jury is thus minimal. Far from wasting the Court or the factfinder's time, admitting summaries will hasten what could otherwise be a very lengthy presentation of evidence. Additionally, the reports have significant probative value as they will provide evidence of the clinics' medical practices with respect to 700 patients in a case about

---

[12.] As noted above, the government states that the information contained in the DOMEX reports is factual and does not add additional commentary or conclusions [Doc. 628 p. 8].

whether those practices violated the law. Certainly, the Rule 403 dangers defendants articulate do not substantially outweigh the summaries' probative value.

However, the Court believes a limiting instruction is appropriate strictly as a Rule 403 precautionary measure. It is "generally inappropriate to give a *limiting* instruction for a Rule 1006 summary" because Rule 1006 "authorizes the admission in evidence of the summary itself," *Bray*, 139 F.3d at 1111, but this does not affect the propriety of a limiting instruction to minimize potential Rule 403 harms from admitting the evidence. The government has proposed that a limiting instruction could clarify that the DOMEX reports summarize 700 files, not the remaining 5,000-plus files [Doc. 628 p. 8], and though defendants question the efficacy of such an instruction while arguing against admissibility [Doc. 645 p. 6], the Court expects they would prefer the Court admit the summaries with a limiting instruction than without one. In this case, the Court believes a limiting instruction directing the jury to treat the DOMEX reports as summarizing only 700 patient files will dispel any confusion, however unlikely, that might otherwise result from admitting summaries of a subset of the files. It therefore **DIRECTS** the parties to work together to draft a proposed limiting instruction for the jury.

IV. **Conclusion**

Accordingly, defendants' Motion in Limine to Exclude from Evidence Any and All DOMEX Reports [Doc. 581] is **DENIED**. The Court **DIRECTS** the parties to confer and

file a joint proposed limiting instruction regarding the DOMEX reports or, if necessary, to file separate proposed limiting instructions regarding this issue by **Friday, October 11, 2019**.

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE