UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:15-CR-27-TAV-DCP |
| | ) | |
| SYLVIA HOFSTETTER, | ) | |
| CYNTHIA CLEMONS, | ) | |
| COURTNEY NEWMAN, and | ) | |
| HOLLI WOMACK, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This criminal case is before the Court on two motions *in limine* [Docs. 587, 588] filed by defendants Hofstetter, Clemons, and Newman seeking to exclude evidence of uncharged patient deaths.  The government responded in opposition [Doc. 625].  Also before the Court is the government's Motion *in Limine* to Permit Evidence Concerning the Vehicular Deaths of Clinic Patients [Doc. 577].  Defendants responded in opposition [Doc. 615].

The Court addressed the status of these motions with the parties at the final pretrial conference in this case, held on September 25, 2019.  At this conference, the Court, after hearing argument on these motions, stated that it would take the motions under advisement and requested that the parties file supplemental briefing on this issue [Doc. 641].  The government filed a post-hearing brief [Doc. 646], as did defendants [Doc. 648].  The government then filed a supplement to its post-hearing brief [Doc. 650] and with leave of the Court, a sealed attachment thereto [Doc. 652].

Having reviewed the parties' pleadings and supplemental briefs and considered the arguments made at the final pretrial conference, the Court will **GRANT** defendants Hofstetter, Clemons, and Newman's motion to exclude evidence of uncharged deaths of Hollywood clinic patients [Doc. 588], **DENY** as moot the corresponding motion, in the alternative, to continue trial [Doc. 588], **DENY** in part the government's motion [Doc. 577] to permit the introduction of evidence of the vehicular deaths of S.S. and K.T., and **DEFER** ruling on the admissibility of evidence of other uncharged deaths of patients of the Tennessee clinics [Doc. 587].

I.    **Background**

This case arises out of the operation of pain management clinics by the Urgent Care & Surgery Center Enterprise ("UCSC") in Hollywood, Florida and East Tennessee [Doc. 320, ¶¶ 8–11]. The Fourth Superseding Indictment alleges that the clinics operated by UCSC enterprise were in fact "pill mills" where medical providers wrote unreasonable and medically unnecessary prescriptions for opioids and other narcotics [*Id.*].

The indictment alleges that from about May 2011 to about March 2015, defendant Sylvia Hofstetter administered and managed two (2) of the three (3) clinics allegedly operated by UCSC in East Tennessee, the Comprehensive Healthcare Systems ("CHCS") clinics, and owned, administered, and managed East Knoxville Healthcare Services ("EKHCS"), the third clinic allegedly operated by UCSC in East Tennessee [*Id.* ¶ 20].[1]

---

[1] The indictment states that UCSC operated three (3) clinics in East Tennessee: one (1) located in Lenoir City and two (2) located in Knoxville, one on South Gallaher View Road and the other on Lovell Road. The Lovell Road clinic was called East Knoxville Healthcare Services

Before moving to Tennessee, defendant Hofstetter was allegedly employed at UCSC's Hollywood clinic until around December 2011 [*Id.* ¶¶ 54.4, 54.21–23]. Defendants Courtney Newman and Cynthia Clemons[2] were, according to the indictment, employed as nurse practitioners at CHCS and EKHCS [*Id.* ¶¶ 23–24]. While practicing at these clinics, defendants Newman and Clemons allegedly prescribed opioids and other narcotics outside the scope of professional practice and without a legitimate medical purpose [*Id.*]. According to defendants, defendants Newman and Clemons did not treat patients or otherwise work at the Hollywood clinic [Doc. 588 ¶ 7].

