UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:15-CR-27-TAV-DCP |
| SYLVIA HOFSTETTER, CYNTHIA CLEMONS, and COURTNEY NEWMAN, | ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

Defendant Cynthia Clemons has moved to continue trial [Doc. 660], and defendants Courtney Newman and Sylvia Hofstetter have joined her motion [Docs. 663, 665]. The government opposes a continuance [Doc. 662]. Defendants have failed to provide a sufficient basis for granting an ends-of-justice continuance in this case, and denying their motion will not result in a constitutional violation. The motion to continue [Doc. 660] is therefore **DENIED**.

## I. Background[1]

The trial date in this case has been continued seven (7) times. Magistrate Judge C. Clifford Shirley originally continued the trial date from May 19, 2015, to June 14, 2016 [Doc. 44], on defendant Hofstetter's motion [Doc. 36]. The trial was then continued to

---

[1] The Court incorporates by reference the summaries of the case and Fourth Superseding Indictment that have been set forth in numerous previous orders and magistrate judge reports [*E.g.*, Docs. 672, 486, 474]. For purposes of the instant motion, the background section focuses on the procedural background of the case as it relates to defendant's request to continue.

November 8, 2016 [Doc. 61], on defendant Hofstetter's oral motion to continue. After defendants Newman and Clemons entered the case, they moved separately to continue trial [Docs. 91, 95], and Judge Shirley granted their motions, continuing trial to September 12, 2017 [Doc. 100]. In July of 2017, former co-defendant Clyde Christopher Tipton orally moved to continue the September 12 trial date, joined by most of the other defendants in the case at that time, and Judge Shirley granted the motion over defendant Hofstetter's objection [Doc. 251 p. 1–2]. The new October 16, 2018 trial date [Doc. 251] was later continued to June 3, 2019 [Doc. 364], on defendant Newman's motion to continue [Doc. 347], which defendants Hofstetter [Doc. 349] and Clemons [Doc. 358] supported. Magistrate Judge Debra C. Poplin then continued the trial to October 1, 2019 [Doc. 486], on defendant Hofstetter's motion to continue [Doc. 453], joined by defendant Clemons and unopposed by defendants Newman and Womack [*Id.* at p. 2].

More recently, Judge Poplin granted defendant Clemons's previous motion to continue on September 20, 2019, providing almost three (3) additional weeks, and five (5) weeks total, for defendant Clemons's newly appointed additional counsel to prepare for trial [Doc. 629]. The trial is currently scheduled to begin Monday, October 21, 2019.

The magistrate judge fully discussed the circumstances of that continuance in her order [Doc. 629], which the Court incorporates by reference. However, the Court highlights the following particularly relevant facts from that order: at the hearing on the motion to continue, the magistrate judge noted that attorney M. Jeffrey Whitt was appointed [Doc. 620] to assist Randall Reagan in representing defendant Clemons due to

the then-indisposition of Mr. Reagan's co-counsel Cullen Wojcik; Mr. Reagan stated that Mr. Wojcik's role was to prepare for the expert witnesses while Mr. Reagan prepared for all other witnesses; Mr. Whitt related that, after meeting with Mr. Reagan multiple times, meeting with Assistant United States Attorney Tracy Stone and Charles Burks, one of defendant Hofstetter's attorneys, and speaking with Mr. Wojcik, he believed the earliest he could be prepared for trial, assuming the availability of experts to meet with him, would be November 1, 2019, approximately six (6) weeks after his appointment; AUSA Stone stated that the government had disclosed 225 patient files it could conceivably use in relation to its experts' testimony but that it would only call two (2) of its four (4) medical experts, Dr. Blake and Dr. Carter; and AUSA Stone also stated the government would not call its experts before the last third of its case and probably not before the last quarter of its case [Doc. 629 p. 1–4]. Just a week earlier, at a September 10th hearing in this case, the government estimated its case could last eight (8) to ten (10) weeks.

In granting defendant Clemons's motion to continue, Judge Poplin noted that the new trial date, October 21, 2019, would give Mr. Whitt five (5) weeks to prepare before testimony began and an additional four (4) to six (6) weeks, after the start of trial, before the government presented its experts [Doc. 629 p. 6]. At the October 9, 2019 hearing, the government stated that it expects its case-in-chief to last five (5) to seven (7) weeks, based on its offered reductions in witnesses and proof and assuming the parties agree upon the government's desired stipulations. The Court has advised the parties that trial will not take place October 24 and 25, November 1, November 11 (Veterans Day), the

week of Thanksgiving (November 25–29), and the weeks of December 23–27 and December 30–January 3. Additionally, the Court has advised the parties that it anticipates trial will not be held on certain additional days to allow the Court to attend to other matters.

The Court now has before it defendant Clemons's Motion to Continue Trial Date [Doc. 660], which defendants Newman and Hofstetter have joined [Docs. 663, 665]. Defendant Clemons asks for a continuance until January 2020 considering the recent nature of Mr. Whitt's appointment as her attorney, the complexity of the issues, the number of charts Mr. Whitt believes he must review to prepare for trial, and the need to send additional charts to a defense expert [Doc. 660 p. 1, 4]. The government opposes the motion, emphasizing, among other things, the lengthy history of continuing this trial and Mr. Whitt's limited role [Doc. 662].

Since the trial was continued to October 21, the government has moved to dismiss three (3) counts of the Fourth Superseding Indictment and to strike certain enhancement notices [Doc. 635]. Defendants stated at the pretrial conference on September 25, 2019, that they did not oppose this motion, and the parties agreed to file a proposed order dismissing the counts and striking the enhancements. Such an order would have the effect of reducing the number of overdose deaths alleged or referenced in the Fourth Superseding Indictment from eighteen (18) to thirteen (13) [Doc. 662 p. 2]. In the government's response to the instant motion, it offered to reduce the number of charged or referenced overdose deaths to just five (5): C.H., A.V.K., S.B., H.R., and J.R. [*Id.*].

The government noted in its response to defendant Clemons's motion that Mr. Whitt would be responsible for handling expert testimony relating to these five (5) deaths and approximately ninety-five (95) patient files [*Id.*], which the government clarified at the October 9th hearing, represents eighty (80) files reviewed by government experts and fifteen (15) files reviewed by defense experts.

## II.     Legal Standard

The Court analyzes the propriety of granting or denying a continuance under the Speedy Trial Act, 18 U.S.C. § 3161–3174, and the Constitution. U.S. Const. amend. VI.

Although the Speedy Trial Act requires that a criminal defendant's trial begin within seventy (70) days of his being charged or making an initial appearance, whichever occurs later, § 3161(c)(1), periods of delay are excludable if the court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Sua sponte or on motion, *id.*, the Court shall consider various factors, most relevant to this case, whether a failure to continue would "result in a miscarriage of justice" or whether it would deny counsel for the defendant "the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." §§ 3161(h)(7)(B)(i), (iv). The court must set forth its reasons for granting a continuance orally or in writing. § 3161(h)(7)(A).

The district court exercises "wide discretion" on whether to grant or deny continuances as a constitutional matter. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010) (citation omitted); *see also Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) ("broad

discretion must be granted trial courts on matters of continuances"). The propriety of a continuance is a fact-intensive inquiry that may involve consideration of "the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice." *United States v. McClendon*, 146 F. App'x 23, 26–27 (6th Cir. 2005); *see also Barker v. Wingo*, 407 U.S. 514, 530–33 (1972) (discussing four (4) non-exclusive, non-decisive factors, length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant, a court might consider). Far from "every restriction on counsel's time or opportunity to investigate or to consult with the client or otherwise to prepare for trial violat[ing] a defendant's Sixth Amendment right to counsel," 146 F. App'x at 26, a denial is only an abuse of discretion amounting to a due process violation when it represents "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (quoting *Morris*, 461 U.S. at 11–12); *United States v. King*, 127 F.3d 483, 486–87 (6th Cir. 1997).

A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). A defendant may demonstrate actual prejudice by "showing that a continuance would have made relevant witnesses available or added something to the defense." *King*, 127 F.3d at 487 (finding no abuse of discretion where no evidence of actual prejudice); *see also United States v. Harbour*, 417 F. App'x 507, 514–15 (6th Cir. 2011) (finding no abuse of

6

discretion where district court denied second motion for continuance after new counsel was retained and where defendant stated more time would have allowed attorney to retain expert witness and review evidence and prepare arguments "at a more leisurely pace"); *cf. McClendon*, 146 F. App'x at 27–28 (finding abuse of discretion where court denied defendant's first "meaningful" request for a continuance, request asked for thirty-day continuance, and government did not allege any inconvenience for itself or witnesses).

## III. Analysis

The ends of justice served by granting a continuance in this case do not outweigh the best interests of the public and the defendants in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Additionally, the length of delay, number of previous continuances, inconvenience to witnesses, counsel and the Court resulting from a delay, and lack of identifiable prejudice resulting from a denial support denying defendant Clemons's motion to continue. Defendant Clemons's counsel, Mr. Whitt, presents two (2) principle arguments for granting a continuance [Doc. 660], which the Court will address in turn under the Speedy Trial Act. The Court will then consider whether denying defendant's motion to continue will violate due process.

### A. The Speedy Trial Act and Mr. Whitt's Need to Review 252 Files

The Court finds unpersuasive Mr. Whitt's first argument that a continuance is necessary to allow him to review 252 medical files in preparation for trial. In his affidavit in support of the motion, Mr. Whitt notes that he stated at the September 19th hearing that the earliest he could be available for trial would be November 1, 2019, based

7

on his estimate that he would have to review at least 100 patient files, each file ranging from 150–200 pages [Doc. 660 p. 4]. Mr. Reagan expressed the opinion at the same hearing that his new co-counsel would require several months to prepare for trial [*Id.*]. Mr. Whitt states that he "vastly" underestimated the number of patient files he would need to review, and he now believes he must review at least 250 files, which could consume an additional 150–250 hours, depending on each file's size [*Id.*].[2] Discussion at the October 9th hearing clarified that the number of files increased because Mr. Whitt believes he needs to review all the medical charts filed under seal with the Court, not just those files reviewed by the government's and defendants' experts. Mr. Whitt stated at the October 9th hearing that he has currently reviewed forty (40) files. Addressing the question of whether he could spend time during trial reviewing the remaining 212 files, Mr. Whitt expressed the belief in his affidavit and at the hearing that he should be present in the courtroom during all stages of trial, including jury selection [*Id.* at 5].[3] Defendant Clemons asserts that a continuance is "in the interests of justice and is necessary to assure that her rights to effective assistance of counsel and a fair trial are not violated" [*Id.* at 1].

---

[2.] Mr. Whitt stated he must review "at least" 250 files, so the Court adopts the government's calculation of the number of files: approximately 237 patient files the United States designated for use in its case-in-chief on September 13, 2019, plus the fifteen (15) files the defendants' medical experts reviewed, which totals 252 files [Doc. 662 p. 3].

[3.] In his affidavit, Mr. Whitt requests clarification of Magistrate Judge Poplin's order indicating he would have an additional four (4) to six (6) weeks of preparation time during the trial due to the government's statement it would call its expert witnesses during the last third of its case-in-chief and due to the fact that Mr. Whitt need not be present during jury selection [Doc. 660 p. 5]. Asking whether the magistrate judge believed he could prepare during the trial hours by absenting himself from the courtroom or during the hours after trial each day, Mr. Whitt states that he believes it "vital" to be present in the courtroom during all stages of trial, including jury selection, and he notes that trials can be exhausting, especially considering the trial's length and the twelve-hour days Mr. Whitt has worked for weeks leading up to the trial [Doc. 660 p. 5].

The government disputes the necessity of Mr. Whitt reviewing all 252 medical files. Rather, in its response to the instant motion, it states its belief that Mr. Whitt will be responsible for handling expert testimony relating to approximately ninety-five (95) patient files and five (5) overdose deaths charged or referenced in the Fourth Superseding Indictment [Doc. 662 p. 2]. While the government's medical experts originally reviewed approximately 112 patient files, the government states that it decreased that number to approximately eighty (80) files to reduce Mr. Whitt's workload [*Id.*]. For associated reasons, the government decided not to call Dr. Jim Wike in its case-in-chief [*Id.* at p. 2 n.2]. Mr. Stone suggested at the October 9th hearing that it should not be necessary, though it might be preferable from a strategic standpoint, for Mr. Whitt to review all 252 files since Mrs. Clemons's other attorneys have been on the case for more than two (2) years and nine (9) months, respectively, and should already have reviewed these charts. Defendant Clemons, the government states, has had copies of all the Tennessee patient files in her possession since July 2017 [*Id.* at 3]. The government noted in its response to defendant Clemons's prior motion to continue trial, which it incorporated in its response to the instant motion, that Mr. Reagan had received the benefit of co-counsel assistance for months longer than would have been the case if trial had begun in June 2019 [Doc. 607 p. 2]. It also highlighted the fact that defendant Womack is represented by a single attorney, "consistent with every other non-capital case charged or tried in this district, to the best of the United States' knowledge" [*Id.* at p. 2 n.2]. Noting that only one defendant has designated the charts she intends to use in her case-in-chief, Mr. Stone

expressed the belief at the October 9th hearing that both sides were "in the same boat" [*see* Doc. 629 (extending the deadline for disclosing a list of patient files that defendants intend to introduce in their cases-in-chief to October 11, 2019)].

The government also notes that defendants have "more resources specifically dedicated to this trial" than does the United States and that a continuance could lead to the reduction of the government's team of three (3) attorneys to one, Mr. Stone [Doc. 662 p. 3]. The government highlights the fact that defendants collectively have seven (7) full-time attorneys, who have presented something of a joint strategy, and share experts, investigators, and a trial consultant [*Id.*]. The government also brings to the Court's attention a potential conflict that would arise in the case of a continuance: government attorneys Kelly Pearson and Damaré Theriot are the only government attorneys assigned to a trial scheduled to begin in the Eastern District of Michigan on February 18, 2020, and the government believes the judge in that case would "look dimly" on a motion to continue as the case has been pending since December 2015 and Ms. Pearson asked the court to schedule the trial for February to avoid a conflict with the *Hofstetter* trial [*Id.*].

The Court finds that the ends of justice served by granting a continuance under these circumstances do not outweigh the best interests of the public and the defendants in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Examining Mr. Whitt's first argument under the second of the two (2) relevant factors to ruling on this motion under the Speedy Trial Act, §§ 3161(h)(7)(B)(i), (iv), denying a continuance will not deprive defendant Clemons of reasonable time for effective preparation for trial. § 3161(h)(7)(B)(iv). Mr. Whitt was

appointed to represent defendant Clemons as co-counsel to Mr. Reagan and Mr. Wojcik [Doc. 629], who were appointed in October 2016 [Doc. 77] and January 2019 [Doc. 401] respectively. As the magistrate judge noted, Mr. Reagan stated that Mr. Wojcik's role, prior to Mr. Whitt's appointment, was to prepare for the expert witnesses while Mr. Reagan prepared for all other witnesses [*Id.*]. Mr. Whitt was appointed to fill Mr. Wojcik's role while Mr. Wojcik was incapacitated [*Id.*]. Although the Court respects Mr. Whitt's desire to review all 252 medical files, it believes his limited role means that effective preparation for trial only *requires* reviewing the ninety-five (95) files reviewed by expert witnesses and the five (5) files associated with the overdose deaths.[4] Additionally, Mr. Reagan, as well as counsel for the remaining defendants, can and should be prepared to cross-examine non-expert witnesses regarding any of the remaining non-expert-related files, and they have had much longer than Mr. Whitt to review many, if not all, of these files.

Noting the government's statement that its experts will not testify before the last third, or likely last quarter, of its case, and its latest estimate that its case-in-chief will last five (5) to seven (7) weeks, the Court highlights the number of days Mr. Whitt will have had to review the ninety-five (95) to 100 expert- or overdose-related files before the government's experts testify: the Thursday and Friday following the October 9th hearing, the week of October 14th, October 24th and 25th, November 1st, and November 11th.

---

[4.] The Court has granted in part [Doc. 672] defendants' Joint Motion in Limine to Exclude Evidence of Patient Deaths from Florida Clinic [Doc. 588] and their Joint Motion in Limine to Exclude Evidence of Any Uncharged Deaths [Doc. 587]. The Court believes these rulings may further reduce the number of files Mr. Whitt feels compelled to review.

By the Court's calculations, this will enable Mr. Whitt to review all the expert files and the five (5) overdose death files by the end of the day on November 11th, assuming Mr. Whitt spends nine (9) hours each day reviewing the files on the aforementioned days.[5] As the Court does not expect any witnesses to testify prior to October 28th, the government will only be two (2) weeks into its case-in-chief by this time. And, the Court again notes that it anticipates additional days, particularly in December, that trial will not be held to permit the Court to attend to other matters during a lengthy trial. This will undoubtedly allow all counsel, including Mr. Whitt, additional days to review files and address other trial-related matters.

Mr. Whitt's limited role in preparing for expert witnesses also relates to the need for him to be in court throughout trial. While the Court recognizes Mr. Whitt's desire to be consistently present, the Court reiterates, as discussed at the October 9th hearing, that it plans to advise the jury that jurors should not expect all attorneys to be present at all times during this trial. Also, it is evident, given the attorneys' acknowledged roles, that the jury will identify Mr. Reagan as primary counsel for Mrs. Clemons, as he has been

---

[5.] The dates mentioned represent eleven (11) nine-hour work days or ninety-nine (99) hours. If each file takes one hour to review, which adopts the less generous end of Mr. Whitt's estimate of review time per file [Doc. 660 p. 4 (stating that reviewing the 150 charts beyond his original 100-chart estimate could consume 150–250 hours)], Mr. Whitt will have reviewed 139 files, including the forty (40) files he had reviewed by October 9th, by the end of the day November 11th. Adopting the more generous end of Mr. Whitt's estimate and assuming each file will take 100 minutes to review, Mr. Whitt will have reviewed 5.4 files per nine-hour work day, amounting to just under sixty (60) files by the end of the day November 11th. Adding these sixty (60) files to the forty (40) he reviewed by October 9th results in a total of 100 reviewed files. The Court has noted that attorneys will not exercise peremptory strikes the first day of jury selection, October 21, so this may represent another day during which Mr. Whitt may review files.

for the past three (3) years. In any event, the Court's instruction will help ensure that if Mr. Whitt, or any other attorney, requires additional time to review files beyond those for which they are strictly responsible or to attend to other trial-related matters, he or she may excuse him or herself from trial without his or her client being prejudiced. The Court also notes that it has granted the parties access to daily trial transcripts, which will ensure that an absent attorney may review any missed testimony.

Just as the need to provide reasonable time for effective preparation does not provide a basis for granting this continuance, § 3161(h)(7)(B)(iv), neither does the possibility that a denial would result in a miscarriage of justice. § 3161(h)(7)(B)(i). The government has made significant concessions to narrow the scope of the evidence for which Mr. Whitt is responsible. As discussed above, it has moved to dismiss three (3) counts of the Fourth Superseding Indictment [Doc. 635], offered to reduce the number of overdose deaths from eighteen (18) to thirteen (13) to five (5) most recently [Docs. 635, 662], dropped multiple expert witnesses [Docs. 629, 662], and reduced the estimated length of its case-in-chief from eight (8) to ten (10) weeks to five (5) to seven (7) weeks. Additionally, this Court has already continued this case seven (7) times, including, most recently, on September 20th. And, defendant Clemons has and has had significant resources committed to defending her case: Mr. Reagan was appointed to represent defendant Clemons in October 2016 [Doc. 77], and Mr. Wojcik was appointed to represent her in January of this year [Doc. 401]; as the government notes, defendants have shared resources, including their attorneys and experts; and, defendant Clemons

now has three (3) attorneys.  Although the Court continues to express concern for Mr. Wojcik's health, Mr. Whitt stated at the October 9th hearing that he has consulted with Mr. Wojcik, and it remains possible that Mr. Wojcik could continue to provide assistance up to and perhaps even at various junctures of the trial.  The government's point that if the trial had gone forward in June, Mr. Reagan would have had the benefit of co-counsel for many fewer months than he has had is well-taken.

For the reasons stated above, neither of the relevant factors under the Speedy Trial Act, affording reasonable time for effective preparation or avoiding a miscarriage of justice, §§ 3161(h)(7)(B)(i), (iv), provides grounds for granting an ends-of-justice continuance on the basis of Mr. Whitt's first argument.  § 3161(h)(7)(A).

### B. The Speedy Trial Act and the Need for Defense Expert to Review Files

The Court finds similarly unpersuasive Mr. Whitt's second argument—that defendants' forensic pathologist requires time to review numerous charts and other documents that were not forwarded to him previously.  In his affidavit, Mr. Whitt notes his discovery that numerous charts and other documents involving deaths charged in the RICO count of the indictment were not forwarded to defense experts for review [Doc. 660 p. 5].  The October 9th hearing clarified that defendants' expert did not review the files of two (2) of the five (5) patients whose deaths were charged or referenced in the indictment and whose deaths the government intends to prove at trial.  While Mr. Whitt has sent those files to defendants' forensic pathologist, the expert's busy schedule may prevent him from reviewing these new materials before testifying, if asked to do so in

December [*Id.*]. Mr. Whitt believes defendant Clemons's due process rights to a fair trial may be violated if the expert is unable to review the material properly before testifying [*Id.*]. Defendant Hofstetter's notice of joinder to the instant motion echoes Mr. Whitt's concerns, stating that counsel for defendant Hofstetter failed to appreciate previously that "numerous additional deaths" "must be reviewed" by defendants' shared forensic pathologist [Doc. 665 p. 2]. Defendant Hofstetter also asserts that failure to grant a continuance in this case would unreasonably deny her the reasonable time necessary for effective preparation considering the exercise of due diligence, and that the ends of justice outweigh the best interests of the public and defendant in a speedy trial [*Id.*].

The government argues in response that strategic decisions regarding sending files to experts should be irrelevant to deciding the instant motion because defendants' deadline to disclose its expert report was July 12, 2019, a deadline that passed before Mr. Whitt entered the case [Doc. 662 p. 2; *see also* Doc. 522 (ordering defendants to disclose the expert report or supplemental expert report(s) of its medical experts by July 12, 2019)]. "[S]eeking expert review of materials is a matter of strategy, not entitlement," the government argues, pointing out that defendant Clemons has had copies of all the Tennessee patient files in her possession since July 2017 [Doc. 662 p. 3]. The Court recognizes that Mr. Reagan was appointed to represent defendant Clemons in October 2016 [Doc. 77], and Mr. Wojcik was appointed to represent her in January of this year [Doc. 401].

The Court finds that neither of the relevant Speedy Trial factors provides sufficient grounds for granting an ends-of-justice continuance on the basis of the defense expert's need to review additional files before potentially testifying in December. 18 U.S.C. §§ 3161(h)(7)(B)(i), (iv).

First, denying the continuance will not deny defendants reasonable time for effective preparation. § 3161(h)(7)(B)(iv). As discussed above, trial testimony will not begin until October 28th, and the government now estimates its case-in-chief will consume five (5) to seven (7) weeks. Considering the Court's calendar, and assuming no additional days of trial not being held, the government would have eighteen (18) days, or just over three (3) five-day weeks, to present its case-in-chief before the Thanksgiving holiday. After Thanksgiving week, again assuming no additional trial day reductions, the Court would be in trial for, at best, an additional three (3) full weeks before the Christmas holidays. Therefore, if the government's case-in-chief takes five (5) weeks, the defense would not even begin its case-in-chief until sometime between Thursday, December 12th, and Monday, December 16th. If the government's case-in-chief takes six (6) or seven (7) weeks, on the other hand, the defense would not begin its case-in-chief until January 2020. Consequently, defendants' expert will have until December 12th at the earliest to review the additional files, and it seems very likely that he will have until 2020 to do so.

Additionally, the Court notes that its denial of the instant motion does not preclude defendants from moving for a continuance later in the trial. If the government case lasts five (5) weeks, and it appears that defendants must begin their case-in-chief but that the

16

expert has not had time to review the additional files, then defendants may move for a continuance at that time.  By the same token, if it appears the government will begin calling its expert witnesses and Mr. Whitt believes he has reviewed an insufficient number of files to prepare for cross-examination, defendant Clemons may move for a continuance at that time.  These additional potential options further belie defendants' arguments regarding effective preparation.

Turning to the second factor, for similar reasons to those discussed with respect to Mr. Whitt's first argument, no miscarriage of justice will result from a denial of defendant's motion to continue.  § 3161(h)(7)(B)(i).  Defendant Clemons has had access to the files at issue since July 2017.  Mr. Reagan was appointed to represent her in October 2016 [Doc. 77].  Mr. Wojcik was appointed in January of this year [Doc. 401]. Defendant Hofstetter was represented as early as April 2015 [Doc. 32].  As the government notes, sending the files to defendants' expert represents a matter of strategy, not entitlement, and either of defendant Clemons's other attorneys had significant opportunity to forward the additional files to the expert, while defendant Hofstetter's attorneys also had opportunity to ensure the expert reviewed all relevant files.

For the articulated reasons, the ends of justice served by granting a continuance do not outweigh the interest of the public and defendants in a speedy trial on this second basis.  18 U.S.C. § 3161(h)(7)(A).

## C. Whether Failure to Grant a Continuance Will Violate Due Process

Granting a denial of defendant's motion to continue will not violate defendants' constitutional rights, applying the factors discussed in *United States v. McClendon*, 146 F. App'x 23, 26–27 (6th Cir. 2005) (assessing the propriety of a continuance may involve consideration of "the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice"). This case has been delayed at least three (3) years for defendants Hofstetter, Newman, and Clemons, who were charged in the First Superseding Indictment in October 2016 [Doc. 70]. Defendant Holli Womack was charged in the Second Superseding Indictment in July 2017 [Doc. 224]. This represents a significant delay. Additionally, as discussed above, this case has already been continued seven (7) times at the motion of various defendants, including most recently defendant Clemons. The delay has caused inconvenience to the government, witnesses who have been held in local prison facilities awaiting the opportunity to testify, and the Court, which has rearranged other pending matters, including sentencings of co-defendants in this trial, to prepare space on its calendar for the instant trial. The Court acknowledges that there is no indication that the delay is purposeful or caused by the accused, and it recognizes that this Court previously declared this case to be complex for purposes of the Speedy Trial Act, based upon the number of defendants charged in this and the related cases and the nature of the prosecution [Doc. 44]. But, it also notes that the government has continued

to focus its case in an effort to reduce Mr. Whitt's workload by making this case less complex. Finally, for the reasons discussed above, including the possibility of the Court considering a later continuance request during trial, the Court does not find that denying a continuance at this time will lead to identifiable prejudice. Defendants have now and have had reasonable time and resources to prepare effectively for this trial. For these reasons, the Court finds that its decision to deny defendant's motion to continue does not represent "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Vasquez,* 560 F.3d at 466 (quoting *Morris*, 461 U.S. at 11–12); *King*, 127 F.3d at 486–87.

### IV. Conclusion

The Court finds no sufficient basis under the Speedy Trial Act to grant a continuance in this case, and the Constitution does not require one. Accordingly, defendant Clemons's Motion to Continue Trial [Doc. 660] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE