IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:15-CR-27-TAV-DCP |
| SYLVIA HOFSTETTER, | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the Government's Motion for Interlocutory Sale of Properties [Doc. 1179], which was filed on July 14, 2021, and referred [Doc. 1184] to the undersigned on August 13, 2021, for disposition or recommendation, as appropriate. *See* 28 U.S.C. § 636(b)(3). The Government asks the Court to permit the immediate interlocutory sale of a 2014 Lexus IS 250, which it contends was purchased by Sylvia Hofstetter and possessed by Sylvia Gil, and a 2015 Lexus GS350 sedan, seized from Sylvia Hofstetter. Following the entry of a Judgment of conviction [Doc. 993] for Defendant Hofstetter on October 23, 2020, Defendant filed a notice of appeal [Doc. 1006] of her conviction and sentence. The Government asks the Court to permit the sale of the two vehicles, which it asserts continue to decline in value and to cause it to incur storage costs. It asserts that an interlocutory sale of the vehicles will preserve their value during the pendency of Defendant Hofstetter's appeal. Third-party petitioner Exeter Finance Corporation ("Exeter") claims an interest in the 2014 Lexus and asks the Court to either return the vehicle to it or, alternatively, to permit the interlocutory sale and order that Exeter's lien be paid first from the proceeds of the sale [Doc. 1181].

1

The undersigned recommends that the vehicles be sold and that the proceeds be held by the Government, pending the outcome of Defendant Hofstetter's appeal. The Court also recommends that the Court establish the validity of Exeter's interest in the property, so that the proceeds of the sale of the 2014 Lexus can be distributed immediately upon the conclusion of Hofstetter's appeal. Finally, the undersigned recommends that if the District Judge finds that Exeter is a bona fide purchaser for value, Exeter's lien should be paid from the proceeds of the interlocutory sale before the Government's costs are assessed.

I. BACKGROUND

On March 4, 2015, the Grand Jury returned an Indictment [Doc. 3] charging Defendant Hofstetter with drug trafficking conspiracy and money laundering conspiracies and with seven substantive counts of money laundering. The Indictment contains forfeiture allegations, requiring the forfeiture of numerous bank accounts, Hofstetter's residence, a money judgment in excess of $17,458,000, and a single vehicle described as a "2014 Lexus IS 250, . . . ., purchased by Sylvia Hofstetter, [and] possessed by Sylvia Gil" [Doc. 1, pp.2 & 9]. On April 16, 2015, the Government filed an Amended Bill of Particulars for Forfeiture of Property [Doc. 35], giving notice that it sought the forfeiture of additional property, which was seized from Defendant Hofstetter's residence on March 10, 2015, including a single vehicle, described as a 2015 Lexus GS350 Sedan. The Government obtained superseding indictments on October 4, 2016 [Doc. 70]; July 7, 2017 [Doc. 224]; January 4, 2018 [Doc. 278]; and May 1, 2018 [Doc. 320]. Each of these Superseding Indictments contained forfeiture allegations that include the 2014 Lexus and the 2015 Lexus [Doc. 70, pp.4 & 16; Doc. 224, pp.8 & 19; Doc. 278, pp.41, 47-48, & 54; and Doc. 320, pp.41, 47, 54, & 60].

Defendant Hofstetter's thirty-seven-day trial began on October 23, 2019 [Doc. 711, minutes],[1] and extended through January 28, 2020 [Doc. 852, Minutes]. On February 13, 2020, the jury found Defendant Hofstetter guilty of eleven counts [Docs. 859 & 860]. On October 21, 2020, United States District Judge Thomas A. Varlan entered a Preliminary Order of Forfeiture [Doc. 983], finding that "all right, title, and interest" of Defendant Hofstetter in the 2014 Lexus and the 2015 Lexus is forfeited to the United States [Doc. 983]. Judge Varlan ordered that the vehicles be "held by the United States Marshals Service, or its designated representative, in its secure custody and control," that the Government give notice of the intent to dispose of the forfeited properties, and that all third parties claiming a legal interest in the properties file a petition with the Court within sixty days of notice [Doc. 983, p.5]. Following a sentencing hearing on October 21, 2020, the Court entered a Judgment of conviction [Doc. 993] for Defendant Hofstetter on October 23, 2020. Defendant Hofstetter filed a notice of appeal [Doc. 1006] on October 30, 2020.

On December 11, 2020, the Government filed a Notice of Forfeiture for the 2014 Lexus and the 2015 Lexus [Doc. 1048]. The Notice states that persons or entities with a legal interest in the properties must petition the Court for a hearing within thirty days of the earlier of receipt of written notice or final publication of notice.[2]

On February 19, 2021, Exeter filed a Verified Statement of Interest and Petition for Adjudication of Validity of Interest ("Petition") for its first secured lien on the 2014 Lexus [Doc.

---

[1] The Court conducted voir dire on October 21 and 22, 2019 [Docs. 708 & 710, Minutes].

[2] The record contains a return of service of written notice to Exeter, dated February 1, 2021 [Doc. 1120]. A return of service for written notice to Sylvia Gil, dated January 16, 2021, was filed on February 4, 2021 [Doc. 1123]. A return of service for Zachary Miller, counsel for Exeter, is dated February 8, 2021 [Doc. 1129].

1134]. In the Petition, Exeter contends that its interest in the 2014 Lexus is superior to any interest of the Government, because Defendant Hofstetter never had any interest in the car and, thus, it is not subject to forfeiture. Alternatively, Exeter argues that if the 2014 Lexus is subject to forfeiture, Exeter's lien on the car resulted from a bona fide purchase, and at the time of the purchase, Exeter was reasonably without cause to believe the car was subject to forfeiture. Exeter contends that on May 14, 2014, Sylvia Gil purchased the 2014 Lexus from Lexus of Knoxville under an installment sale contract [Doc. 1134-1], which was assigned to Exeter. Exeter contends that to the extent Gil's down payment was made with proceeds from the Defendant's crimes, it was unaware of and had no reason to be aware of that at the time it acquired the contract. On June 9, 2014, title to the vehicle [Doc. 1134-2] was issued in the name of Sylvia Gil, with Exeter possessing the first security interest. Exeter asserts that the outstanding balance on the contract is $22,389.40 and that the last payment on the contract was made in 2015. Exeter asks the Court to amend the Preliminary Order of Forfeiture to exclude the 2014 Lexus from forfeiture, to find that its interest in the vehicle is valid, and to order the Government to return the car to it.

On March 5, 2021, the Government responded [Doc. 1142] that although it "recognizes that Exeter has a secured interest in the" 2014 Lexus, "at this time," it "opposes Exeter's request to dismiss the forfeiture and return the Property to Exeter" [Doc. 1142, p.3]. The Government does not state the basis for its opposition, nor does it state its position on Exeter's assertions that it is a bona fide purchaser for value and that it was reasonably unaware of Hofstetter's involvement in the purchase of the 2014 Lexus. Instead, the Government states only that it expects to file a motion for interlocutory sale of the car in order to preserve the equity therein and that it anticipates that "said equity will be applied to the expenses for said Property" [Doc. 1142, p.3]. Over four months later, on July 14, 2021, the Government filed the anticipated Motion

4

Case 3:15-cr-00027-TAV-DCP   Document 1189   Filed 10/08/21   Page 4 of 15
PageID #: 81141

for Interlocutory Sale of Properties, requesting the sale of the 2014 Lexus and the 2015 Lexus [Doc. 1179].

The Motion for Interlocutory Sale was referred to the undersigned on August 13, 2021 [Doc. 1184], and the Court held a motion hearing by video conference on the motion on September 13, 2021. Assistant United States Attorney Gretchen Jenkins Mohr appeared on behalf of the Government. Attorney Samuel A. Morris represented Exeter. The Court heard the parties' arguments on the motion and took the matter under advisement.

## II. POSITIONS OF THE PARTIES

The Government asks [Doc. 1179] the Court to permit the interlocutory sale of the 2014 Lexus and 2015 Lexus, because the value of the vehicles continues to decline, while it continues to incur considerable storage costs for them. It asserts that an interlocutory sale will allow it to convert the properties to cash, which will preserve their value. The Government argues that Defendant Hofstetter no longer has an interest in the cars following her sentencing and cannot now object to their sale. With regard to the 2014 Lexus, the Government contends the appraisal value is $22,038 and that the Government has incurred $17,100.35 in storage fees as of July 2021. For the 2015 Lexus, the Government contends the appraisal value is $32,775 and the storage costs through July 2021 are $17,100.35. It maintains that the depreciation of the cars' value and the continued storage fees justify an interlocutory sale by the United States Marshals Service, which will preserve the value of the vehicles through the pendency of Defendant Hofstetter's appeal.

Exeter responds [Doc. 1181] that as the first security lien holder, it is entitled to possession of the 2014 Lexus. It contends that Defendant Hofstetter never had any interest in the vehicle, which was owned by Sylvia Gil. It argues that because Defendant Hoffstetter had no interest in the car, the Government currently has no interest in the car, as only Hofstetter's interest

was forfeited to the Government. Exeter contends that since the seizure of the car in 2015, it has repeatedly asked the Government to return the car to it. Exeter argues that the storage costs assessed by the Government as asset management were unnecessary and should not be borne by Exeter, because the car was held for the Government's benefit and despite Exeter's repeated requests for its return. Thus, Exeter asks the Court to return the 2014 Lexus to it. Alternatively, Exeter states that it will agree to a court-ordered sale of the 2014 Lexus, provided that its lien is paid first out of the proceeds of the sale. It contends that as the first lienholder, the law provides that it is to be paid first and that it would be inequitable for the Government to recover over $17,000 in unnecessary storage costs before Exeter received the amount it is due under its security agreement.

The Government replies [Doc. 1182] that despite Exeter's argument that its contract was with Defendant Hofstetter's daughter Sylvia Gil, rather than Defendant, the matter of the propriety of the forfeiture of the 2014 Lexus has already been decided, subject to the appeal. The Government contends that it proved at trial that the 2014 Lexus was bought with the proceeds of Defendant Hofstetter's criminal activity. As such, the 2014 Lexus is directly traceable to the RICO conspiracy and to drug proceeds and is property involved in money laundering.

The Government acknowledges Exeter is a secured creditor on the 2014 Lexus but contends that it cannot turn over property or proceeds to third parties until the Court issues a final order of forfeiture. It contends that Exeter's assertion that it should be paid first from the proceeds of an interlocutory sale of the property is premature and that priority of payment should be litigated after the interlocutory sale. It argues that, if the Court takes up the issue of priority of payment, it is inequitable to award all the equity in the vehicle to Exeter, when the Government has borne the cost of maintaining and protecting the car from destruction and theft by Defendant Hofstetter and

6

others. It contends that by statute, the expenses of forfeiture, including the cost of maintenance of custody, shall be paid from the proceeds of the interlocutory sale. 21 U.S.C. § 881(e)(2)(i). The Government maintains that an interlocutory sale is in the best interest of all parties. It argues that after the conclusion of Defendant Hofstetter's appeal, the proceeds will be disposed of as provided by law and, at that time, the Government and Exeter can litigate the priority of payment.

At the September 13 hearing, Mr. Morris argued on behalf of Exeter, first, that the Court should return the 2014 Lexus to it as the innocent lienholder. However, he also argued that if the Court permits the interlocutory sale of the 2014 Lexus, the case is ripe for the Court to determine the priority of payment now, so that once the final forfeiture order is entered, the proceeds can be immediately disbursed. Mr. Morris stated that the Government has provided no authority for its argument that its costs are a super priority over the interest of the lienholder. Instead, he asserted that the Preliminary Order of Forfeiture states that "all rights, title, and interest of the defendant . . . are hereby forfeited to the United States" [Doc. 983, p.3]. Thus, Exeter contends that the Government only has the equity Defendant Hofstetter had and forfeited. Mr. Morris argued that equity is the value of the property minus the liens, which means that Hofstetter has no equity in the 2014 Lexus. He maintains that the Government's costs should be assessed from Defendant Hofstetter's equity in the vehicle, which is zero. He asks the Court to decide the priority of payment now, rather than subjecting Exeter to continued costs of litigating this issue.

AUSA Mohr argued that based on 21 U.S.C. § 821(e)(2)(i), the expenses are paid first, following an interlocutory sale of property subject to forfeiture. She contended that the vehicles at issue continue to lose value and even though they have now been moved to an outside lot, their continued storage costs $7 per day. AUSA Mohr asserted that the interlocutory sale of the property is in the best interest of all parties, because it preserves the value of the property. She

7

Case 3:15-cr-00027-TAV-DCP   Document 1189   Filed 10/08/21   Page 7 of 15
PageID #: 81144

acknowledged that with real property, the lienholder is paid first but stated that personal property is subject to different rules of priority. She argued that it would be inequitable to pay Exeter's lien first from the proceeds of the sale, when the Government has expended considerable funds protecting Exeter's interests for six years.

### III. ANALYSIS

This matter presents itself to the undersigned in a unique posture. Judge Varlan has referred the issue of whether the property may be liquidated in an interlocutory sale to preserve its value for later distribution of the proceeds. However, in the first instance, Exeter asks the Court to return the 2014 Lexus, arguing that it is entitled to the property as an innocent first lienholder on a bona fide purchase. Alternatively, Exeter contends that if the 2014 Lexus is sold in an interlocutory sale, the Court should order that its lien is paid first from the proceeds. The Government asserts that it cannot return the 2014 Lexus to Exeter because of Defendant Hofstetter's appeal and that the Court should only decide the fact of the interlocutory sale at this time, leaving the matter of the priority of distribution of the proceeds to be litigated after the appeal concludes. The Court examines whether an interlocutory sale is appropriate.[3]

"At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rules G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." Fed. R. Crim. P. 32.2(b)(7). Rule G(7)(b)(i) provides that upon the motion of the party with custody of the property, a court may order the interlocutory sale of the property if:

---

[3] Despite the intertwined nature of Exeter's interest in the 2014 Lexus with the question of the propriety of an interlocutory sale, the undersigned finds that only the motion for an interlocutory sale was referred. However, to the extent possible on the current record, the undersigned will make recommendations on related issues that are pending before the District Judge.

8

Case 3:15-cr-00027-TAV-DCP   Document 1189   Filed 10/08/21   Page 8 of 15
PageID #: 81145

> (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;
>
> (C) the property is subject to a mortgage or to taxes on which the owner is in default; or
>
> (D) the court finds other good cause.

Fed. R. Civ. P. Supp. G(7)(b)(i). According to Rule G(7)(b)(iv), the proceeds of the interlocutory sale "are a substitute res subject to forfeiture in place of the property that was sold." Further, the "proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action." Fed. R. Civ. P. Supp. G(7)(b)(iv). Once the Court enters a final order of forfeiture, the proceeds of the interlocutory sale "must be disposed of as provided by law." Fed. R. Civ. P. Supp. G(7)(c).

In the instant case, the Court finds that the expense of storing the two vehicles at issue in this case is disproportionate to their fair market value. With regard to the 2014 Lexus, the Court finds that the cost of storage has already exceeded seventy-seven percent (77%) of its appraisal value. The Court also observes that the appraisal value of the 2014 Lexus is less than the amount of Exeter's lien.[4] For the 2015 Lexus, the storage costs exceed fifty-two percent (52%) of the appraisal value. Thus, the Court finds that an interlocutory sale of the property is appropriate to preserve the value of the vehicles pending the conclusion of Defendant Hofstetter's appeal.

Although Exeter does not challenge the Government's claim of the declining value of the 2014 Lexus, it asks the Court to return the vehicle to it for two primary reasons: First, it argues that Sylvia Gil, not Defendant Hofstetter, purchased the 2014 Lexus and, thus, the vehicle

---

[4] Exeter states that it is still owed $22,389.40 on the contract. The Government asserts that the appraisal value of the 2014 Lexus is $22,038.

is not subject to forfeiture. Second, it asserts that the Court should return the 2014 Lexus to it because it is an innocent lienholder. With regard to the first argument, the Court must agree with the Government that the question of whether the 2014 Lexus is subject to forfeiture has already been decided. The verdict form states that the jury found that on May 23, 2014, Defendant Hofstetter engaged in or caused others to engage in a monetary transaction in criminally derived property, specifically using a check in the amount of $30,000 to purchase a 2014 Lexus IS 250, and that the $30,000 was derived from the conspiracy to violate federal drug laws [Doc. 860, p.8]. In the Preliminary Order of Forfeiture, Judge Varlan found "all right, title, and interest" of Defendant Hofstetter in the 2014 Lexus is forfeited to the United States [Doc. 983]. A court enters the preliminary order of forfeiture "without regard to any third party's interest in the property," and a third party's interest in the property will be determined in an ancillary proceeding after the third party files a claim. Fed. R. Crim. P. 32.2(c).

Exeter's second argument is that it has filed a third-party claim on the 2014 Lexus, contending that it is a bona fide purchaser of the first security lien on the car and that it did not know and had no reason to know about Defendant Hofstetter's criminal activity at the time it obtained the lien. Exeter asks the Court to resolve its claim on the 2014 vehicle now and return the car to it.

The Court agrees with Exeter that its third-party interest in the 2014 Lexus is ripe for determination. The Court finds that Exeter has properly and timely asserted a legal interest in the 2014 Lexus. See 21 U.S.C. § 853(n)(2)-(3). Moreover, the Government concedes that Exeter has a first security lien on the 2014 Lexus, although it is not clear whether the Government also concedes that Exeter is a bona fide purchaser without reasonable cause to believe the property was subject to forfeiture pursuant to 21 U.S.C. § 853(n)(6)(B). Rule 32.2(d) provides that the Court

10

may determine the interest of a third-party claimant while the conviction is on appeal.[5] Fed. R. Crim. P. 32.2(d). However, if the Court rules in favor of Exeter on its third-party claim while Defendant Hofstetter's appeal is pending, it "may amend the order of forfeiture but must not transfer any property interest to a third party until the decision on appeal becomes final, unless the defendant consents in writing or on the record." Fed. R. Crim. P. 32.2(d). In the instant case, the Government stated at the September 13 hearing that it had attempted to get Defendant Hofstetter to consent to the resolution of Exeter's interest in the 2014 Lexus, but Defendant Hofstetter declined to do so. The undersigned finds that the 2014 Lexus cannot be physically returned to Exeter until the conclusion of Hofstetter's appeal and that the car's value will continue to decline

---

[5] While the validity of Exeter's interest in the 2014 Lexus was not referred to the undersigned, the Court notes that such determination is possible during the pendency of the appeal and should be undertaken now. Once a third-party claimant files a petition asserting its interest in property ordered forfeited, the court shall hold a hearing to determine the claimant's interest "to the extent practicable and consistent with the interests of justice, . . . within thirty days of the filing of the petition." 21 U.S.C. § 853(n)(4). "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that . . . the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture . . . the court shall amend the order of forfeiture in accordance with this determination." 21 U.S.C. § 853(n)(6)(B).

Exeter contends that it is a bona fide purchaser without reasonable cause to believe the 2014 Lexus was subject to forfeiture pursuant to 21 U.S.C. § 853(n)(6)(B). The installment contract, which Exeter attached to its petition, shows that Sylvia Gil purchased the 2014 Lexus on May 14, 2014, using the value of a trade-in vehicle and a $30,000 down payment [Doc. 1134-1]. Exeter obtained a first secured lien on the vehicle on that same day [Doc. 1134-2, certificate of title]. The jury found the $30,000 down payment for the 2014 Lexus was derived from criminal proceeds. The Court observes that Defendant Hofstetter's ill-gotten gains were from her role in owning and managing pain clinics in which prescriptions were provided without a legitimate medical purpose. Because the criminally derived proceeds were gained through the operation of businesses that held themselves out as legitimate pain clinics, Exeter would be reasonably without cause to believe the down payment was not legitimate. The undersigned recommends that the Government be ordered to respond to Exeter's petition, specifically whether it contests that Exeter is a bona fide purchaser for value. If it does, the Court should hold a hearing pursuant to § 853(n)(4).

11

during that time. Thus, the Court continues to find that an interlocutory sale of the property is appropriate.

Finally, Exeter argues that if the Court orders an interlocutory sale of the 2014 Lexus, it should also find that Exeter's first security lien shall be paid from the proceeds of the sale before the Government's expenses for storage of the vehicle are assessed. Exeter contends that it would be inequitable for the Government to recover over $17,000 in storage costs before an innocent first lienholder receives the amount due under its security agreement. In support of this argument, Exeter points to *United States v. Oropeza*, in which the district court ordered that a percentage of the net proceeds of the sale of a vehicle could be returned to the defendants' son, who had continued making payments to the lienholder with legitimate earnings, after the vehicle was seized by the government. *United States v. Oropeza*, No. B-07-658, 2009 WL 10705175, *9 (S.D. Texas Aug. 31, 2009). The court defined the "net proceeds" as "any money leftover from the sale price after paying the lienholder, the costs of the seizure, storage, sale, and any other taxes or fees associated with the Escalade's seizure and sale[.]" *Id.* Exeter argues that the Government points to no authority supporting its contention that its expenses are a super priority over that of the lienholder. It contends that the Court should find, like the court in *Oropeza*, that the innocent lienholder should be paid first.

The Government objects to a determination that Exeter's lien be paid before its expenses, arguing first that this matter should be litigated after the conclusion of the appeal and, second, that the Court should not award all the equity in the vehicle to Exeter, when the Government has borne the cost of maintaining and protecting the car from destruction and theft by Defendant Hofstetter and others.

The Court sees no reason to delay the determination of the priority of payment of Exeter's lien in relation to the Government's costs until after the conclusion of Defendant Hofstetter's appeal. Delaying this issue serves only to increase the litigation costs to Exeter, who must assert its interest in the 2014 Lexus a third time. Instead, the Court finds that priority of payment can be determined at the same time the Court rules on Exeter's third-party petition.

Additionally, the undersigned finds that § 881(e) does not establish that the Government's expenses take priority over the interest of an innocent lienholder. Section 881(e) governs the government's disposition of property that has been ruled forfeited. Whenever property is criminally (or civilly) forfeited, the government may dispose of that property in a public sale. 21 U.S.C. § 881(e)(1)(B). The proceeds from a public sale of forfeited property "shall be used to pay . . . all property expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising, and court costs[.]" 21 U.S.C. § 881(e)(2)(i).[6] The Court finds § 881(e)(2)(i) applies to the Government's disposition of property that is *forfeited*, i.e., property subject to the final order of forfeiture. If Judge Varlan determines that Exeter is a bona fide purchaser of the first security lien and reasonably without cause to believe that the 2014 Lexus was subject to forfeiture, then the Court should amend the Preliminary Order of Forfeiture to state that Exeter's interest in the 2014 Lexus is not forfeited. In other words, Exeter's interest in the

---

[6] The Government asserts that § 881(e)(2)(i) mandates payment of expenses before other disposition of property forfeited to the United States. However, the Court observes that the Attorney General has control over the disposition of the property, to include the ability to waive payment of expenses under some circumstances. *See* 28 C.F.R. § 9.7(b)(2)(ii) (providing that a lienholder granted remission of forfeited property may "upon sale of the property, . . . receive the payment of a monetary amount up to the sum of the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property, and any other monetary conditions imposed. The ruling official [from the Department of Justice], at his or her discretion, may waive costs and expenses incident to the forfeiture.").

13

property would receive priority over the Government's expenses, because the expenses are paid from the sale of forfeited property.

Additionally, the Court finds that the interests of justice support paying Exeter first. Exeter has waited more than six years to receive the value of its lien on the 2014 Lexus, during which time, the scope of the litigation was repeatedly expanded through multiple superseding indictments. While the Court does not find that the Government was dilatory, it does find that who to charge, what charges to bring, and when to seek superseding indictments were matters within the Government's control and over which Exeter had no control. Accordingly, if Judge Varlan determines that Exeter has a legitimate third-party claim on the 2014 Lexus, the undersigned recommends that Exeter's lien be paid from the proceeds of the interlocutory sale of the 2014 Lexus before payment of the Government's expenses.

### IV. CONCLUSION

After carefully considering the parties filings and arguments, as well as the applicable law, the undersigned respectfully **RECOMMENDS** as follows:

(1) That the Government's Motion for Interlocutory Sale of Properties [**Doc. 1179**] be granted, that the 2014 Lexus and the 2015 Lexus be sold by the United States Marshals Service in accordance with Rule G(7) of the Supplemental Rules of Civil Procedure, and that the proceeds of the sale be placed in an interest bearing account maintained by the Government in accordance with Rule G(7)(b)(iv);

(2) That the Government be ordered to respond to Exeter's petition, specifically to whether it contests that Exeter is a bona fide purchaser for value pursuant to 21 U.S.C. § 853(n)(6)(B). If the Government does not concede Exeter's status as a bona fide purchaser for value, the Court should hold a hearing pursuant to § 853(n)(4) to determine the validity of Exeter's interest in the 2014 Lexus; and

14

Case 3:15-cr-00027-TAV-DCP   Document 1189   Filed 10/08/21   Page 14 of 15
PageID #: 81151

(3) If the Court determines that Exeter has a legitimate third-party claim on the 2014 Lexus, the undersigned recommends that Exeter's lien be paid from the proceeds of the interlocutory sale of the 2014 Lexus before payment of the Government's expenses.[7]

                                Respectfully submitted:

                                */s/ Debra C. Poplin*
                                Debra C. Poplin
                                United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).