The indictment charges defendant Hofstetter with a RICO conspiracy (Count One) [*Id.* ¶¶ 28–58], conspiracies to illegally distribute and dispense controlled substances (Counts Two and Four) [*Id.* ¶¶ 59–69, 72–80], money laundering conspiracies (Counts Three and Five) [*Id.* ¶¶ 70–71, 81–82], money laundering (Counts Six through Ten)[3] [*Id.* ¶¶ 83–86], maintaining drug-involved premises (Counts Eleven through Thirteen) [*Id.* ¶¶ 87–92], and illegally distributing and dispensing controlled substances (Counts Fourteen through Nineteen) [*Id.* ¶¶ 93–127]. The indictment charges defendants Newman and Clemons with conspiracies to illegally distribute and dispense controlled substances (Counts Two and Four) [*Id.* ¶¶ 59–69, 72–80], maintaining drug-involved premises

---

("EKHCS"), and the other two (2) clinics are collectively referred to as Comprehensive Healthcare Services ("CHCS") [Doc. 320, ¶¶ 10–11, 54.22, 92].

[2.] The Court refers to these defendants collectively as the "provider defendants." Defendant Holli Womack, also a nurse practitioner, did not join in defendants' motions *in limine* before the Court [*see* Docs. 587, 588].

[3.] The government has moved to dismiss Counts Eight, Nine, and Ten, three (3) of the five (5) money laundering charges against defendant Hofstetter [Doc. 635]. Defendants asserted at the final pretrial conference that they do not object and the parties agreed to submit a proposed order. That motion, however, currently remains pending.

(Counts Eleven and Thirteen) [*Id.* ¶¶ 87–92], and illegally distributing and dispensing controlled substances (Counts Fourteen and Seventeen as to defendant Newman; Counts Fifteen, Sixteen, Eighteen, and Nineteen as to defendant Clemons) [*Id.* ¶¶ 93–127].

Defendants are also charged with sentencing enhancements based upon the death or serious bodily injury, allegedly resulting from the use of controlled substances, of clinic patients ("charged deaths"). Defendant Hofstetter faces sentencing enhancements for Counts One, Two, Four, and Fourteen through Nineteen; defendant Newman faces sentencing enhancements for Counts Two, Four, Fourteen, and Seventeen; and defendant Clemons faces sentencing enhancements for Counts Two, Four, Fifteen, Sixteen, Eighteen, and Nineteen.[4]

Before the Court are defendants Hofstetter, Clemons, and Newman's motion to exclude all evidence related to any deaths not charged in the indictment [Doc. 587] and motion to exclude evidence related to the deaths of approximately 152[5] patients of the Hollywood clinic or, in the alternative, to continue trial to permit defense experts to review the death certificates of said patients [Doc. 588]. Also before the Court is the government's motion to introduce evidence concerning the vehicular deaths of two (2) clinic patients [Doc. 577]. The Court has taken these motions under advisement and now rules or defers ruling.

---

[4.] The government has also moved to strike various enhanced penalty notices from the Fourth Superseding Indictment [Doc. 635]. As noted, *supra* note 3, that motion is currently pending. The enhanced penalties noted here, therefore, do not reflect the enhanced penalties the government seeks to strike.

[5.] Defendants' motion stated 151 deaths [Doc. 588]. Defendants' supplement brief stated 152 deaths [Doc. 648].

## II.    Analysis

The Court will first address the admissibility of evidence of uncharged deaths of Hollywood clinic patients [Doc. 588] and will then turn to the admissibility of evidence of other uncharged deaths, namely deaths of patients of the Tennessee clinics [Doc. 586].

### A.    Evidence of Uncharged Deaths of Patients of the Hollywood Clinic

Defendants Hofstetter, Clemons, and Newman move the Court to exclude evidence related to 152 uncharged deaths of patients of the Hollywood clinic patients under Rules 402 and 403 of the Federal Rules of Evidence [Doc. 588].

The government opposes the motion [Docs. 625, 646].  In the government's post-hearing brief, it clarifies that the 152 deaths of Hollywood clinic patients that are the subject of defendants' motion *in limine* include *all* deceased Hollywood clinic patients, many of which the government does not intend to offer at trial.  The governments states that it intends only potentially to introduce evidence of uncharged deaths of the thirty-three (33) patients of the Hollywood clinic "who died within weeks of receiving opioid prescriptions" [Doc. 650; *see also* Doc. 652] and will most likely limit testimony about the uncharged deaths of Hollywood clinic patients to the ten (10) deaths "that occurred within 31 days of receiving opioid prescriptions from the Hollywood clinic" [Doc. 650 p. 2].

The Court addresses the admissibility of evidence of uncharged deaths of Hollywood clinic patients under Rules 402 and 403 in turn.

## 1.    Relevance

Defendants argue that evidence of uncharged deaths of Hollywood clinic patients is not probative of any issue in this case and is therefore irrelevant under Rule 401 of the Federal Rules of Evidence.  In support, defendants argue that evidence of these deaths do not relate to any death charged in the indictment and note that none of the provider defendants were ever employed at the Hollywood clinic [Doc. 588 ¶¶ 2–4, Doc. 648 p. 2–3].  The government disagrees, arguing that this evidence is relevant to the status of the Hollywood clinic as a pill mill [Docs. 625 p. 2, 646 p. 2], to certain investigative decisions [Doc. 625 p. 2], and the defendants' knowledge or deliberate ignorance of the fact that patients were misusing prescriptions [Docs. 625 p. 3, 646 p. 4–5].

Rule 402 of the Federal Rules of Evidence states that relevant evidence is generally admissible, whereas irrelevant evidence is inadmissible.  Fed. R. Evid. 402.  Rule 401 provides a two-prong test for determining whether evidence is relevant: "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The relevance threshold established by Rule 401 is very low.  *United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2006) (citing *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009)).

As to the first prong of Rule 401's relevance test, the Court finds that evidence of uncharged deaths of Hollywood clinic patients has some tendency to make more probable the fact that Hollywood clinic patients were misusing prescriptions and that the Hollywood clinic was operating as a pill mill.  The Court further finds that evidence of uncharged

deaths of Hollywood clinic patients occurring during defendant Hofstetter's administration of that clinic would make it more probable that she had knowledge or was deliberately ignorant[6] of the fact that Hollywood clinic patients were misusing prescriptions. *See United States v. Bourlier*, 518 F. App'x 848, 855 (11th Cir. 2013) (affirming the district court's finding that evidence of uncharged patient deaths was relevant to show defendant's knowledge that patients he treated were misusing prescriptions); *cf. Lang*, 717 F. App'x at 538 (holding that evidence of a patient's overdose death was admissible on cross examination to impeach a witness, a nurse at an alleged pill mill, who testified that her patients were "legitimate pain patients").

As to the second prong, patient misuse of prescriptions, defendant Hofstetter's knowledge or deliberate ignorance thereof, and the Hollywood clinics' status as a pill mill is of consequence in determining the action because those facts constitute circumstantial evidence of elements of charges Defendant Hofstetter faces, namely the RICO conspiracy charge (Count One). The elements of this charge are set forth in 18 U.S.C. § 1962, which provides that it is unlawful for any person employed by an enterprise, the activities of which affect interstate commerce, to conspire to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. §§ 1962(c)–(d). The indictment alleges that the racketeering activity in this case includes, among other offenses,

---

[6.] Instruction 2.09 of the Pattern Criminal Jury Instructions of the Sixth Circuit states that a jury may find that a defendant had knowledge of a certain fact or circumstance if the jury is "convinced that the defendant deliberately ignored a high probability" that such a fact or circumstance existed. Sixth Circuit Committee on Pattern Criminal Jury Instructions, Pattern Criminal Jury Instructions (2019).

drug trafficking offenses in violation of the Controlled Substances Act, 21 U.S.C. §§ 841 and 846, namely distributing controlled substances outside the scope of professional practice and not for a legitimate medical purpose [Doc. 320 ¶ 53]. *See* 18 U.S.C. § 1961 (defining "racketeering activity" as used in section 1962 to include offenses such as those alleged in the indictment). The indictment also alleges as an overt act in furtherance of the RICO conspiracy a practice of overprescribing patients at the Hollywood clinic, which is supported by specific instances of providers at the clinic overprescribing opioids and other narcotics to patients and undercover agents [Doc. 320 ¶¶ 54.7–54.13]. Patient misuse of prescriptions, defendant Hofstetter's knowledge or deliberate ignorance of this misuse, and the Hollywood clinics' alleged status as a pill mill, therefore, are of consequence in determining the facts underlying the RICO conspiracy, specifically whether she was involved in certain drug offenses constituting racketeering activity.

Accordingly, evidence of uncharged deaths of Hollywood clinic patient has some tendency to make the clinic appear to have been a pill mill, the patients of which were misusing controlled substances, and this fact is of consequence in determining the charges against defendant Hofstetter. This evidence therefore clears the low bar for relevance established by Rule 401 and thus is admissible under Rule 402. Defendants' argument to the contrary is rejected.

### 2.     Rule 403

Defendants argue that even if relevant, evidence of uncharged deaths of Hollywood clinic patients should be excluded under Rule 403 of the Federal Rules of Evidence because the probative value of this evidence is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, and misleading the jury [Doc. 588 p. 2]. In support, defendants note that the provider defendants "played no role in the treatment of any patient identified in the Florida death certificates" and argue that given the number of charged deaths in this case, these dangers are of exceptional concern [*Id.* at 2–3].

The government disagrees [Docs. 625, 646]. In its supplemental brief, it draws a distinction between general evidence of uncharged patient deaths and specific evidence of the same and further distinguishes between offensive and defensive use of such evidence [Docs. 625, 646]. In particular, the government asserts that it intends neither to offer specific evidence of any individual patient death by overdose[7] nor to spend an inordinate amount of time in its case-in-chief presenting general evidence of uncharged patient deaths [Docs. 625 p. 1–2, 646 p. 1–2]. The government does apparently intend to introduce some general evidence of uncharged patient deaths in its case-in-chief [Docs. 625 p. 2–3, 646 p. 1–2]. The general evidence of uncharged patient deaths relevant to the motion to exclude evidence of uncharged deaths of Hollywood clinic patients [Doc. 588] includes testimony that some number[8] of people died while active patients of the Hollywood clinic [Docs. 625,

---

[7.] The government excepts the charged and uncharged deaths included in the indictment [Doc. 625 p. 3] (other than the death of K.C., of which it asserts that it does not intend to present specific evidence [Doc. 646 p. 1 n.1]).

[8.] The government asserts in its initial response to defendants' motion that it intends to introduce testimony that about 100 people died while active patients of the Hollywood clinic and about 100 people died while active patients of the Tennessee clinics [Doc. 625 p. 2]. This is consistent with its post-hearing brief, wherein it asserts that it intends to introduce evidence that over 200 people died while patients at these pain clinics [Doc. 646 p. 2]. The government apparently changes course in its supplement to its post-hearing brief [Doc. 650]. It states that the approximately 152 deaths of Hollywood clinic patients that are the subject of defendants' motion *in limine* [Doc. 588] constitute "*all* former Florida patients who are now dead" and asserts that it only intends potentially to introduce evidence of about thirty-three (33) of those deaths and will most likely introduce evidence of just ten (10) [Doc. 650 p. 1–2].

p. 2, 646 p. 2, 650 p. 2].  The government further asserts that it intends to offer specific evidence "to defeat anticipated defenses and any claim of good faith by these defendants" [Doc. 625 p. 1; *see also* Doc. 646 p. 1–2].  It argues that it should be permitted to do so under Rule 403 because evidence of uncharged patient deaths is probative of the clinics' statuses as pill mills, certain investigative decisions, and a core theory of the government's case: that "any reasonable person who spent even a short amount of time in the pain clinics would realize that they were pill mills" [Doc. 646 p. 4; *see also* Docs. 625, p. 1–3, 646 p. 2].

The admissibility of specific evidence of uncharged overdose deaths to impeach or rebut a defense of good faith is discussed, *infra* Part II.C, in the Court's discussion of the broader of the defendants' two motions [Doc. 587], because the Court finds that the admissibility analysis for defensive use of evidence of uncharged overdose deaths is the same for all clinics and this Part addresses only evidence of uncharged deaths of Hollywood clinic patients [Doc. 588].

With respect to the admissibility of general evidence of uncharged deaths of Hollywood clinic patients under Rule 403—specifically evidence of uncharged deaths of active Hollywood clinic patients, which the government intends to introduce in its case-in-chief [*see* Docs. 646 p. 1–2, 648 p. 2, 625 p. 2]—the government cites to two cases from other circuits in support of its argument that such evidence be admitted.

First, the government cites to *United States v. Schwartz*, 702 F. App'x 748 (10th Cir. 2017), wherein the defendant was convicted of unlawful drug distribution and money laundering counts arising out of his operation of a pain management clinic where opioids

were prescribed outside the scope of professional medical practice.  *Id.* at 751.  The government presented testimony regarding two (2) deceased patients.  The Tenth Circuit upheld the admission of evidence of patient deaths under Rule 403:

> Evidence of patient deaths was probative of the conspirators' wanton disregard for the drug-abusive tendencies of its patients.  It showed that Schwartz knew that the clinic's patients were misusing their prescriptions, yet the practice continued to prescribe opioids in irresponsible ways.

> *Id.* at 756.

Additionally, the government cites to *United States v. Bourlier*, 518 F. App'x 848 (11th Cir. 2013), wherein the defendant was convicted of multiple unlawful drug distribution counts, including two (2) counts of dispensing a controlled substance resulting in death arising out of his medical practice.  *Id.* at 850.  The government introduced evidence of patient deaths at trial, specifically death certificates, a letter from a medical examiner, and other testimony from family of deceased patients and experts.  The Eleventh Circuit, too, upheld the admission of evidence of uncharged deaths of patients under Rule 403, finding the evidence highly probative and the concerns about prejudice mitigated by (1) the district court's limiting instructions and (2) undisputed testimony that other factors besides the opioids or other drugs prescribed by the defendant contributed to the deaths. *Id.* at 856.

This Court finds that with respect to evidence of uncharged deaths of Hollywood clinic patients, it is confronted with a situation somewhat distinct from the cases before the courts in *Schwartz* and *Bourlier*.  Specifically, the Court finds that the effectiveness of the government's analogy differs between the defendants because of the provider defendants'

lack of involvement with the Hollywood clinic. The government's likening this case to *Schwartz* and *Bourlier* does not account for this nuance.

Rule 403 of the Federal Rules of Evidence permits the exclusion of relevant evidence only if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. This rule favors admission and establishes a high bar for exclusion, *Lang*, 717 F. App'x at 538, and district courts enjoy "broad discretion" in performing Rule 403 balancing, *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

With respect to defendant Hofstetter, *Schwartz* and *Bourlier* provide some guidance. The case law indicates that evidence of uncharged overdose deaths of patients treated by a defendant or at a clinic where a defendant works is highly probative of defendants' knowledge that clinic patients were misusing prescriptions. *Schwartz*, 702 F. App'x at 756; *Bourlier*, 518 F. App'x at 856; *cf. Lang*, 717 F. App'x at 538–39 (holding that use of evidence of a patient's overdose death was properly admitted to rebut testimony by a nurse that she believed her patients to be legitimate pain patients (i.e., not misusing prescriptions)). Here, evidence of uncharged overdose deaths of Hollywood clinic patients is, under *Schwartz* and *Bourlier*, probative of whether defendant Hofstetter knew that Hollywood clinic patients were misusing prescriptions, which as the Court has previously discussed is directly related to factual issues that the jury must resolve with respect to the RICO conspiracy charges against her.

But the evidence of uncharged deaths of Hollywood clinic patients that the government intends to introduce is different from that introduced in *Schwartz* and *Bourlier*.

It is not specific evidence of patient overdose deaths; rather, it is general evidence of patient deaths. The general nature of this evidence diminishes its probative value because it combines evidence of uncharged overdose deaths—which the case law indicates are highly probative—with evidence of uncharged deaths of Hollywood clinic patients that are unrelated to treatment at the clinic (i.e., deaths not resulting from an overdose of prescribed drugs)—which is not probative of whether patients were misusing prescriptions. While perhaps this combined general evidence of uncharged deaths of Hollywood clinic patients (i.e., the fact that many active patients were dying), which the government calls "red flag" pill mill proof [Doc. 646 p. 1, 2], has some probative value with respect to determining whether defendant Hofstetter knew or was deliberately ignorant of misuse of prescriptions by Hollywood clinic patients, the Court finds this evidence of diminished probative value as compared to that in *Schwartz* and *Bourlier*.

Moreover, the probative value of a particular piece of evidence is "calculated by comparing evidentiary alternatives," which are aplenty here. *Old Chief v. United States*, 519 U.S. 172, 184 (1997); *see also United States v. Adams*, 722 F.3d 788, 831 (6th Cir. 2013). The government has stated in filings and in oral argument that this particular piece of evidence is not a point of emphasis in their case [Doc. 646 p. 1–2]. The Court suspects that this is because the government apparently has a significant amount of alternative evidence, what it calls its "pill mill proof," specifically, that "the clinics did not accept insurance and charged over $300 per visit; a typical prescription cost around $1,000; the waiting rooms were often packed and sometimes spilled out into the hallways; patients were nodding out in the waiting rooms; there were peculiar rules prohibiting patients from

speaking to one another and prohibiting friends and family from waiting in the clinics with the patients or even in the parking lots; the clinics employed armed security guards; the public and neighboring businesses . . . complained about the nuisance caused by the clinics; and on and on" [Doc. 625 p. 4]. This alternative evidence is of substantially "the same probative value but without the unfair prejudice." *Adams*, 722 F.3d at 831 (citing *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996)). Accordingly, the Court finds that in light of the substantial amount of "pill mill proof" that the government has identified in its response, the probative value of evidence of uncharged patient deaths is further diminished.

With respect to the provider defendants, the government's likening of evidence of uncharged deaths of Hollywood clinic patients is unpersuasive. In *Schwartz* and *Bourlier*, it appears there was no question that the defendant prescribed the particular patient the evidence of whose death was admitted, *Bourlier*, 518 F. App'x at 856, or that the deceased was a patient at the clinic where the defendant was employed, *Schwartz*, 702 F. App'x at 756. In contrast, here, the provider defendants did not treat patients at the Hollywood clinic and were not otherwise involved with or employed by that clinic. The Court finds, therefore, that unlike the evidence in *Schwartz* and *Bourlier*, evidence of uncharged deaths of Hollywood clinic patients is of no probative value as to the provider defendants. In other words, evidence of deaths of patients of clinics where a particular defendant never treated patients has no value in determining that defendant's guilt of unlawful distribution of controlled substances or conspiracy thereof.

Next, the Court finds that given the lack of connection that a majority of the defendants have to the Hollywood clinic, evidence of uncharged deaths of Hollywood clinic patients has the potential to be both unfairly prejudicial as well as misleading and confusing to the jury.

"Rule 403 does not exclude evidence because it is strongly persuasive or compellingly relevant—the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate." *In re Air Crash Disaster*, 86 F.3d 498, 538 (6th Cir. 1996). "The rule only contemplates evidence which tends to suggest a decision on an improper basis or which hits below the belt." *Lang*, 717 F. App'x at 539 (quoting *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999).

In general, evidence of uncharged patient deaths has the potential to be significantly prejudicial. *See Bourlier*, 518 F. App'x at 856 (acknowledging the prejudicial effect of such evidence); *United States v. Kumar*, No. 4:17-CR-5-FL-1, 2019 WL 346395, at *9 (E.D.N.C. Jan. 28, 2019) (deferring on ruling on the admissibility of evidence of uncharged patient deaths, noting that the probative value of such evidence could be overcome by unfair prejudice depending on the manner in which such evidence was introduced); *United States v. Kosetnko*, No. 5:16-CR-00221, 2017 WL 1395500, at *2 (S.D. W. Va. Apr. 17, 2017) (excluding evidence of uncharged patient deaths under Rule 403).

As to the provider defendants, evidence of uncharged deaths of Hollywood clinic patients presents an arguably low risk of prejudice because those defendants did not treat patients or otherwise work at that clinic. But although the risk of prejudice may be low, it is unfair and outweighs the probative value of the evidence. Specifically, it is unfair

because there is a risk that the jury will, based on the relatedness of the Hollywood and Tennessee clinics, inappropriately associate the deaths of patients at the Hollywood clinic with the provider defendants, who have no meaningful connection with that clinic. And even an arguably low risk of prejudice would, therefore, substantially outweigh the probative value because, as to the provider defendants, the evidence is of no probative value.[9]

Although the prejudicial effect of evidence of uncharged deaths of Hollywood clinic patients seems less unfair as to defendant Hofstetter because she was an administrator of that clinic, the Court finds that, on balance, the danger of unfair prejudice to the provider defendants combined with the danger of confusing or misleading the jury substantially outweigh the diminutive probative value that this evidence has to the charges against defendant Hofstetter.

In sum, the Court finds, on balance, that offensive use of evidence of uncharged deaths of Hollywood clinic patients is inadmissible under Rule 403. Defendants' motion to exclude this evidence under Rule 403 [Doc. 588] is thus **GRANTED** in part, with the defensive use of such evidence to be addressed below. The Court thus finds moot defendants' motion in the alternative to continue trial to permit review of death certificates of Hollywood clinic patients [Doc. 588]. Accordingly, defendants' motion in the alternative is **DENIED** as moot.

---

[9] This evidence also presents a danger of confusing the issues and misleading the jury, given, as noted, the lack of connection of the provider defendants to the Hollywood clinic.

### B. Evidence of Vehicular Deaths of Patients S.S. and K.T.

The government moves the Court to permit the introduction of evidence of the vehicular deaths of clinic patients, S.S. and K.T., arguing that this evidence is admissible under Rules 402 and 403 of the Federal Rules of Evidence [Doc. 577]. Defendants responded in opposition [Doc. 615].

The deaths that are the subject of the government's motion occurred when J.G., a patient of the Gallaher View Road clinic,[10] drove her car head-on into a truck on Lovell Road, killing both of her passengers, S.S. and K.T., who were also clinic patients [Doc. 577 p. 3]. The government alleges that J.G. had visited the Gallaher View Road clinic, received and filled a prescription, and ingested some of the prescribed drugs in the pharmacy parking lot immediately prior to the accident [*Id.*].

The Court finds this evidence relevant under Rule 401 but nevertheless excludes the evidence under Rule 403. Because this evidence is related to the treatment that J.G. received at the Gallaher View Road clinic, a fact of consequence in determining whether patients were misusing prescriptions and the clinic was operating as a pill mill, the Court agrees with the government that the evidence clears the low bar for relevance.

But, turning to the Rule 403 balancing, the Court finds that the vehicular deaths the government seeks to introduce have minimal probative value. Although S.S. and K.T. were patients of the clinic, their deaths did not occur as the result of a personal overdose and

---

[10.] The government's motion states that the car accident occurred on Lovell Road [Doc. 577 p. 3], but the government clarified at the final pretrial conference that J.G. was a patient of the Gallaher View Road clinic.

thus have limited probative value related to the clinics' allegedly illegal prescribing practices. Evidence of these vehicular deaths also presents a very high risk of unfairly prejudicing defendants. *See Kumar*, 2019 WL 346395, at *10 (excluding evidence of the death of a child of one of the defendant's patient under Rule 403, where the child, a passenger in the patient's vehicle, died after the patient wrecked her vehicle while under the influence of pain medication prescribed by the defendant). Although the deaths did not result directly from the clinics' allegedly illegal prescribing practices, admitting this evidence could lead to decision on an improper basis, constituting unfair prejudice. The vehicular deaths are sufficiently related to the clinic such that jurors may view them as contributing to defendants' guilt, even though the prescribing practice of a specific defendant or coconspirator did not directly cause those patients' deaths. In other words, jurors may struggle to distinguish between deaths caused as the result of an overdose and deaths at the hands of an intoxicated driver who was prescribed by the clinic. The Court therefore finds the low probative value of these deaths substantially outweighed by the danger of unfair prejudice. As such, this evidence is excluded under Rule 403 and the government's motion, which was granted in part at the final pretrial conference, is **DENIED** in part.

### C. Evidence of Uncharged Deaths of Patients of the Tennessee Clinics

Defendants Hofstetter, Clemons, and Newman move the Court to exclude all evidence related to uncharged deaths pursuant to Rules 402, 404(b), and 403 of the Federal Rules of Evidence [Doc. 587]. The government opposes this exclusion [Docs. 625, 646].

As a preliminary matter, the Court notes that, as explained above, the government draws a distinction between offensive and defensive use of evidence of uncharged patient deaths [Docs. 625, 646]. In particular, the government asserts that it intends to offer specific evidence of uncharged patient overdose deaths only on cross-examination or to "defeat anticipated defenses and any claim of good faith by these defendants" [Doc. 625 p. 1; *see also* Doc. 646 p. 1–2].

The Court finds that defensive use of specific evidence of individual overdose deaths of patients to impeach or rebut a defense of good faith does not run afoul of the Federal Rules of Evidence. The Sixth Circuit affirmed such a use in *United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2006) (holding that use of evidence of a patient's overdose death was properly admitted to impeach a witness, a nurse, who testified that her patients were legitimate pain patients). Accordingly, introduction of specific evidence of uncharged patient overdose deaths in such a manner is admissible.

The Court has ruled on the admissibility of evidence of uncharged deaths of the Hollywood clinic patients as well as those of S.S. and K.T. The broad scope of this motion necessarily encompasses those deaths; to that extent, this motion [Doc. 587] is **GRANTED** in part. The Court has also ruled on the admissibility of specific evidence of uncharged patient overdose deaths to impeach or rebut a defense of good faith. The broad scope of this motion also necessarily encompasses those deaths, and to that extent, this motion [Doc. 587] is **DENIED** in part.

The only issue remaining is the admissibility of evidence of uncharged deaths of patients of the Tennessee clinics. With respect to this issue, the Court has considered the

arguments raised in the parties' filings and at the final pretrial conference and is of the opinion that the admissibility of this evidence raises considerations distinct from evidence of uncharged deaths of Hollywood clinic patients; specifically, the analysis of unfair prejudice as to the provider defendants is different. The Court also is of the opinion that admissibility of this evidence depends greatly on the context in which the government may seek to introduce the evidence at trial. At this time, therefore, the Court will **DEFER** ruling on the admissibility of this category of evidence.

## III.    Conclusion

The Court hereby **GRANTS** in part defendants Hofstetter, Clemons, and Newman's Joint Motion *in Limine* to Exclude Evidence of Patient Deaths from the Florida Clinic [Doc. 588] and to the extent the motion seeks to exclude evidence of uncharged patient overdose deaths to impeach or rebut a defense of good faith, the motion is **DENIED** in part. Defendants' corresponding motion in the alternative is **DENIED** as moot. The Court **DENIES** in part the government's Motion *in Limine* to Permit Evidence Concerning the Vehicular Deaths of Clinic Patients [Doc. 577]. With respect to defendants Hofstetter, Clemons, and Newman's Joint Motion *in Limine* to Exclude Evidence of Any Uncharged Deaths [Doc. 587], the Court rules as follows:

- To the extent the motion seeks to exclude evidence of uncharged deaths of Hollywood clinic patients and S.S. and K.T., the motion is **GRANTED** in part.

- To the extent the motion seeks to exclude evidence of uncharged patient overdose deaths to impeach or rebut a defense of good faith, the motion is **DENIED** in part.

- The Court **DEFERS** on ruling on the admissibility of the remaining evidence of uncharged patient deaths that the motion seeks to exclude, specifically evidence of uncharged deaths of patients of Tennessee clinics.

    IT IS SO ORDERED.


                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE